Peter Hsiao (SBN 119881)
phsiao@kslaw.com
Michael D. Roth (SBN 217464)
mroth@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Fax: (213) 443-4310

David L. Balser (admitted *pro hac vice*)
dbalser@kslaw.com
Charles G. Spalding, Jr. (admitted *pro hac vice*)
cspalding@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Fax: (404) 572-5100

Julia C. Barrett (admitted *pro hac vice*)
jbarrett@kslaw.com
**KING & SPALDING LLP**
500 W. Second Street, Suite 1800
Austin, Texas 78701
Telephone: (512) 457-2053
Fax: (512) 457-2100

Attorneys for Defendant
DELTA AIR LINES, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MAYANNA BERRIN, individually, and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.<br><br>               Defendant. | Case No.: 2:23-cv-04150-MEMF-MRWx<br><br>**DEFENDANT DELTA AIR LINES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing:** November 30, 2023; 10:00 AM<br>*The Honorable Maame Ewusi-Mensah Frimpong*<br>*[Proposed] Order submitted herewith* |

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, November 30, 2023 at 10:00 AM, or as soon thereafter as the matter may be heard, Defendant Delta Air Lines, Inc. ("Delta") will bring for hearing before the Honorable Maame Ewusi-Mensah Frimpong, United States District Court Judge, in Courtroom 8b located on the 8th floor of the United States Courthouse, 350 West First Street, Los Angeles, California 90012, a Motion to Dismiss the First Amended Complaint ("FAC") of Plaintiff Mayanna Berrin under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Specifically, this Motion is made upon the grounds that Plaintiff has not and cannot state a claim upon which relief can be granted because:  (a) all causes of action in the FAC are preempted by the Airline Deregulation Act ("ADA's"), 49 U.S.C. § 41713(b)(1); (b) Plaintiff is not entitled to the equitable relief she seeks under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, because she has failed to allege the absence of an adequate remedy at law; (c) Plaintiff's claims under Cal. Civ. Code § 1770(a)(2) and (a)(3) are not supported by any of the facts alleged in the FAC; and (d) Plaintiff lacks Article III standing to seek future injunctive relief.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities submitted herewith, the pleadings, papers, and records on file in this case, and such oral argument as may be presented at any hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 9, 2023.

DATED: August 18, 2023                    **KING & SPALDING LLP**

By:   /s/ Michael D. Roth
Michael D. Roth
*Attorney for Defendant*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

I.     INTRODUCTION....................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND....................................2

III.   DELTA'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE
       THE ALLEGATIONS IN THE COMPLAINT ARE PREEMPTED BY
       THE AIRLINE DEREGULATION ACT AND FAIL TO STATE A CLAIM
       ...............................................................................................................4

       A.    Plaintiff's Claims are Preempted by the Airline Deregulation
             Act .............................................................................................5

             i.     Plaintiff's Claims Relate to Delta's Rates. ................................8

             ii.    Plaintiff's Allegations Regarding "Market Share"
                    Reinforce that the ADA Applies. ..........................................9

             iii.   Plaintiff's Claims Relate to Delta's Services. ..........................11

             iv.    Plaintiff's Allegations Reinforce that her Claims Relate
                    to Delta's Services. .............................................................12

       B.    Plaintiff's FAL and UCL Claims Fail Because Plaintiff Alleges
             an Adequate Legal Remedy. .......................................................14

       C.    Plaintiff's CLRA Claims Must be Narrowed ..................................17

       D.    Plaintiff Cannot Seek Injunctive Relief for her Statutory
             Claims. .....................................................................................17

CONCLUSION.......................................................................................20

i

# TABLE OF AUTHORITIES

Page(s)

C**ASES**

*A.C.L. Computers & Software, Inc. v. Fed. Express Corp.*,
No. 15-CV-04202-HSG, 2016 WL 946127 (N.D. Cal. Mar. 14, 2016) ............. 8

*Absolute USA, Inc. v. Harman Pro., Inc.*,
No. 221CV06410MEMFMAAX,
2023 WL 2064048 (C.D. Cal. Feb. 14, 2023)................................................... 16

*Alaska Airlines, Inc. v. Carey*,
No. C07-5711 RBL, 2008 WL 2725796 (W.D. Wash. July 11, 2008), *aff'd* 395
F. App'x 476 (9th Cir. 2010).............................................................................. 7

*American Airlines v. Wolens*,
513 U.S. 219 (1995) ...................................................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....................................................................................4, 5

*Banks v. R.C. Bigelow, Inc.*,
No. 20-cv-6208 DDP, 2021 WL 1734779 (C.D. Cal. May 3, 2021) ................ 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................4, 19

*Branche v. Airtran Airways, Inc.*,
342 F.3d 1248 (11th Cir. 2003) ........................................................................ 13

*Carney v. Adams*,
141 S. Ct. 493 (2020) ........................................................................................ 18

*Charas v. Trans World Airlines, Inc.*,
160 F.3d 1259 (9th Cir. 1998)........................................................................... 12

*Clevenger v. Welch Foods Inc.*,
No. SACV2001859CJCJDEX, 2022 WL 18228288 (C.D. Cal. Dec. 14, 2022)
.......................................................................................................................... 16

*In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*,
No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021)............................. 18

ii

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................................................ 18

*Fernald v. Sw. Airlines Co.*,
   No. 11CV0453 AJB (POR), 2011 WL 13254382 (S.D. Cal. Sept. 28, 2011) ... 13

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. CV2000769CJCGJSX, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020).. 14, 17

*Goldstein v. Gen. Motors LLC*,
   No. 3:19-CV-1778, 2022 WL 484995 (S.D. Cal. Feb. 16, 2022) ...................... 20

*Hardy v. Mitsubishi Motors N. Am., Inc.*,
   No. 821CV01983MEMFKESX,
   2023 WL 4067408 (C.D. Cal. Mar. 30, 2023) ...................................... 15, 18, 20

*Huynh v. Quora, Inc.*,
   508 F. Supp. 3d 633 (N.D. Cal. 2020) ............................................................. 16

*Ibarra v. Pharmagenics LLC*,
   -- F. Supp. 3d --, 2023 WL 2445397 (C.D. Cal. Mar. 8, 2023) ........................ 16

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
   567 F. Supp. 2d 1213 (C.D. Cal. 2008),
   *aff'd in relevant part* 642 F.3d 685 (9th Cir. 2011) ............................................ 1

*Kwikset Corp. v. Super. Ct.*,
   246 P.3d 877 (Cal. 2011)..................................................................................... 9

*Linton v. Axcess Fin. Servs., Inc.*,
   No. 23-CV-01832-CRB, 2023 WL 4297568 (N.D. Cal. June 30, 2023)........... 18

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*
   283 F.3d 282 (5th Cir. 2002) ............................................................................ 12

*In re Macbook Keyboard Litig.*,
   No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)..... 15, 17

*Mason v. Nature's Innovation, Inc.*,
   No. 12-cv-3019, 2013 WL 1969957 (S.D. Cal. May 13, 2013)........................ 19

*McGarry v. Delta Air Lines, Inc.*,
   No. CV 18-9827-MWF (EX), 2019 WL 2558199
   (C.D. Cal. June 18, 2019)............................................................................ 7, 12

iii

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ................................................................. 5, 6, 7, 9

*Munning v. Gap, Inc.*,
    238 F. Supp. 3d 1195 (N.D. Cal. 2017) ...................................... 14, 16

*Munns v. Kerry*,
    782 F.3d 402 (9th Cir. 2015) ............................................................. 19

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
    813 F.3d 718 (9th Cir. 2016) ....................................................... 11, 12

*Phillips v. United States*,
    No. 219CV06338SVWJEM, 2021 WL 2587961 (C.D. Cal. June 22, 2021) .... 19

*Pica v. Delta Air Lines, Inc.*,
    No. CV 18-2876-MWF (EX), 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018).... 7

*Rodriguez v. Just Brands USA, Inc.*,
    No. 2:20-cv-04829-ODW, 2021 WL 1985031 (C.D. Cal. May 18, 2021)........ 15

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008) ..................................................................... 7, 11

*Shaouli v. Saks Fifth Ave.*,
    No. CV 14-09590-AB (JCX), 2015 WL 13917124 (C.D. Cal. Apr. 2, 2015)..... 9

*Shay v. Apple Inc.*,
    No. 20CV1629-GPC(BLM), 2021 WL 1733385 (S.D. Cal. May 3, 2021)....... 16

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)........................................... 14, 15, 16, 17

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998).............................................................. 5

*Stone v. Cont'l Airlines, Inc.*,
    905 F. Supp. 823 (D. Haw. 1995) ..................................................... 12

*Tabler v. Panera LLC*,
    No. 19-CV-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019)............. 9

*Tanen v. Sw. Airlines Co.*,
    187 Cal. App. 4th 1156 (Cal. Ct. App. 2010) .................................... 13

iv

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

*Teresa Adams v. Cole Haan, LLC*,
   8:20-CV-00913, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ........................ 15

*In re United Parcel Serv., Inc.*,
   No. 10 MDL 2153, 2011 WL 13220232 (C.D. Cal. July 28, 2011), *vacated on
   other grounds* 580 F. App'x 543 (9th Cir. 2014) ................................................ 7

*Vail v. Pan Am Corp.*,
   616 A.2d 523 (N.J. App. Div. 1992) ............................................................. 8, 9

*Vitiosus v. Alani Nutrition, LLC*,
   No. 21-CV-2048-MMA (MDD), 2022 WL 2441303 (S.D. Cal. July 5, 2022) . 19

*Williams v. Apple, Inc.*,
   No. 19-cv-04700-LHK, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ........... 17

**STATUTES**

Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ........................................ *passim*

Cal. Civ. Code § 1761(a) .......................................................................... 14

Cal. Civ. Code § 1770(a) .................................................................. 2, 14, 17

California's Consumer Legal Remedies Act,
   Cal. Civ. Code §§ 1750, *et seq.* ...................................................... *passim*

California's Unfair Competition Law,
   Cal. Bus. & Prof. Code § 17200, *et seq.* ......................................... *passim*

False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* .................. *passim*

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure Rule 12(b)(6) .............................................. 2, 4

L.R. 7-3 ................................................................................................. 2, 3, 4

L.R. 11-6.1 .................................................................................................. 21

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's claims are preempted by the Airline Deregulation Act ("ADA"). Plaintiff's First Amended Complaint (Dkt. 19, "FAC") alleges violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* based on the manner in which Delta advertised the environmental impact of its airline services—*i.e.*, as carbon neutral due to Delta's participation in the voluntary carbon offset market. Plaintiff alleges these representations caused her to pay higher fares and Delta to obtain "undeserved market share." FAC ¶¶ 1, 8-9. These claims fall squarely within the broad preemptive bar of the ADA, 49 U.S.C. § 41713(b)(1), which prevents states from enforcing any law that relates to an airline's rates, routes, or services. This fundamental problem is not curable. Accordingly, as a matter of law, the Complaint should be dismissed with prejudice.

Indeed, the United States Supreme Court has identified the types of claims alleged here as having the inherent "potential for intrusive regulation of airline business practices." *American Airlines v. Wolens,* 513 U.S. 219, 227 (1995); *see also In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 567 F. Supp. 2d 1213, 1221 (C.D. Cal. 2008) (explaining that state consumer protection statutes, "such as those at issue here, serve to regulate competition and are precisely what the ADA's preemption clause was designed to prevent"), *aff'd in relevant part* 642 F.3d 685, 697 (9th Cir. 2011).

The allegations underpinning Plaintiff's claims relate to Delta's rates *and* services. Plaintiff alleges that Delta made the challenged representations with the intent to encourage air travel on Delta, that Delta gained undeserved market share as a result, and that Plaintiff would not have paid the same amount for her air travel

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

knowing that Delta's representations regarding carbon neutrality were allegedly false. These allegations establish a clear connection to Delta's rates. Moreover, the fundamental service Delta provides is air transportation. Plaintiff alleges that the environmental impact of air travel is important to consumers and thus part of the bargained-for exchange between an airline and its customers. These allegations cut to the core of the purpose of the ADA, *i.e.*, to spur competitive market forces by deregulating the airline industry and preventing a patchwork of regulations burdensome to both airline passengers and airlines. The ADA's preemption provision thus squarely applies to Plaintiff's claims.

Even beyond this fatal and non-amendable flaw, Plaintiff's claims suffer additional defects. First, Plaintiff's FAL and UCL claims, which are equitable in nature, fail because Plaintiff cannot allege that she lacks an adequate remedy at law. Indeed, Plaintiff has alleged a CLRA claim, which is legal in nature, and offered no allegation why the remedies available under the CLRA would be inadequate. Next, Plaintiff's CLRA claim should be dismissed in part because the FAC provides no factual basis to support certain of the statutory provisions upon which the CLRA claim relies. Lastly, Plaintiff's claims for injunctive relief under any of the statutes should be dismissed because Plaintiff lacks standing to pursue these claims, since she does not allege any intent to purchase Delta flights in the future or that there is any risk of future harm at all.

For these reasons, this Motion should be granted and the FAC dismissed with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her initial Complaint on May 30, 2023. *See* Dkt. 1. Plaintiff asserted claims against Delta under the CLRA, FAL, and UCL based on the allegation that Delta misrepresented the total environmental impact of its business operations in advertisements and promotional materials, "thereby attaining

undeserved market share and extracting higher prices from consumers." Compl. ¶ 1. Plaintiff also alleged that she "paid a substantial price premium," *id*. ¶ 16, and that she and the putative class had "lost the price premium they paid for the Delta flights based on Defendant's false 'carbon neutral' representations," *id*. ¶ 107. Pursuant to L.R. 7-3, Delta informed Plaintiff of its intent to move to dismiss Plaintiff's Complaint because her claims are preempted under the ADA. The parties held a telephonic meet and confer on July 10, 2023.

Plaintiff filed her FAC on July 19, 2023. Although Plaintiff's FAC eliminates all express references to "price premiums," the FAC's allegations still clearly implicate Delta's rates and services. Specifically, Plaintiff alleges that she purchased multiple Delta flights since March 2020. *See* FAC ¶ 13. Plaintiff states that she viewed advertisements, LinkedIn posts, and business reporting where Delta "touted [itself] as a carbon neutral airline," *id*. ¶ 14, and that these representations "were part of the basis of the bargain, in that she would not have purchased said flights on the same terms had she known those representations were not true," *id*. ¶ 15. She also alleges that Delta misrepresented its carbon neutral status "to control a greater market share." *Id*. ¶ 92; *see also id*. ¶ 1 (alleging Delta has attained "underserved market share from environmentally concerned consumers").

Plaintiff claims that after she purchased her Delta flights, she "discovered that any such representations" related to Delta's carbon neutral status "are manifestly and provably false." *Id*. ¶ 6. She claims that "rather than achieving carbon neutrality through sustainable fuels and carbon removals," Delta has "instead premised their carbon neutrality on the purchase of carbon offsets from the voluntary carbon market." *Id*. ¶ 46. Plaintiff claims that "foundational issues with the voluntary carbon offset market mean the purchase of said offsets cannot make a company 'carbon neutral.'" *Id*. According to Plaintiff, "[n]early all offsets issued by the voluntary carbon offset market overpromise and underdeliver on their total carbon impact due

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

to endemic methodological errors and fraudulent account on behalf of offset vendors[.]" *Id*.

Plaintiff alleges that had she been adequately informed, she "would have acted differently by, without limitation, refraining from purchasing Delta flights, or paying less for them." *Id*. ¶ 91; *see also id*. ¶ 101 (alleging that she would have acted differently by "(i) declining to purchase Delta flights, or (ii) purchasing flights from another airline"). Plaintiff seeks to represent a purported nationwide class, requests declaratory and injunctive relief from Delta's allegedly deceptive practices, and seeks damages in the form of "all monies" acquired by Delta as a result of its allegedly misleading and deceptive advertising and marketing practices. *Id*. ¶¶ 85, 94, 95.

The parties held a meet and confer on August 9, 2023, pursuant to L.R. 7-3, at which time Delta informed Plaintiff that her claims remain barred by the ADA and suffer additional defects. Plaintiff stated her intent to move forward with the FAC.

## III.   DELTA'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE THE ALLEGATIONS IN THE COMPLAINT ARE PREEMPTED BY THE AIRLINE DEREGULATION ACT AND FAIL TO STATE A CLAIM

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. That is,

a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.

In dismissing a complaint, courts need not grant leave to amend where, as here, it would be futile. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

### A.    Plaintiff's Claims are Preempted by the Airline Deregulation Act

The ADA is designed to spur competitive market forces by largely deregulating the airline industry. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (citing 49 U.S.C. §§ 1302(a)(4), 1302(a)(9)). To further this policy goal, Congress included an express preemption provision in the ADA. That provision prohibits a state from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). This language reflects Congress's "broad pre-emptive purpose" and preempts "actions having a connection with or reference to airline 'rates, routes, or services.'" *Morales*, 504 U.S at 383-84. The Supreme Court has recognized that the ADA's preemption clause is both "deliberately expansive" and "conspicuous for its breadth." *Id.* at 383-84.

In *Morales*—the Supreme Court's first ADA preemption case—a group of state attorneys-general sent a memorandum to several airlines setting forth "Guidelines" for the manner in which airlines could advertise their fees and services

to avoid liability under state consumer protection laws. *Morales*, 504 U.S. at 378-79. The Supreme Court held that the ADA's preemption provision applied to state regulations applicable to fare advertisements. The Court explained that "relating to" in the preemption provision is defined "broad[ly]" to mean "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Id.* at 383. The Court held that the ADA preempted the states' attempt to regulate the airlines' advertisements because the Guidelines "quite obviously" relate to "fares." *Id.* at 387–88 (explaining that "collectively, the guidelines establish binding requirements as to how tickets may be marketed if they are to be sold at given prices").

Subsequently, in *American Airlines v. Wolens,* 513 U.S. 219 (1995), members of American Airlines' frequent flyer program brought a class action under various consumer protection statutes challenging a retroactive change in the program's terms. The Supreme Court found that plaintiffs' claims were an impermissible attempt to "guide and police the marketing practices" of the airline. *Id.* at 227-228; *see also id*. (explaining that state consumer protection claims have the inherent "potential for intrusive regulation of airline business practices"). The Court further emphasized that "the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services" should be left "largely to the airlines themselves." *Id.* at 228. According to the Court, Congress included the ADA's preemption provision to ensure that state law would not thwart Congress's intent to leave the bargained-for aspects of the air carrier-air passenger relationship to the workings of the market. *See id*. at 229 n.5 (noting that preemption provision prevented states from "impos[ing] their own public policies or theories of competition or regulation on the operations of an air carrier" (internal citations and quotation marks omitted)).

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

1    Following its decisions in *Morales* and *Wolens*, the Supreme Court reiterated

2    that the preemptive effect of the ADA is sufficiently broad to encompass even those

3    state laws that only indirectly impact air carrier prices, routes, or services. *See Rowe*

4    *v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) ("[P]re-emption may occur

5    even if a state law's effect on rates, routes, or services 'is only indirect.'" (quoting

6    *Morales*, 504 U.S. at 386)). This broad application of the ADA's preemption

7    provision serves Congress's purpose of safeguarding against the creation of a

8    confusing "patchwork" of regulations burdensome to both airline passengers and

9    airlines. *Rowe*, 552 U.S. at 373 (2008).

10    Following the direction of the Supreme Court, courts in the Ninth Circuit

11    regularly apply ADA preemption to claims related to an airline's marketing of its

12    services. *See e.g., Alaska Airlines, Inc. v. Carey*, No. C07-5711 RBL, 2008 WL

13    2725796, at *4 (W.D. Wash. July 11, 2008) ("The ADA preempts any attempt to use

14    state substantive law as a means to guide and police the marketing practices of the

15    airlines[.]"), *aff'd* 395 F. App'x 476, 478 (9th Cir. 2010); *McGarry v. Delta Air*

16    *Lines, Inc.*, No. CV 18-9827-MWF (EX), 2019 WL 2558199, at *4 (C.D. Cal. June

17    18, 2019) ("Together, *Morales*, *Wolens*, *Northwest*, and *National Federation* hold

18    that the broad scope of ADA preemption sweeps claims as broad as those related to

19    state consumer protection statutes, frequent flyer programs, common law covenants,

20    and advertising guidelines[.]"); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF

21    (EX), 2018 WL 5861362, at *7 (C.D. Cal. Sept. 18, 2018) ("[C]onsistent with

22    *Wolens* and numerous other cases, the Court has little difficulty in concluding that

23    the ADA likewise preempts Plaintiffs' UCL claims."); *In re United Parcel Serv.,*

24    *Inc.*, No. 10 MDL 2153, 2011 WL 13220232, at *6 (C.D. Cal. July 28, 2011) ("The

25    ADA preempts general state consumer fraud statutes."), *vacated on other grounds*

26    580 F. App'x 543 (9th Cir. 2014).

27

28

Because Plaintiff's claims here "derive from the enactment or enforcement of state law" and expressly relate to Delta's "rates" and "services," they are preempted by the ADA. *See A.C.L. Computers & Software, Inc. v. Fed. Express Corp.*, No. 15-CV-04202-HSG, 2016 WL 946127, at *2 (N.D. Cal. Mar. 14, 2016) (ADA preemption applies where "the action [] (1) derive[s] from the enactment or enforcement of state law and (2) 'relate[s] to' airline rates, routes, or services").

### i.   Plaintiff's Claims Relate to Delta's Rates.

Despite attempts to eliminate conspicuous references to "prices," Plaintiff's claims in the FAC still inextricably relate to Delta's rates. Although she has excised the "price premium" terminology, Plaintiff still alleges that she relied on Delta's carbon neutral status in deciding to "purchase her flights with Defendant." FAC ¶ 15. She also contends that she would have "paid substantially less for [her flights], had [she] known the claim of carbon neutrality was false." *Id.* ¶ 8. She further alleges that had she been adequately informed, she "would have acted differently by, without limitation, refraining from purchasing Delta flights, or ***paying less for them***." *Id.* ¶ 91 (emphasis added). Based on those allegations, Plaintiff claims she has "lost money" and seeks "legal redress in order to recover monies paid to Defendant." *Id.* ¶¶ 105, 109. Thus, Plaintiff's allegations expressly relate to Delta's prices and alleged premiums Delta collected on those prices based on its carbon neutrality statements.

Price premiums for airline offerings fall squarely within the ADA's preemptive bar. *See, e.g.*, *Vail v. Pan Am Corp.*, 616 A.2d 523 (N.J. App. Div. 1992). In *Vail*, an airline advertised an enhanced security program and charged passengers a premium to defray the costs of the program. The plaintiffs claimed that the airline did not provide such a program and was therefore falsely advertising enhanced security on flights. Plaintiffs brought state-law claims for willful misrepresentation, consumer fraud, and deceptive business practices. The court dismissed the consumer

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

fraud claims on ADA preemption grounds, holding that "Plaintiffs' claims quite obviously relat[e] to airline fares." *Id.* at 526 (cleaned up). The court explained that the price premium charged to passengers for the security system "at the very least, indirectly relates to the 'rates' charged by an air carrier." *Id.* This comports with the Supreme Court's directive in *Morales* that a state law may "relate to" airline rates, routes, or services "even if the law is not specifically designed to affect such [rates, routes, or services], or the effect is only indirect." *Morales*, 504 U.S. at 386. As in *Vail*, Plaintiff contends that she paid a price premium based on Delta's representations regarding carbon neutrality. Because Plaintiff's claims relate to Delta's prices, they are preempted by the ADA.

Indeed, the very nature of Plaintiff's claims compels this conclusion. To prevail on her UCL or FAL claims, Plaintiff must allege she suffered an economic injury and has "lost money or property" as a result of a defendant's alleged conduct. *See Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *9 (N.D. Cal. Oct. 29, 2019) (cleaned up); *See also Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885 (Cal. 2011). Likewise, to recover money damages for her CLRA claim, Plaintiff must allege that she suffered actual damages as well as "facts showing that [] she suffered an economic injury *caused* by the alleged violation." *Shaouli v. Saks Fifth Ave.*, No. CV 14-09590-AB (JCX), 2015 WL 13917124, at *6 (C.D. Cal. Apr. 2, 2015) (internal citations and quotation marks omitted). Here, the only economic injury that Plaintiff could possibly assert relates to the price of her flights. Plaintiff accordingly cannot avoid the preemptive bar of the ADA and also have standing to assert claims for monetary relief under the CLRA, FAL and UCL based on her allegations regarding Delta's carbon neutrality representations.

### ii. Plaintiff's Allegations Regarding "Market Share" Reinforce that the ADA Applies.

In an attempt to avoid the obvious connection between Plaintiff's allegations and Delta's rates, the FAC eliminates the word "prices" and instead recasts

9

Plaintiff's claims as related to Delta's desire to gain "undeserved market share" through encouraging air travel on Delta by environmentally concerned consumers. *See* FAC ¶¶ 1, 45, 92. But Plaintiff's complaint regarding Delta's ability to gain market share through its carbon neutral marketing is simply an attempt to regulate pricing under a different name. Market gains are based on revenue; Plaintiff's allegations thus necessarily implicate the competitive market forces the ADA was designed to protect. *See Wolens*, 513 U.S. at 229 n.5 (explaining that the ADA was enacted to prevent states from imposing "their own public policies or theories of competition or regulation on the operations of an air carrier"); *see also Ginsberg*, 572 U.S. at 280 (noting Congress enacted the ADA to promote "maximum reliance on competitive market forces and on actual and potential competition" in the airline industry).

Plaintiff contends that one of the central questions in this case is "whether the advertising of Delta Airlines [*sic*] as being carbon neutral caused them to command a higher market share," *i.e.*, more consumers purchase Delta flights because of Delta's advertisements. *See* FAC ¶ 77. And Plaintiff aims to use state law to regulate Delta's marketing of its services, which, in turn, would regulate the market forces that drive competition. In fact, Plaintiff specifically asserts that the environmental impact of a company's operations "has a significant impact on [consumers] purchasing decisions," and, therefore, companies like Delta advertise environmental initiatives with an "interest of maintaining consumer loyalty and maintaining market position." FAC ¶¶ 24, 26. This is the very essence of competition.

Simply put, Plaintiff's claims relate to *how* Delta competes for the business of environmentally conscious air travelers and the prices it is able to command based on representations regarding the environmental impact of its services. Permitting these claims to proceed conflicts with the primary purpose of the ADA's preemptive bar and would lead to precisely the regulatory patchwork Congress sought to avoid

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

and that the Supreme Court cautioned against in *Rowe*. 552 U.S. at 373. For these reasons, Plaintiff's allegations regarding the increased price she paid based on Delta's representations and Delta's intent to gain market share "relate to" Delta's rates and are thus preempted under the ADA.[1]

### iii.  Plaintiff's Claims Relate to Delta's Services.

In addition to relating to Delta's rates, Plaintiff's claims are preempted because they also relate to Delta's "services." For purposes of ADA preemption, "services" refers to "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *See Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 726 (9th Cir. 2016) (quoting *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998)). Congress used "service" in the ADA's preemption provision "in the public utility sense—*i.e.*, the provision of air transportation to and from various markets at various times." *Id.* (quoting *Charas*, 160 F.3d at 1261). In short, the term "service" is "focused on 'essential details of *the carriage itself*.'" *Id.* (quoting *Rowe*, 552 U.S. at 373).

Here, Plaintiff expressly alleges that, through its advertisements, "Delta's *services* are rebranded as more ecologically conscious than they actually are in fact." *Id.* ¶ 26 (emphasis added). Plaintiff contends these representations were made with the intent to encourage passengers to use Delta's air travel services. *Id.* ¶ 45; *see also id.* ¶ 9 (alleging that Delta's misrepresentations caused her to "purchase[] Delta flights due to her belief that by flying Delta she engaged in more ecologically conscious air travel"). These allegations fundamentally implicate Delta's key service, *i.e.*, the manner by which Delta transports passengers from one point to

---

[1] The Supreme Court has emphasized that the ADA does not leave consumers without protection. "The ADA is based on the view that the best interests of airline passengers are most effectively promoted, in the main, by allowing the free market to operate." *Ginsberg*, 572 U.S. at 288. As such, "[i]f an airline acquires a reputation for [misleading environmentally conscious customers], [these] customers can avoid that [airline] and may be able to enroll in a more favorable rival [airline]." *Id.*

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

another. *See Charas*, 160 F.3d at 1266 (explaining that Congress used services to mean "the provision of air transportation to and from various markets at various times"). And Delta's representations regarding its carbon neutrality relate to the "essential details" of how passengers are transported, namely, whether that transport is carbon neutral. *See Nat'l Fed'n of the Blind*, 813 F.3d at 727. These allegations fall within the broad pre-emptive purpose of the ADA because they directly relate to "the furnishing of air transportation services." *Wolens*, 513 U.S. at 228; *see also McGarry*, 2019 WL 2558199, at *4 ("[T]he broad scope of ADA preemption sweeps claims as broad as those related to state consumer protection statutes . . . and advertising guidelines because they [] all have a connection to the core part of the 'services' that an airline provides."). Delta offered to provide services—*i.e.*, air transportation—in a carbon neutral way, and Plaintiff alleges that this formed the basis for her decision to purchase a ticket for this service. Plaintiff's claims thus seek to regulate the way in which Delta advertises—and provides—air transportation to its passengers, which is preempted by the ADA.

### iv.   Plaintiff's Allegations Reinforce that her Claims Relate to Delta's Services.

Plaintiff's allegation that Delta's representations regarding carbon neutrality "were part of the basis of the bargain" further reinforces the conclusion that her claims are preempted. *See* FAC ¶¶ 15, 16. Courts have interpreted services under the ADA to "generally represent a bargained-for or anticipated provision of labor from one party to another." *Stone v. Cont'l Airlines, Inc.*, 905 F. Supp. 823, 825 n.2 (D. Haw. 1995); *see also Lyn-Lea Travel Corp. v. Am. Airlines, Inc.* 283 F.3d 282, 289, n.11 (5th Cir. 2002) ("[P]reemption extends to all of the economic factors that go into the provision of the quid pro quo for [a] passenger's fare."). Plaintiff concedes that carbon emissions fall within the "range of services" that are "part of the customer's experience," "considered in evaluating the quality" of a customer's flight, and over which "airlines compete." *Branche v. Airtran Airways, Inc.*, 342

12

F.3d 1248, 1258 (11th Cir. 2003). This makes sense. To attract customers, airlines must offer not only the best airfare prices, but must also offer other services related to air travel to enhance the quality of their customers' experience.

As Plaintiff makes clear in her FAC, carbon neutrality is one of those services. According to Plaintiff, airlines compete to attract environmentally conscious travelers by engaging in environmentally friendly practices. *See* FAC ¶¶ 25-26. To allow a patchwork of state regulations to regulate this competition would be contrary to the purpose of the ADA. *See Fernald v. Sw. Airlines Co.*, No. 11CV0453 AJB (POR), 2011 WL 13254382, at *2, *4 (S.D. Cal. Sept. 28, 2011) (finding that failure to preempt claims related to aircraft seating program would "frustrate the goal of economic deregulation by interfering with the forces of competition," since airlines "routinely compete with regard to prices and priority seating."); *see also Tanen v. Sw. Airlines Co.*, 187 Cal. App. 4th 1156, 1170-71 (Cal. Ct. App. 2010) (upholding preemption because "[a]irlines do compete with one another with regard to the various services they provide, and passengers may well choose to purchase a travel certificate on one airline rather than another based on the certificate's expiration date or lack thereof"). Thus, Plaintiff's allegation that Delta's representations were part of her bargained-for exchange with Delta confirm that her claims relate to "services."

Similarly, Plaintiff's assertion of a CLRA claim, and a UCL claim predicated on a CLRA violation, further reinforces the applicability of the ADA's preemptive bar. To prevail on her CLRA claim, Plaintiff must show "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken . . . in a transaction intended to result or that results in the sale or lease of *goods* or *services* to any consumer." Cal. Civ. Code § 1770(a). Obviously, Delta's carbon neutrality is not a "good," so Plaintiff must be proceeding on the theory that the CLRA applies to a "service" Delta provided to her. *See* Cal. Civ. Code § 1761(a) (defining "Goods"

to mean certain "tangible chattels"). Therefore, at minimum, Plaintiff's CLRA claim and her UCL claim (which relies on an underlying violation of the CLRA) *must* relate to Delta's "services." If not, her CLRA claim should be dismissed because she has not alleged a "service" covered by that law.

**B.    Plaintiff's FAL and UCL Claims Fail Because Plaintiff Alleges an Adequate Legal Remedy.**

Even assuming ADA preemption did not apply—which it plainly does—Plaintiff's FAL and UCL claims, which are equitable in nature, should be dismissed for the independent reason that Plaintiff has a legal remedy—a CLRA claim for money damages. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020) (affirming dismissal of UCL claim where the plaintiff "fail[ed] to demonstrate that she lacks an adequate legal remedy"); *see also Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (The "UCL and FAL provide for only equitable relief."). Under *Sonner*, Plaintiff's equitable claims for restitution and injunctive relief under the UCL and FAL should be dismissed, because they are duplicative of her legal claims and there is no allegation (nor can there be) that the legal remedies available to Plaintiff are inadequate. *See, e.g.*, *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV2000769CJCGJSX, 2020 WL 5492090, at *3 (C.D. Cal. Sept. 9, 2020) ("[C]ourts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole.").

In *Sonner*, the Ninth Circuit explained that "[a] federal court must apply traditional equitable principles before awarding restitution," including the principle that equitable relief is unavailable when a plaintiff has an adequate remedy at law. *See Sonner*, 971 F.3d at 841. Following *Sonner*, courts in the Ninth Circuit routinely dismiss equitable claims under the UCL and FAL due to a failure to show that there are inadequate legal remedies. *See Rodriguez v. Just Brands USA, Inc.*, No. 2:20-cv-04829-ODW, 2021 WL 1985031, at *8 (C.D. Cal. May 18, 2021) (dismissing claims for restitution with prejudice post-*Sonner* "[b]ecause Plaintiffs' CLRA, UCL, and

14

FAL claims are all based on the same factual predicates") (citations omitted); *Hardy v. Mitsubishi Motors N. Am., Inc.*, No. 821CV01983MEMFKESX, 2023 WL 4067408, at *16 (C.D. Cal. Mar. 30, 2023) (dismissing all requests for equitable relief because "Plaintiffs fail to allege that they maintain inadequate remedies at law"); *see also In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (dismissing demand for injunctive relief and equitable claims with prejudice based on *Sonner*).

Here, the same factual predicate that forms the basis for Plaintiff's CLRA claims—*i.e.*, the alleged misrepresentations regarding Delta's carbon neutrality—also forms the basis for Plaintiff's FAL and UCL claims, which sound in equity. Compare FAC ¶¶ 82-87, with *id.* ¶¶ 88-96, 97-109. A straightforward application of *Sonner* forecloses this attempt to obtain equitable relief that is duplicative of Plaintiff's legal claims.

Moreover, the FAC alleges repeatedly that Plaintiff and the putative class members are entitled to a number of legal remedies, including actual, statutory, and punitive damages. *See, e.g., id.*, Prayer for Relief, § B (seeking "[a]n award of compensatory damages, including statutory damages where available, to Plaintiff and the Class Members against Defendant for all damages sustained as a result of Defendant's wrongdoing"); *id.* ¶ 86 (seeking "on behalf of each Class Member actual damages of at least $1,000, punitive damages, an award of $5,000 for each Class Member who is a disabled person or senior citizen."); *see also id.* ¶¶ 19, 78. Plaintiff does not (and cannot) offer any specific factual allegations demonstrating why the damages she seeks would be inadequate. *Teresa Adams v. Cole Haan, LLC*, 8:20-CV-00913, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) ("The clear rule in *Sonner* that plaintiffs must plead the inadequacy of legal remedies before requesting equitable relief therefore applies."); *Ibarra v. Pharmagenics LLC*, -- F. Supp. 3d --, 2023 WL 2445397, at *4 (C.D. Cal. Mar. 8, 2023) ("Indeed, [plaintiff's]

claim for damages under the CLRA, which is predicated on the same conduct as [plaintiff's] claims for equitable relief, undermines any potential inadequacy of legal remedies.").

While Plaintiff attempts to plead her equitable claims in the alternative to her claim for damages under the CLRA, *see* FAC ¶¶ 95, 107, that is insufficient to satisfy *Sonner*. As numerous courts have explained, "[t]he issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, *Sonner* holds that it does not." *Shay v. Apple Inc.*, No. 20CV1629-GPC(BLM), 2021 WL 1733385, at *5 (S.D. Cal. May 3, 2021); *Clevenger v. Welch Foods Inc.*, No. SACV2001859CJCJDEX, 2022 WL 18228288, at *4 (C.D. Cal. Dec. 14, 2022) (collecting cases and emphasizing that "this argument has been explicitly rejected by numerous courts post-*Sonner*"). In short, where, as here, "the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable." *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020); *see also Munning*, 238 F. Supp. 3d at 1203 ("It matters not that a plaintiff may have no remedy if her other claims fail." (citing *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011))).

Plaintiff accordingly cannot circumvent *Sonner* by attempting to plead her equitable claims in the alternative, and *Sonner* and subsequent precedent compel dismissal of Plaintiff's equitable claims. *See Absolute USA, Inc. v. Harman Pro., Inc.*, No. 221CV06410MEMFMAAX, 2023 WL 2064048, at *15 (C.D. Cal. Feb. 14, 2023) (dismissing without leave to amend plaintiffs' UCL claim because they had an adequate remedy at law and further amendment would be futile); *Williams v. Apple, Inc.*, No. 19-cv-04700-LHK, 2020 WL 6743911, at *9-11 (N.D. Cal. Nov. 17, 2020) (dismissing UCL claim with prejudice, relying on *Sonner*); *In re Macbook*

16

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

*Keyboard Litig.*, 2020 WL 6047253, at *4 (dismissing UCL claim and other demands for equitable relief with prejudice based on *Sonner*); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-cv-00769-CJC, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (dismissing UCL claim with prejudice based on *Sonner*); *Banks v. R.C. Bigelow, Inc*., No. 20-cv-6208 DDP, 2021 WL 1734779, at *6 (C.D. Cal. May 3, 2021) (dismissing UCL and unjust enrichment without leave to amend).

### C.   Plaintiff's CLRA Claims Must be Narrowed

Next, even assuming that Plaintiff's CLRA claim could survive ADA preemption, this claim must be narrowed. The CLRA only applies to a specific list of proscribed conduct enumerated by statute. *See* Cal. Civ. Code § 1770(a)(1)-(28). Plaintiff alleges that Delta violated § 1770(a)(2), § 1770(a)(3), § 1770(a)(5), and § 1770(a)(9) of the CLRA. *See* FAC ¶ 84. But only sections (a)(5) and (a)(9) are even arguably applicable here. Subsection (a)(2) proscribes "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services," and subsection (a)(3) proscribes "[m]isrepresenting the affiliation, connection, or association with, or certification by, another." But Plaintiff does not allege that Delta represented its services as having the approval of another entity or that Delta falsely signified that it had a particular endorsement or sponsorship. Therefore, in the event Plaintiff's CLRA claim is permitted to proceed past dismissal, Plaintiff's claims for violation of subsection (a)(2) and (a)(3) must be dismissed as inapplicable.

### D.   Plaintiff Cannot Seek Injunctive Relief for her Statutory Claims.

Finally, Plaintiff's request for future injunctive relief should also be dismissed because Plaintiff lacks standing to pursue this remedy. To demonstrate Article III standing for future injunctive relief, "a plaintiff must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision." *Hardy v. Mitsubishi Motors N. Am., Inc.*, No. 821CV01983MEMFKESX, 2023 WL 4067408, at *4 (C.D. Cal. Mar. 30, 2023). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that [s]he will again be wronged in a similar way." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quotations omitted). It is *black letter law* that Plaintiff's allegations of "past wrongs" are "insufficient by themselves to grant standing." *Id.*

Here, however, Plaintiff's allegations of harm solely relate to flights she purchased in the past. *See* FAC ¶¶ 13-16. Following *Davidson*, courts have made it clear that "a plaintiff's intention to purchase a product in the future is necessary to establish Article III standing for injunctive relief." *See e.g.*, *Linton v. Axcess Fin. Servs., Inc.*, No. 23-CV-01832-CRB, 2023 WL 4297568, at *4 (N.D. Cal. June 30, 2023). In her FAC, Plaintiff expresses no interest in or concrete intent to purchase a flight from Delta in the future. Instead, Plaintiff's only allegations of prospective injury are that she and the other putative class members "will continue to suffer harm" and that Delta "will continue to cause injury in fact to the general public." FAC ¶¶ 85, 95, 109. Such vague and conclusory allegations of injury are insufficient to confer the Article III standing required to proceed with injunctive relief. *See In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) ("Without any stated desire to purchase Coke in the future, [Plaintiffs] do not have standing to pursue injunctive relief."); *see also Carney v. Adams*, 141 S. Ct. 493, 502 (2020) (explaining that "an injury in fact requires an intent that is concrete").

In addition, Plaintiff fails to allege that Delta's advertisement of its flights as carbon neutral is ongoing. Even if a plaintiff can show she was previously injured, she still must show a real or immediate threat that she will again be wronged in a similar way. *See Phillips v. United States*, No. 219CV06338SVWJEM, 2021 WL

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

2587961, at *5 (C.D. Cal. June 22, 2021); *Munns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015) ("Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects."). The FAC does not make any allegation that Delta is currently advertising its flights as carbon neutral. At most, Plaintiff asserts that Delta's alleged misrepresentations will "continue to violate the CLRA," and that Delta will "continue to violate the laws of California" and "continue[] to engage unlawful, unfair, and fraudulent trade practices in California." *See* FAC ¶¶ 83, 92, 98. ¶ 98. But these are nothing more than "labels and conclusions," *Twombly*, 550 U.S. at 555, that are plainly insufficient to establish the imminent threat of future injury required by Article III. *See Vitiosus v. Alani Nutrition, LLC*, No. 21-CV-2048-MMA (MDD), 2022 WL 2441303, at *7 (S.D. Cal. July 5, 2022) (threadbare recital that plaintiffs "will continue to mislead in the future" was insufficient to survive dismissal).

In sum, Plaintiff fails to allege any concrete intent to purchase a Delta flight in the future or the likelihood of future or ongoing violation by Delta related to its marketing. Because Plaintiff does not plead any imminent threat of future injury to satisfy Article III standing, Plaintiff's claims for future injunctive relief under the UCL, CLRA, and FAL must be dismissed. *See Mason v. Nature's Innovation, Inc.*, No. 12-cv-3019, 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013) ("[I]t is not within the Court's authority to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws.").[2]

---

[2] Moreover, even if Plaintiff had standing to pursue injunctive relief, these claims would fail for the same reasons set forth above in section III.B *supra*. This Court recently made clear that *Sonner*'s holding and reasoning "is not limited to claims for past harms as opposed to future harms." *Hardy*, 2023 WL 4067408, at *16; *see also Goldstein v. Gen. Motors LLC*, No. 3:19-CV-1778, 2022 WL 484995, at *5 (S.D. Cal. Feb. 16, 2022) ("Plaintiffs similarly contend that Sonner does not apply to injunctive relief claims. The Court disagrees." (internal citations omitted)). Consequently, the requirement that plaintiffs must plead the inadequacy of legal remedies applies to both Plaintiff's claim for restitution and injunctive relief and warrants dismissal "as it relates to all [] requests for equitable relief." *Hardy*, 2023 WL 4067408, at *16.

19

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

## <u>CONCLUSION</u>

For the reasons explained above, the Court should dismiss the FAC with prejudice because all of Plaintiff's claims are barred by the ADA. Even if her claims were not legally prohibited, the Court should dismiss her FAL and UCL claims and all her claims for injunctive relief, leaving only Plaintiff's CLRA claim for money damages based on §§ 1770(a)(5) and (a)(9).

**RESPECTFULLY SUBMITTED.**

DATED:  August 18, 2023          **KING & SPALDING LLP**

By:   <u>*/s/ Michael D. Roth*</u>
Michael D. Roth
*Attorney for Defendant*

.

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant, certifies that this Memorandum of Points and Authorities contains 6,392 words, which complies with the word limit of L.R. 11-6.1, and is under 25 pages, which complies with the page limit set by the Court's Civil Standing Order.

Dated:  August 18, 2023.          **KING & SPALDING LLP**


By:     *<u>/s/Michael D. Roth</u>*
        Michael D. Roth
        *Attorney for Defendant*

DEFENDANT DELTA AIR LINES, INC.'S MOTION TO DISMISS