1
2
3
4
5
6

**HADERLEIN AND KOUYOUMDJIAN LLP**
Jonathan Haderlein (Cal. Bar No. 336644)
jhaderlein@handklaw.com
Krikor Kouyoumdjian (Cal. Bar No. 336148)
kkouyoumdjian@handklaw.com
19849 Nordhoff St.
Northridge, California 91324
Telephone:  (818) 304-34345

7
8
9
10

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone:  (323) 638-7551

11
12

*Attorneys for Plaintiff and the Proposed Class*

13
14
15

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

16
17
18
19
20
21
22
23
24
25
26

| | |
|---|---|
| MAYANNA BERRIN, an individual on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 2:23-cv-04150-MEMF-MRW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**Hearing:**<br>December 14, 2023; 10:00 AM<br>The Honorable Maame Ewusi-Mensah Frimpong |

27
28

# **Table of Contents**

I.     INTRODUCTION ........................................................................1

II.    LEGAL STANDARD ...................................................................4

III.   ARGUMENT ..............................................................................5

     A.    Misrepresentations About Corporate Carbon Neutrality Are Exempt From ADA Preemption ...........................................................5

          a.    The ADA Does Not Preempt All Applications of State Consumer Protection Law to Airlines .........................5

     B.    Misrepresentations About Corporate Carbon Neutrality Are Too Remote From Delta's Airline Operations For Preemption to Apply .................6

     C.    Carbon Neutrality Claims are Markedly Dissimilar to the Conduct to Which Preemption Normally Applies ...................................7

     D.    Accepting Delta's Theory on ADA Preemption Would Preempt Any State Efforts to Regulate Airline Misrepresentations on Social Issues ....7

     E.    Regulating Delta's Carbon Neutrality Misrepresentations Will Not Affect Delta's Ability to Freely Price Flights .........................8

          a.    Applying California False Advertising Law Will Not Change Delta's Prices .................................................8

          b.    Accepting Delta's Position Would Extend Preemption to Any Misrepresentation That Increases Market Share ................10

     F.    Purchasing Corporate Carbon Offsets is not a "Flight-Related" Service ...........................................................................11

          a.    By Definition, Carbon Offsetting Places Carbon Reductions Outside the Supply Chain .........................................12

          b.    Delta's Carbon Neutrality is Not Otherwise Predicated on Services ...........................................................12

     G.    The ADA Does Not Preempt California's Consumer Protection Laws Merely Because The Statutes Share the Word "Services" ...................13

     H.    Issues of First Impression Regarding Preemption are Best Resolved After Discovery ......................................................14

     I.    Plaintiff Has Adequately Pled Equitable Remedies .............................15

          a.    There is No Rule Making Injunctive and Declaratory Relief Inherently Exclusive of Legal Remedies .......................15

          b.    This Question Should be Resolved at a Later Motion Such as a Motion for Summary Judgment ...............................15

          c.    Plaintiff has Alleged Facts Sufficient to Show her Independent Need for Equitable Relief ......................................16

J.      Plaintiff Adequately Pled Violations of the Cited Sections of the CLRA ................................................................................................17

IV.     Conclusion .......................................................................................17

Plaintiff's Opposition to Defendant's Motion to Dismiss

1

## **Table of Authorities**

2

**Cases**

3

4

*Am. Trucking Ass'ns, Inc. v. City of L.A.*, 660 F.3d 384 (9th Cir. 2011) ...................................5

5

*American Airlines v. Wolens*, 513 U.S. 219, 227 (1995) .....................................................6, 12

6

7

*Arapahoe Cnty. Pub. Airport Auth. v. FAA*, 242 F.3d 1213 (10th Cir. 2001) .........................12

8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................4

9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ......................................................4

10

11

*Brown v. United Air Lines, Inc.*, 656 F. Supp. 2d 244 (D. Mass. 2009) ..................................10

12

*Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998)......................................10

13

14

*Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014) ......................................4, 5, 8, 10

15

*Flores v. United Airlines,* 426 F.Supp.3d 520  (N.D. Ill. 2019)..................................................9

16

17

*Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir.1995) (en banc) ......................................13

18

*Kindt v. Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.*, No. 17-CV-04333-JD,

19

20

      2018 WL 4468320 (N.D. Cal. Sept. 18, 2018) ...........................................................1, 5

21

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (Cal. 2011).....................................................8

22

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282 (5th Cir. 2002).................................1

23

24

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)..............................................1, 4, 5

25

*Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718 (9th Cir. 2016).........................10

26

27

*Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2018 WL 5861362 (C.D. Cal. Sept.

28

      18, 2018) .............................................................................................................................1

Plaintiff's Opposition to Defendant's Motion to Dismiss

*Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008) ..................................................4, 5, 11

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ......................................14, 15

*Vail v. Pan Am Corp.*, 616 A.2d 523 (N.J. App. Div. 1992) ......................................................6, 9

*Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017) ........................3, 4, 13, 14

**Statutes**

Airline Deregulation Act of 1978, 92 Stat. 1705 .............................................................. passim

CA LEGIS 382 (2023), 2023 Cal. Legis. Serv. Ch. 382 (S.B. 253) (WEST)..............................6

California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.................... passim

Federal Rule of Civil Procedure 12(b)(6) .....................................................................................4

Plaintiff's Opposition to Defendant's Motion to Dismiss

I.      **INTRODUCTION**

In its moving papers, Defendant Delta Air Lines Inc. ("Delta") argues that the Airline Deregulation Act ("ADA") made the airline industry the Wild West, where the only Sheriff in town is the Free Market.  According to Delta, virtually all statements that an airline makes are at least "indirectly" related to its rates or services, meaning that ADA preemption protects all such statemetns from state regulation.  Regardless of how blatantly incorrect these statements are or how much they injure the public, Delta argues that consumers have no legal remedy and that their only remedy is buy tickets from a different airline.

Simply put, this characterization is not accurate.  The Supreme Court has stressed that the ADA does not preempt all state regulations that touch upon the airline industry.  Thus, ADA preemption does not apply if a state's regulation will have only a "tenuous, remote, or peripheral" connection to the provisions of airline services.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992).  In other words, ADA preemption only applies if the state enforcement action impacts the airline's "control of its prices, routes, flights, and other transportation services." *Kindt v. Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.*, No. 17-CV-04333-JD, 2018 WL 4468320, at *2 (N.D. Cal. Sept. 18, 2018).

There are no cases deciding whether the specific category of claims brought in the First Amended Complaint—that Delta grossly oversstated the total environmental impact of its business operations to consumers—are preempted by the ADA.  However, while this is a matter of first impression for this Court, there is substantial case law indicating that the answer to this inquiry is a resounding, "No."

Preemption only applies to conduct with a requisite "connection to the core part of the 'services'" that an airline provides.  *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2018 WL 5861362, at *5 (C.D. Cal. Sept. 18, 2018). "Some airline business dealings undoubtedly do not 'relate to' prices, routes and

services," and it is precisely those business dealings that are before the Court today. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc*., 283 F.3d 282 (5th Cir. 2002).

Advertising carbon neutrality based on offsetting simply does not have those requisite connections:

1. Delta will offer the same flights in the same places in the same manner and at the same prices with or without the ability to make false claims of carbon neutrality, rendering preemption unnecessary.

2. Carbon neutrality claims have no connection to the flight experience. There is no in-flight difference between flying a carbon neutral airline or a non carbon neutral airline—the flight experiences themselves are identical.

3. Corporate level misrepresentations as to the climate impact of purchases of carbon offsets are in no way tied to the price of an individual flight—Plaintiff does not allege Delta charges a specific premium for being a carbon neutral airline, only that Delta has generated unfair market share from misrepresenting its global environmental impact. *See* FAC ¶ 1.

4. Carbon offsetting is not a flight related service—the entire premise of buying carbon offsets is that they are purchased separate from a company's core business operations. *See Id.* ¶ 5.

There are also serious policy concerns with denying the states the right to regulate misrepresentations with remote connections to an airline's core business:

1. It could extend preemption to state efforts to regulate any misrepresentations that increase market share, regardless of the social harm of those misrepresentations.

2. It could extend preemption to state efforts to regulate airline misrepresentations on a host of Environmental, Social, and Ethical Governance issues such as c-suite and board diversity efforts, free labor supply chain issues, and human rights abuses abroad, despite states' clear

Plaintiff's Opposition to Defendant's Motion to Dismiss

interest in these issues (*see* CA LEGIS 382 (2023), 2023 Cal. Legis. Serv. Ch. 382 (S.B. 253) (WEST)).

Delta's other arguments as to the adequacy of Plaintiff's pleading do not persuade:

1. Plaintiff adequately pled equitable remedies:  There is no 9th Circuit rule making injunctive relief mutually exclusive to damages, nor would such a rule make sense, and the determination that restitution is in conflict with damages should not be resolved at the pleading stage.

2. Plaintiff adequately pled facts supporting seeking equitable relief: Plaintiff's allegations of continued interest in being a Delta customer, and her concerns over the fact that Delta has still yet to issue any retractions or apologies are more than enough to allege her need for injunctive and declaratory relief.

3. Plaintiff adequately pled facts supporting claims under the CLRA:  The CLRA targets corporate advertisements misstating certifications and representations from third parties, and this case relates to overstating the carbon reducing impact of purportedly verified carbon offsets, rendering the CLRA applicable.

Finally, Delta's motion seeks a premature resolution of fact-intensive questions.  The determination of issues of first impression as to federal preemption is appropriately deferred until summary judgment where the factual record will be more fully developed.  *See Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1302 (S.D. Fla. 2017) (collecting cases). Plaintiff's First Amended Complaint implicates at least four issues of first impression in federal preemption law, the resolution of each of which would benefit from fact discovery:

1. Whether advertising the annual corporate purchase of carbon offsets implicates an airline's prices;

2. Whether any representations that increase market share necessarily relate to an airline's prices;

3. Whether the annual corporate purchase of carbon offsets is a flight related service; and

4. Whether ADA preemption should apply to corporate level ESG marketing without a connection to the company's prices, routes, or services, merely on the basis that it accrues market share to consumers.

Ultimately "determining whether Plaintiff's claims have an impermissible effect on [Delta's] prices or services is an inherently factual question; evidence is required to determine whether and how Plaintiff's claim would have such an effect." *See Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1302 (S.D. Fla. 2017).

Defendant's Motion should be denied in its entirety.

## II.  **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is plausible on its face "when the pleaded [facts] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 55.

Defendant's Motion asks the Court to apply federal law to assess whether or not the Plaintiff's requested application of state law is preempted under the Airline Deregulation Act. Under the "the settled preemption principles developed in Airline Deregulation Act cases," "a state law connected to prices, routes, or

services in 'too tenuous, remote, or peripheral a manner' is not preempted." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 645 (9th Cir. 2014). Whether the effect is direct or indirect, "the state laws whose effect is forbidden under federal law are those with a *significant* impact on carrier rates, routes, or services." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370–71 (2008) (cleaned up).

## III.   ARGUMENT

### A. Misrepresentations About Corporate Carbon Neutrality Are Exempt From ADA Preemption

#### a.   The ADA Does Not Preempt All Applications of State Consumer Protection Law to Airlines

Delta argues the ADA preempts all applications of state consumer protection law to airline marketing. *See* Motion to Dismiss ("MTD") at 5-7. Yet as they concede, ADA preemption does not apply to state law regulating conduct with a "tenuous, remote, or peripheral" connections to flights and flight related services. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992) (citation and quotations omitted). Despite Delta's elision, the question before the court is whether applying California's consumer protection laws to Delta's challenged conduct would inappropriately bind Delta "to a particular price, route, or service and thereby interfere with the competitive market forces within the industry." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014) (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370–71 (2008)) (cleaned up).

The clear answer is that it will not—regulating advertisements of carbon neutrality based on the annual purchase of carbon offsets is far too remote from Delta's actual airline operations to have the necessary "forbidden significant effect upon" an airline's prices, routes or services that necessitates preemption. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 389 (1992). And until now, no case has addressed whether ADA preemption protects corporate misrepresentations of corporate-level environmental practices with a tenuous or remote connection to the airline's actual flights and services.

**B. Misrepresentations About Corporate Carbon Neutrality Are Too Remote From Delta's Airline Operations For Preemption to Apply**

Delta's challenged misrepresentations communicated to consumers that Delta had meaningfully mitigated its global carbon emissions via participation in the voluntary carbon offset market. *See* FAC. ¶¶ 3-5. Again, "the proper inquiry is whether the [regulatory] provision, directly or indirectly, binds the carrier to a particular price, route, or service and thereby interferes with the competitive market forces within the industry." *Dilts*, 769 F.3d at 646 (quoting *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 660 F.3d 384, 397 (9th Cir. 2011)). Regulating the representations in question—misrepresentations about corporate level sustainability practices—in no way interferes with Delta's ability to administer its airline as it chooses; it merely restricts their ability to misrepresent themselves as a corporate brand. *See Kindt v. Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.*, No. 17-CV-04333-JD, 2018 WL 4468320, at *2 (N.D. Cal. Sept. 18, 2018) (finding that regulating toll-free lines "did not affect Volaris's control of its prices, routes, flights, and other transportation services.").

The relevant misrepresentation is that Delta claimed it significantly mitigated its global emissions by participating in the voluntary carbon offset market, when in fact such participation did no such thing. *See* FAC ¶¶ 5-8. The reality is that a court's application of state law in determing whether or not Delta's purchase of offsets in fact made them carbon neutral has no possible effect on Delta's ability to run their airline. For the purpose of these claims, the company's carbon footprint is only related to flights in as much as that it is, in part, where Delta's operations create carbon emissions. Delta will offer the same flights in the same places in the same manner and almost certainly at the same prices with or without claims of carbon neutrality. The only thing that will change is whether environmentally conscious consumers who want to know the climate impact of their purchasing choices will continue to be swindled by Delta and their likes' blatant attempts to misrepresent their impact on the climate.

### C. Carbon Neutrality Claims are Markedly Dissimilar to the Conduct to Which Preemption Normally Applies

Delta supports its theory by analogizing carbon neutrality to frequent flyer miles or airport security—characterizing carbon neutrality as a service provided to attract climate conscious consumers.  MTD at 6-8 (citing *American Airlines v. Wolens*, 513 U.S. 219, 227 (1995); *Vail v. Pan Am Corp.*, 616 A.2d 523 (N.J. App. Div. 1992)).  Neither of these comparisons persuade.  Frequent flyer miles entice airline loyalty by rewarding loyal customers for the act of flying.  Airport security directly relates to the experience of whether or not you will be harmed when flying.  Carbon neutrality claims have no such connection to the flight experience.  There is no difference in service between flying a carbon neutral airline or a non carbon neutral airline—the flight experiences themselves are identical.  Regulating the misrepresentations at issue here—corporate-level practices without any clear connection to Delta's provision of flights—will in no way interfere with the carriage of customers.

Instead, carbon neutrality is part of the global corporate response to the climate crisis, a response transcending industry, product, or service.  Dozens if not hundreds of companies outside the transportation sector have made similar "carbon neutral" or "pledge to net zero" claims precisely because concerns over climate are widespread among consumers and implicate the ethics of choosing to support a business at all and in a manner without any unique connection to airline travel specifically.  *See* FAC ¶ 35.  The fact that carbon neutrality claims pervade the entire global martketplace beyond the transportation sector belies analogizing those claims to airline specific services such as frequent flyer miles and airport security.

### D. Accepting Delta's Theory on ADA Preemption Would Preempt Any State Efforts to Regulate Airline Misrepresentations on Social Issues

Carbon neutrality is one of a variety of current Environmental, Social, and Corporate Governance ("ESG") concerns that are relevant to consumers, such as

diversity in the board of directors or in executive management, ethical corporate partnerships, political contributions, slavery-free supply chains, and the net environmental impact of a company's operations.  Under Delta's theory, any attempt for a state to regulate misrepresentations as to these issues would be preempted by the ADA.  This baffles.  California has a legitimate interest in fighting knowingly inaccurate ESG claims, especially when those claims can both erode consumers' ability to make informed choices about which companies share their values and trivialize and undermine the legitimacy of the effective ESG initiatives other companies have actually undertaken.  Delta would extend preemption to all such areas despite no perceivable conflict between regulating an airline's corporate level ESG representations and the purpose of the ADA— deregulation of the airline industry to further bolster market competition in the provision of airline services.

There is surely no legitimate deregulatory effect in allowing corporations to lie about their environmental efforts, the ethics of their supply chain, and the diversity efforts of their board and executives.  Yet Delta insists the states have no role in holding airlines to account on these issues.  Accepting Delta's position would needlessly extend preemptive immunity to corporate misrepresentations that can and do affect consumer behavior, but otherwise in no way implicate the specific market forces the ADA is intended to bolster, because the representations do not "operate at the point where carriers provide services to customers at specific prices."  *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014).

**E. Regulating Delta's Carbon Neutrality Misrepresentations Will Not Affect Delta's Ability to Freely Price Flights**

**a. Applying California False Advertising Law Will Not Change Delta's Prices**

Delta further insists that Plaintiff's false advertising causes of actions are nevertheless "squarely" preempted by the Airline Deregulation Act of 1978 ("ADA") because California's False Advertising Law must implicate Delta's

prices, as how else can Plaintiff have standing. *See* MTD at 8-9. Not so. In this case, the False Advertising Law relates to flights only in so far as Delta is an airline; Plaintiff has standing to sue, and was harmed, because she was a loyal Delta customer under false pretenses.

As the California Supreme Court has explained in *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (Cal. 2011), Plaintiff has a right to damages under California's consumer protection laws because she personally cared about the climate impact of Delta's corporate operations. *Kwikset*, 51 Cal. 4th at 330. A consumer who "challenges a misrepresentation" sufficiently alleges economic injury by alleging "that he or she would not have bought the product but for the misrepresentation." *Kwikset*, 51 Cal. 4th at 330. "From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. That increment, the extra money paid." *Kwikset*, 51 Cal. 4th at 330. Plaintiff's allegation is therefore not that Delta prices are too high, but rather that consumers like her would not have made the purchase if they had known the relevant representations were false. Accordingly, applying California False Advertising law to these misrepresentations would not not change Delta's ability to freely price their flights.

In response, Delta reaches thirty years back into the annals of New Jersey State Law and cites *Vail v. Pan Am Corp.*, 616 A.2d 523 (N.J. App. Div. 1992). Per Delta, "in *Vail*, an airline advertised an enhanced security program and charged passengers a premium to defray the costs of the program." MTD at 8-9. That is precisely the difference. In *Vail*, the airline provided a flight related service and

charged a premium to fund that service.  Neither of those are true here.  Carbon neutrality is not a service, and the onset of carbon neutrality claims did not increase Delta's flight prices; it merely increased Delta's market share.  The reality is that corporate level misrepresentations as to the climate impact of purchases of carbon offsets are in no way tied to the price of an individual flight.  *See Flores v. United Airlines*, 426 F. Supp. 3d 520, 532-533 (N.D. Ill. 2019) (finding that Plaintiff's claims were not preempted when there was no allegation that a customer's purchase of insurance changed the fees or rates they were charged, eliminating any connection to a price effect and obviating Defendant's preemption claims.).

### b. Accepting Delta's Position Would Extend Preemption to Any Misrepresentation That Increases Market Share

Foreseeing this argument, Delta argues that all revenues and indeed anything that could give Delta market share implicates price, but this grossly overstates the reach of deregulation.  *See* MTD at 9-11.  Deregulation intends to solve for states routinely accusing companies of overcharging for inferior products and services, leaving companies without any meaningful way of predicting how to achieve profits in the national marketplace.  Extending deregulation to any representation that could convince consumers to give their business to a corporation, even when the relevant representations have a profoundly tenuous connection to the operation of the business operations deregulation is intended to encourage, perversely extends deregulation to the point that any and all misrepresentations are protected simply because they can lead to the acquisition of market share.  Suppose an airline regularly misrepresents that it gives 3% of its profits annually to charitable causes, and after years of these misrepresentations an investigative report now reveals to consumers that the airline has never donated a dime.  By Delta's own theory, because those representations had encouraged people to buy Delta flights, they are necessarily preempted because they added to Delta's market share.

That surely cannot be right; there must be a limiting principle, and the court has already given it to us—application of the relevant state law must have "a

significant impact on carrier rates, routes, or services." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 645 (9th Cir. 2014).  "Congress did not intend to exempt [deregulated industries] from every state regulatory scheme of general applicability" when "nearly every form of state regulation carries some cost." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014).  And Delta has failed to identify how granting Plaintiffs their requested relief would at all infringe on Delta's ability to freely price its flights.  *See Brown v. United Air Lines, Inc.*, 656 F. Supp. 2d 244, 249 (D. Mass. 2009) (finding application of state law was not price preempted when plaintiff's only challenged "the deceptive manner in which [a] fee [was] charged.").

### F.  Purchasing Corporate Carbon Offsets is not a "Flight-Related" Service

For purposes of ADA preemption, "services" refers to "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail."  *See Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 726 (9th Cir. 2016) (quoting *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998)).  In *Nat'l Fed'n of the Blind*, Plaintiffs brought class action claims alleging that the airline's policy of using automatic kiosks at the airport violated California's antidiscrimination laws.  The Court held that "kiosks are not 'services'" under the ADA despite the fact that "kiosks facilitate services that relate to air transportation."  *Id.* at 726.  If a kiosk that is inside the airport, used to print out a ticket, and check-in to a flight is not a "service" under the ADA, then a carbon offset purchased from a third party on a corporate level cannot be one.

Carbon neutrality predicated on the purchase of offsets is not a schedule, origin, route, or service provided on a flight—it is by its very terms not an "essential detail[] of the carriage itself."  MTD at 11, quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008).

### a. By Definition, Carbon Offsetting Places Carbon Reductions Outside the Supply Chain

Despite enjoying the business benefits of outsourcing its climate obligations, now that Delta is facing accountability for massively overstating the impact of those offsets, Delta instead opts to argue that its non-existent carbon neutrality is somehow an "essential detail" of Delta's provision of air travel.  MTD at 11 (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008)).  Much the opposite is true.  Rather than meaningfully reduce its airline emissions, Delta instead opted to purchase carbon offsets to credit Delta for other entities' carbon reductions.  As explained in Plaintiff's First Amended Complaint ("FAC"), those carbon reductions were massively overstated, if existent at all (*see* FAC generally).  But regardless, purchasers of carbon offsets mean to generate climate goodwill in a manner that is set apart from core airline operations.  In fact that is the entire idea of the voluntary carbon offset market—it allows companies to purchase offsets to outsource environmental reductions so that they do not have to be present in the business's actual supply chain.  It therefore defies reason to say that Delta's carbon neutrality is an essential detail of their services; the entire premise of buying offsets it is that it is not.

### b. Delta's Carbon Neutrality is Not Otherwise Predicated on Services

One could imagine how Delta's carbon neutrality could be the product of changes in Delta's services if, for example, Delta sold offsets to consumers at the point of purchase, flew greener routes, or otherwise changed in-flight services to reduce their carbon footprint.  But these are not the basis of Delta's purported carbon neutrality; instead, Delta's carbon neutrality is almost entirely predicated on Delta's corporate level purchasing of carbon offsets.

Whether or not Delta purchased carbon offsets that mitigated their global calendar year of carbon emissions lacks even a tenuous connection to their ability to "furnish[] air transportation services." *American Airlines v. Wolens*, 513 U.S.

219, 228 (1995).  Corporate carbon neutrality is in no way akin to in-flight WiFi or enhanced airport security, both of which have clear connections to the consumer experience of flying.  In fact, Delta never represented their offsets as transforming Delta flights into "carbon-neutral flights," only that Delta was a "carbon neutral airline," and it would be manifestly unreasonable to allow Delta to only now make the even more false claim that the annual purchase of ineffective offsets transformed Delta's flights into carbon neutral flights free from state regulation.

As the FAC makes clear, Delta repeatedly misrepresented their corporate carbon neutrality, not the carbon neutrality of any specific Delta flights.  Delta cannot post-facto transform these representation into something they are not.  After all, Delta's flights are not carbon neutral, nor has Delta ever claimed as much—this case is instead about whether Delta's advertising of its ineffective attempts at offsetting its carbon emissions were or were not misrepresentations that misled the public.

### G. The ADA Does Not Preempt California's Consumer Protection Laws Merely Because The Statutes Share the Word "Services"

Delta additionally argues that because California's consumer protection laws refer to services, and the ADA refer to services, those consumer protection laws must always be preempted if applied to an airline.  This is an oversimplification.  Services is a defined term of art under the ADA that refers to "items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.'"  *Arapahoe Cnty. Pub. Airport Auth. v. FAA*, 242 F.3d 1213, 1222 (10th Cir. 2001) (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (en banc)).  The relevant test asks if a regulation would harm an airline's ability to provide whatever services it so chooses, and indeed, if a regulation specifically targets any of those services, courts presume said regulation is preempted.  This makes sense; why go to the work of seeing if a regulation is preempted if it is designed to interfere with an airline's choice and provision of a specific in-flight or flight-related service.

But in this case, California's consumer protection laws are simply referring to *any* services purchased from *any company*, and in this case said services are simply the general category air travel. That California's consumer protection laws can regulate Delta's lies because Delta used those lies to sell air travel does not automatically mean that by regulating those lies, California is unfairly infringing on Delta's ability to provide air services. The question before the court is instead whether or not the lies in question touch Delta's core services. And as discussed above in Section III, by its very terms Delta's carbon neutrality was not the product of changes in Delta's services such as selling offsets to consumers, flying greener routes, or changing in-flight services—Delta's carbon neutrality was almost entirely based on Delta's corporate level purchasing of carbon offsets, which is simply not a flight related service provided to Delta fliers.

### H. Issues of First Impression Regarding Preemption are Best Resolved After Discovery

Because the preemption determination here is factually intensive and a matter of first impression, a decision on it should be deferred until summary judgement. Several courts have found that, in the preemption context, the determination of issues of first impression is appropriately deferred until summary judgment where the factual record will be more fully developed. *See Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1302 (S.D. Fla. 2017) (collecting cases). In this case, Plaintiff offers several questions of first impression that discovery will better answer, including:

1. Whether advertising the annual corporate purchase of carbon offsets implicates an airline's prices;

2. Whether any representations that increase market share necessarily relate to an airline's prices;

3. Whether the annual corporate purchase of carbon offsets is a flight related service; and

4.  Whether ADA preemption should apply to corporate level ESG marketing without a connection to the company's prices, routes, or services, merely on the basis that it accrues market share to consumers.

Ultimately "determining whether Plaintiff's claims have an impermissible effect on American's prices or services is an inherently factual question; evidence is required to determine whether and how Plaintiff's claim would have such an effect." *See Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1302 (S.D. Fla. 2017).

## I.  Plaintiff Has Adequately Pled Equitable Remedies

### a.  There is No Rule Making Injunctive and Declaratory Relief Inherently Exclusive of Legal Remedies

Delta reads *Sonner* as limiting any equitable relief pled parallel to a legal remedy. *See* MTD at 14-15.  It does not. *Sonner* instead discusses seeking *restitution* in the presence of an available legal remedy, and no subsequent 9th Circuit case has extended the holding such that injunctive relief cannot be paired with releif for damages, except in as much as the Plaintiff lacks a need for relief above and beyond damages (a preexisting doctrine that goes more to standing than conflicting remedies). *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020).

### b.  This Question Should be Resolved at a Later Motion Such as a Motion for Summary Judgment

Delta's request to dismiss Plaintiff's restitution claim treats pleading legal and equitable remedies in the alternative as simply lawyer's gamesmanship. *See* MTD at 16-17.  It is nothing of the sort.  Many scenarios end up obviating a Plaintiff's chosen remedy, including when a statute is preempted, the plaintiff lacked standing, or a statute of limitations has run.  In those situations, alternatively pled remedies remain available to the Plaintiff, as they should.  Courts should therefore err towards preserving seemingly duplicative causes of action until the pre-trial state when there is enough information for Plaintiff's allegations to be up

for a collective determination.  Until then, it is simply inaccurate to say that the remedies are in conflict; rather, both remedies exist in a mutual state of availability pending the results of discovery, so that if one falls, the other can still survive.

This approach perfectly aligns with that approved of by the court in *Sonner*. In *Sonner*, the plaintiff *voluntarily* dismissed his legal remedy in a fit of excessive gamesmanship right before trial. *Sonner v. Premier Nutrition Corp.*, 971 F.3d at 837.  In that situation, a legal remedy was determinately viable, and therefore had been made exclusive to any equitable remedy.  This is no such scenario—it is a Motion to Dismiss.

### c. Plaintiff has Alleged Facts Sufficient to Show her Independent Need for Equitable Relief

Delta argues Plaintiff has failed to specifically allege any need for equitable relief.  *See* MTD at 17-18.  Yet when taken together, Plaintiff's statements about her passionate concerns regarding the world's climate, her discussion and criticism of the voluntary carbon offset market, and her loyalty to Delta are more than sufficient for her to have alleged that she has an independent interest in Delta's lies separate from her own damages—she hopes to continue to use Delta's business in the future when Delta stops misrepresenting its carbon neutrality to consumers.

Delta further claims that Plaintiff fails to allege that Delta's misrepresentations are ongoing.  *See* MTD at 18-19.  As of the filing of this brief, Delta has yet to retract or disavow any of the challenged representations cited to in the FAC, nor has Delta removed any of those representations from Delta's websites or related spaces, such as the LinkedIn pages of Delta's corporate officers, or one of the many major publications that Delta announced its carbon neutrality to between 2020 and 2022.[1]  And Delta failed to provide any evidence otherwise in its Motion.

---

[1] Plaintiff invites the court to take judicial notice of the contemporary state of the various hyperlinks to Delta's representations provided in the FAC.

Plaintiff's Opposition to Defendant's Motion to Dismiss

Until Delta has announced to consumers that Delta was in fact never carbon neutral and was wrong to insist otherwise, and so long as the relevant representations are still capable of being seen by unwitting Delta consumers, any such misrepresentations are sufficiently ongoing to be the proper subject of injunctive and declaratory relief, which would affirm that Delta lied and require Delta to delete existing misrepresentations, issue related retractions, and refrain from any further misleading claims.

### J. Plaintiff Adequately Pled Violations of the Cited Sections of the CLRA

Delta claims Plaintiff failed to allege facts sufficient to allege harm under CLRA subsections (a)(2) and (a)(3), which respectively proscribe misrepresenting "the source, sponsorship, approval, or certification of goods or services" and "the affiliation, connection, or association with, or certification by, another."  MTD at 17; Cal. Civ. Code §§ 1750, et seq.  But whether Delta misrepresented the nature and veracity of Delta's purchased offsets is precisely the kind of allegations to which these code sections are meant to apply.  A core question of the FAC is the "certification" of Delta's climate impact.  Delta chose to claim they were carbon neutral based on the representations made by Verra and other carbon offset vendors who claim to "verify" the emissions reductions offered by the offsets market, and Delta then repeatedly touted the quality and impact of those offsets to consumers in advertisements, annual ESG reports, and SEC disclosures.  *See* FAC ¶¶ 39-45.  If those certifications were false, and Delta knew or should have known they were false, then Delta misrepresented the status of its offsets, and these code sections properly apply.

### IV.  Conclusion

Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety.

Dated: October 16, 2023         Respectfully submitted,

_____

**HADERLEIN AND KOUYOUMDJIAN LLP**
Jonathan Haderlein (Cal. Bar No. 336644)
jhaderlein@handklaw.com
Krikor Kouyoumdjian (Cal. Bar No. 336148)
kkouyoumdjian@handklaw.com
19849 Nordhoff St.
Northridge, California 91324
Telephone:  (818) 304-34345

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551

*Attorneys for Plaintiff and the Proposed Class*

Plaintiff's Opposition to Defendant's Motion to Dismiss