Peter Hsiao (SBN 119881)
*phsiao@kslaw.com*
Michael D. Roth (SBN 217464)
*mroth@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Fax: (213) 443-4310

David L. Balser (admitted *pro hac vice*)
*dbalser@kslaw.com*
Charles G. Spalding, Jr. (admitted *pro hac vice*)
*cspalding@kslaw.com*
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Fax: (404) 572-5100

Julia C. Barrett (admitted *pro hac vice*)
*jbarrett@kslaw.com*
**KING & SPALDING LLP**
500 W. Second Street, Suite 1800
Austin, Texas 78701
Telephone: (512) 457-2053
Fax: (512) 457-2100

Attorneys for Defendant
DELTA AIR LINES, INC.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| MAYANNA BERRIN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.<br><br>Defendant. | Case No.: 2:23-cv-04150-MEMF-MRWx<br>*Honorable Maame Ewusi-Mensah Frimpong*<br><br>**DEFENDANT DELTA AIR LINES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: December 14, 2023<br>Time: 10:00 a.m.<br><br>Action Filed: May 30, 2023 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ....................1

II. PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE ADA....................2

A. The Allegations in the FAC Relate to Delta's Rates and Services....................2

B. Plaintiff's Attempt to Rewrite the FAC to Avoid the ADA Fails....................2

i. Plaintiff's claims necessarily implicate Delta's rates. ....................3

ii. Plaintiff's claims challenge Delta's marketing of its core service....................4

C. Plaintiff's Policy Arguments and "Parade of Horribles" are Unpersuasive....................6

D. No Discovery is Necessary for Application of the ADA....................7

III. PLAINTIFF LACKS AN ECONOMIC INJURY FOR HER STATUTORY CLAIMS ....7

IV. AT MINIMUM, PLAINTIFF'S EQUITABLE CLAIMS FAIL....................8

V. PLAINTIFF'S CLRA CLAIM MUST BE NARROWED OR DISMISSED ....................10

VI. CONCLUSION....................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Evac EMS, Inc. v. Cheatham*,
910 F.3d 751 (4th Cir. 2018) ....................2

*Alaska Airlines, Inc. v. Carey*,
2008 WL 2725796 (W.D. Wash. July 11, 2008) ....................7

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)....................2, 4, 6

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ....................8

*Branche v. Airtran Airways, Inc.*,
342 F.3d 1248 (11th Cir. 2003) ....................2

*Brown v. United Air Lines, Inc.*,
656 F. Supp. 2d 244 (D. Mass. 2009)....................4

*Chandler v. Roy*,
166 F.3d 342 (9th Cir. 1998) ....................7

*Charas v. Trans World Airlines*,
160 F.3d 1259 (9th Cir. 1998) ....................6

*Chowning v. Kohl's Dep't Stores, Inc.*,
2016 WL 1072129 (C.D. Cal. Mar. 15, 2016)....................8

*Clevenger v. Welch Foods Inc.*,
2022 WL 18228288 (C.D. Cal. Dec. 14, 2022)....................9

*In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig.*
(No. II) 2021 WL 3878654 (9th Cir. Aug. 31, 2021) ....................9

*Day v. AT&T Corp.*,
63 Cal. App. 4th 325 (1998) ....................9

*Dilts v. Penske Logistics, LLC*,
769 F.3d 637 (9th Cir. 2014) ....................4

*Fernald v. Sw. Airlines Co.*,
2011 WL 13254382 (S.D. Cal. Sept. 28, 2011)....................7

*Flores v. United Airlines*,
426 F. Supp. 3d 520 (N.D. Ill. 2019)....................5

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ....................10

*Hardy v. Mitsubishi Motors N. Am., Inc.*,
2023 WL 4067408 (C.D. Cal. Mar. 30, 2023) ....................9

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) ....................10

*IntegrityMessageBoards.com v. Facebook, Inc.*,
2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ....................9

*Kindt v. Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.*,
2018 WL 4468320 (N.D. Cal. Sept. 18, 2018) ....................4

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ....................8

*McGarry v. Delta Air Lines, Inc.*,
2019 WL 2558199 (C.D. Cal. June 18, 2019) ....................2, 7

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ....................8

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)....................2, 4, 6

*National Federation of the Blind v. United Airlines Inc.*,
813 F.3d 718 (9th Cir. 2016) ....................2, 4

*People ex rel. Harris v. Delta Air Lines, Inc.*,
247 Cal. App. 4th 884, 903 (2016) ....................4

*Pica v. Delta Air Lines, Inc.*,
2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) ....................7

*Rev 973 LLC v. Mouren-Laurens*,
2009 WL 10670247 (C.D. Cal. Aug. 11, 2009)....................8

*Rodriguez v. Just Brands USA, Inc.*,
2021 WL 1985031 (C.D. Cal. May 18, 2021) ....................9, 10

*Rowe v. New Hampshire Motor Transp. Ass'n*,
552 U.S. 364 (2008)....................6

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ....................3

*Shaouli v. Saks Fifth Ave.*,
2015 WL 13917124 (C.D. Cal. Apr. 2, 2015) ....................8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012)....................8

*Tabler v. Panera LLC*, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019)....................8

*Tanen v. Sw. Airlines Co.*, 187 Cal. App. 4th 1156 (2010)....................7

*Vail v. Pan Am Corp.*, 616 A.2d 523 (N.J. App. Div. 1992)....................5

*Virgin Atl. Airways Ltd. v. Brit. Airways PLC*, 872 F. Supp. 52 (S.D.N.Y. 1994)....................3, 5, 7

*Woods v. City of Hayward*, 2019 WL 5789256 (N.D. Cal. Nov. 6, 2019)....................3

*Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017)....................5, 7

**Statutes**

49 U.S.C. § 41712....................6

Airline Deregulation Act, 49 U.S.C. § 41713(b)(1)....................*passim*

Cal. Civ. Code § 1770(a)(5)....................10

Cal. Civ. Code § 1770(a)(9)....................10

California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*....................*passim*

California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*....................*passim*

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*....................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)....................3

## I. INTRODUCTION

Attempting to avoid the preemptive bar of the Airline Deregulation Act ("ADA"), Plaintiff's Opposition to Delta's Motion to Dismiss ("Opposition" or "Opp.") ignores the nature of Plaintiff's claims and attempts to rewrite the allegations in the First Amended Complaint ("FAC"). Her attempt to divorce her claims, as pled, from Delta's rates and services fails. At bottom, Plaintiff is using California's False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and Consumer Legal Remedies Act ("CLRA") to challenge the manner in which Delta advertised its core air transportation service. She alleges that those advertisements caused her injury in the amount she paid for her Delta flights, and that Delta gained undeserved market share as a result—*i.e.*, was able to better compete against other airlines for the loyalty of environmentally conscious consumers. Those allegations place her claims squarely within the ambit of the ADA. Much of the remainder of Plaintiff's Opposition reflects her disagreement with Congress's policy that market forces and federal agencies, rather than private plaintiffs, should be tasked with regulating the airline industry. But it is Congress's intent and Supreme Court authority interpreting the ADA that control here.

By attempting to disentangle her claims from their relationship to Delta's rates and services, Plaintiff runs headlong into another, fatal problem. Plaintiff must plead an economic injury to survive dismissal. To argue that her claims have no relationship to Delta's rates or services, she now claims that she did not pay any price premium, and that Delta's alleged misrepresentations are wholly unrelated to the flight Plaintiff purchased from Delta. If that is the case, Plaintiff lacks any economic injury and her claims fail. In other words, either (1) Plaintiff's claims relate to the services she purchased from Delta and the rate she paid for those services, and they are preempted by the ADA, or (2) Plaintiff has not plausibly alleged an economic injury, and she fails to state a claim for relief.

Finally, at minimum, Plaintiff cannot prevail on her equitable claims for restitution or future injunctive relief under well-settled law that Plaintiff's Opposition largely fails to address. Nor can she state claims under subsections (a)(2) or (a)(3) of the CLRA, which are inapplicable to the conduct alleged here.

## II. PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE ADA

### A. The Allegations in the FAC Relate to Delta's Rates and Services

Plaintiff's Opposition attempts to rewrite the FAC to exclude her claims from the ADA's preemptive sweep. But the FAC's allegations are inextricably intertwined with Delta's rates and services. Plaintiff alleges that Delta's representations regarding its carbon neutrality "were part of the basis of the bargain, in that she would not have purchased said flights on the same terms had she known those representations were not true." FAC ¶ 15. She further alleges that had she been adequately informed, she would have "refrain[ed] from purchasing Delta flights, or pa[id] less for them." *Id.* ¶ 91. And she seeks to use California's consumer protection statutes to redress these purported misrepresentations.

As demonstrated in Delta's Motion to Dismiss ("Motion" or "Mot."), these are precisely the types of claims the ADA is designed to preempt. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 226-228 (1995) (preempting consumer protection claims that would "guide and police the marketing practices of the airlines"); *McGarry v. Delta Air Lines, Inc.*, 2019 WL 2558199, at *4 (C.D. Cal. June 18, 2019) ("Together, *Morales*, *Wolens*, *Northwest*, and *National Federation* hold that the broad scope of ADA preemption sweeps claims as broad as those related to state consumer protection statutes . . . and advertising guidelines[.]"); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1255 (11th Cir. 2003) (*Wolens* "makes clear that through the ADA Congress sought to leave the bargained-for aspects of the air carrier-air passenger relationship to the workings of the market, i.e., to prevent the states from 'impos[ing] their own public policies or theories of competition or regulation on the operations of an air carrier'."). If laws "directly targeted at payments for air [travel] . . . are not 'related to price,' it is unclear what meaning the phrase would have left." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 767-68 (4th Cir. 2018).

### B. Plaintiff's Attempt to Rewrite the FAC to Avoid the ADA Fails

Recognizing that the FAC falls squarely within the ADA's ambit, Plaintiff's Opposition mischaracterizes the nature of her claims. Specifically, Plaintiff argues that this case is about whether ADA preemption applies to "corporate misrepresentations of corporate-level environmental practices." Opp. at 5. Plaintiff contends that the representations have no

"connection to the flight experience," that Delta "will offer the same flights in the same places in the same manner and almost certainly at the same prices with or without claims of carbon neutrality," and that "Plaintiff does not allege Delta charges a specific premium for being a carbon neutral airline." *See id*. at 2, 6. These arguments are contradicted by the allegations in the FAC, and Plaintiff cannot amend through her Opposition. *Schneider v. Cal. Dep't of Corr*., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (new allegations in opposition to motion to dismiss are "irrelevant for Rule 12(b)(6) purposes"); *Woods v. City of Hayward*, 2019 WL 5789256, at *3 (N.D. Cal. Nov. 6, 2019) ("[A]ssertions in a brief cannot substitute for allegations in a complaint."). Regardless, Plaintiff's attempt to disentangle her claims from Delta's rates and services fails.

***i. Plaintiff's claims necessarily implicate Delta's rates.***

Plaintiff's argument that her claims do not relate to Delta's rates boils down to her contention that "Delta will offer the same flights . . . at the same prices," with or without the ability to make statements about its carbon neutrality. Opp. at 2. But Plaintiff expressly alleges that she would not have purchased Delta flights or would have paid less for them had she known the alleged truth. FAC ¶ 91. Plaintiff's contention that she "does not allege Delta charges a specific premium for being a carbon neutral airline" is thus belied by her allegations in the FAC. Opp. at 2. Moreover, in attempting to avoid any connection to Delta's rates—and instead claiming her "injury" is being a loyal Delta customer under "false pretenses," Opp. 9—Plaintiff disavows the economic injury necessary to sustain her state law claims against Delta. *See infra* at 7-8.

Regardless, the Opposition confirms that Plaintiff's claims relate to Delta's rates. Plaintiff concedes that her claims would impact whether consumers "who want to know the climate impact of their purchasing choices will continue to be swindled by Delta," *i.e.*, will continue to buy tickets from Delta instead of another airline. Opp. at 6. Plaintiff also admits that Delta's statements impact purchasing decisions, *id.* at 7, and increase Delta's market share (*i.e.*, the number of tickets sold for its flights), *id.* at 10. Plaintiff seeks to reverse the allegedly unfair market share Delta gained; but if Delta loses demand for its flights, then it must reduce its prices. Consequently, Plaintiff's claims run headlong into the ADA's preemptive prohibition on state law claims that relate to a carrier's prices. *Virgin Atl. Airways Ltd. v. Brit. Airways PLC*, 872 F. Supp. 52, 66 (S.D.N.Y.

1994) (recognizing that the use of "sharp practices to lure away customers" is " within the broad meaning of 'rates, routes or services'"); *see also* Mot. at 9-10.

Plaintiff's only response is that Delta's position would extend preemption to any misrepresentation by an airline that increases the airline's market share. Opp. at 10-11. That is the intent of the ADA, which was designed to spur competitive market forces by deregulating the airline industry. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (noting ADA's intent to foster "maximum reliance on competitive market forces"). And there are well-established "limiting principle[s]," Opp. at 10, governing the scope of ADA preemption in thirty years of Supreme Court precedent, which demonstrates ADA preemption's application here. Mot. at 5-8.

***ii. Plaintiff's claims challenge Delta's marketing of its core service.***

Plaintiff's Opposition also mischaracterizes the nature of the FAC's claims, attempting to couch them as related to "corporate-level misrepresentations" on "Environmental, Social, and Ethical Governance Issues" that have only a remote relationship to Delta's services. Opp. at 2, 5-6. Plaintiff ignores that her claims challenge Delta's advertising of its services; and not just any service, but how Delta markets its core air transportation service. Under Supreme Court precedent, claims that relate to the "selection and design of marketing mechanisms" related to "the furnishing of air transportation service" are preempted. *See Wolens*, 513 U.S. at 220; *see also People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 903 (2016).

This is precisely why Plaintiff fails to cite a single case involving an airline's advertisements where preemption did not apply. For example, *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014), dealt with preemption of motor carrier meal and rest break laws. Similarly, *Kindt v. Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.*, 2018 WL 4468320 (N.D. Cal. Sept. 18, 2018), did not address consumer protection statutes. In *Brown v. United Air Lines, Inc.*, 656 F. Supp. 2d 244 (D. Mass. 2009), the court concluded that state wage laws *were* preempted by the ADA because plaintiffs' "proposed solutions for the airline to avoid further liability would alter the curbside check-in service." *Id.* at 251. Finally, the Ninth Circuit's opinion in *National Federation of the Blind v. United Airlines Inc.*, 813 F.3d 718 (9th Cir. 2016) did not involve state consumer protection claims or an airline's advertisements; it stands only for

the proposition that self-serve kiosks are not part of an airline's "services."[1] The sparse authority cited in Plaintiff's Opposition is not on point and fails to address the authority in Delta's Motion.

Plaintiff's attempt to distinguish *Vail v. Pan Am Corp.*, 616 A.2d 523 (N.J. App. Div. 1992) is unavailing. Opp. at 7, 9-10. Plaintiff argues that "[c]arbon neutrality claims" lack the connection to "the flight experience" that "[a]irport security" has because regulating carbon neutrality claims will not "interfere with the carriage of customers." But the holding in *Vail* is not predicated on the representations' connection to "the flight experience" or "interfere[nce] with the carriage of customers." Rather, *Vail* held that the consumer fraud claims—which claimed the airline falsely advertised it had initiated a "far-reaching security program," employing "highly trained security experts"—were preempted because the claims "would permit state courts to determine whether an airline's advertising was false and deceptive, and whether services advertised were in fact provided." *Vail*, 616 A.2d at 526. In doing so, *Vail* hit on the precise problem with Plaintiff's claims here: If Plaintiff's claims could evade preemption, "state courts could fashion remedies, applying state law, proscribing certain advertising and compelling the airline to repay customers . . . 'rates' charged to air passengers. The result would be multiple and potentially conflicting standards controlling airline advertising, services and rates." *Id.* at 526-27.

Like *Vail*, Delta's authorities related to frequent flyer programs are also persuasive. Just as "[l]oyalty programs are marketing devices which airlines use to attract customers," *Virgin Atl. Airways Ltd.*, 872 F. Supp. at 57, Plaintiff alleges that Delta's advertisements were designed to attract an underserved market of ecologically conscious consumers, *i.e.*, to "maintain[] consumer loyalty." FAC ¶ 26. Indeed, Plaintiff's Opposition reinforces the fact that carbon neutrality is an essential part of the bargained-for exchange with Delta related to its provision of air transportation. *See* Opp. at 7 ("[C]oncerns over climate are widespread among consumers and implicate the ethics of choosing to support a business"). That cuts to the heart of the ADA—preventing state regulation

---

[1] In *Flores v. United Airlines*, 426 F. Supp. 3d 520 (N.D. Ill. 2019), the court allowed claims under the Illinois consumer fraud statute to proceed because the claims did not relate to the airline's "services." *Id.* at 533. Rather, the plaintiff in *Flores* challenged the sale of travel insurance by a third party through the airline's website. In refusing to apply the ADA under those circumstances, however, *Flores* explicitly noted that "restrictions on airline advertising are preempted." *Id.* at 532. *Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017), presented the same preemption question regarding third-party travel insurance services, and is therefore inapposite.

over matters over which airlines compete. *See Charas v. Trans World Airlines*, 160 F.3d 1259, 1263 (9th Cir. 1998); *see also* FAC ¶ 92 (alleging that Delta's practices provide "an unlawful advantage over Defendant's competitors").

Finally, Plaintiff's claims are not preempted simply because "California's consumer protection laws refer to services, and the ADA refers to services." Opp. at 13. Delta simply highlights that, to establish her CLRA and UCL claims, Plaintiff must proceed on the theory that Delta misrepresented a "service." Plaintiff cannot both disavow that her claims relate to any service and state a claim for unfair methods of competition related to the sale of services. Mot. at 13-14.

**C. Plaintiff's Policy Arguments and "Parade of Horribles" are Unpersuasive**

The bulk of Plaintiff's Opposition reflects Plaintiff's preferred policy that consumers should have the right to regulate an airline's alleged misrepresentations. *See* Opp. at 2 (arguing "serious policy concerns with denying the states the right to regulate misrepresentation"); *see also id.* at 7-8, 10-11. But the ADA expresses Congress's "broad pre-emptive purpose," *Morales*, 504 U.S. at 383-84, in deregulating the airline industry to place "maximum reliance on competitive market forces," *id.* at 378. This does not make the airline industry the "Wild West." Opp. at 1. The airline industry is subject to comprehensive regulations. *See Wolens*, 513 at 228, n.4 (noting that "the DOT retains authority to investigate unfair and deceptive practices and unfair methods of competition by airlines"); *see also* 49 U.S.C. § 41712 (DOT has plenary authority to "investigate and decide whether an air carrier . . . has been or is engaged in an unfair or deceptive practice"). Congress recognized that because the industry was already heavily regulated, a "state regulatory patchwork" dictating how airlines could market their services would add confusion to complexity. *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008). That Plaintiff may not like Congress's choice of regulatory framework does not give her the right to displace it. *Morales*, 504 US at 378 (ADA preemption "ensure[s] that the States would not undo federal deregulation with regulation of their own").

Plaintiff's argument that the ADA would preempt any state regulation of misrepresentations on any "ethical" issue is a red herring. Opp. at 7-8. This is not a case raising ethical issues regarding corporate governance akin to "diversity in the board of directors . . . ethical

corporate partnerships, political contributions, [or] slavery-free supply chains." *Id.* at 8. Plaintiff is trying to recover the money she paid for airfare because of alleged misrepresentations about Delta's services. As noted above, decades of Supreme Court precedent guides lower courts in confining application of the ADA within the bounds of Congress's intent. *See supra* at 3-6.

### D. No Discovery is Necessary for Application of the ADA

In a last ditch effort to avoid dismissal, Plaintiff argues that the preemption inquiry should be deferred to summary judgment. Opp. at 14-15. But whether consumer protection claims that seek to regulate an airline's advertisements are preempted by the ADA is not a matter of first impression. *See supra* at 2-6; *see also* Mot. at 5-12. And Plaintiff identifies no specific factual issues for which discovery is required. *See Chandler v. Roy*, 166 F.3d 342 (9th Cir. 1998) (affirming dismissal of complaint where plaintiffs "did not identify any specific discovery they wanted or needed"). Nor is there any need for discovery. The allegations in the FAC demonstrate the link between Plaintiff's claims and Delta's rates and services. Courts routinely apply ADA preemption at the pleadings stage under similar circumstances. *Fernald v. Sw. Airlines Co.*, 2011 WL 13254382, at *4 (S.D. Cal. Sept. 28, 2011); *Tanen v. Sw. Airlines Co.*, 187 Cal. App. 4th 1156, 1173 (2010); *McGarry*, 2019 WL 2558199, at *1; *Virgin Atl. Airways Ltd.*, 872 F. Supp. at 66; *Alaska Airlines, Inc. v. Carey*, 2008 WL 2725796, at *4 (W.D. Wash. July 11, 2008); *Pica v. Delta Air Lines, Inc.*, 2018 WL 5861362, at *1 (C.D. Cal. Sept. 18, 2018).[2]

## III. <u>PLAINTIFF LACKS AN ECONOMIC INJURY FOR HER STATUTORY CLAIMS</u>

Plaintiff's Opposition exposes the fundamental problem with her claims: to proceed on her statutory claims, Plaintiff must allege some form of economic injury, but the only economic injury she could possibly claim is the price she paid for her flights. If her claims are unrelated to the price she paid for her flight, then her claims fail. Specifically, to have statutory standing under the UCL or FAL, Plaintiff must allege she "lost money or property" as a result of Delta's alleged conduct.

---

[2] Plaintiff's reliance on *Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017) is misplaced. In *Zamber*, plaintiffs sued based on third-party travel insurance products. The court found that determining whether "the sale of travel insurance marketed by an airline <u>but provided and sold by a third party</u>" has an impermissible effect on defendant's "prices or services is an inherently factual question." *Id.* at 1302. Here, Plaintiff's claims indisputably relate to Delta's advertisements, and Plaintiff's allegations expressly implicate both Delta's prices and services.

*Tabler v. Panera LLC*, 2019 WL 5579529, at *9 (N.D. Cal. Oct. 29, 2019) (cleaned up). To recover money damages under the CLRA, Plaintiff must similarly allege "facts showing that [] she suffered an economic injury caused by the alleged violation." *Shaouli v. Saks Fifth Ave.*, 2015 WL 13917124, at *6 (C.D. Cal. Apr. 2, 2015) (cleaned up). "To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased." *Davidson*, 889 F.3d at 966 (9th Cir. 2018).

To avoid preemption, Plaintiff argues that Delta's alleged misrepresentations had no bearing on the service she purchased or the price she paid. Opp. at 10, 13. If that is true, Plaintiff lacks any economic injury caused by the alleged unfair practice. *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706-07 (9th Cir. 2020) (finding a lack of economic injury because the plaintiff had not alleged "any representations about [the product's] safety" or "false representations—or actionable non-disclosures—about [the product]."). The only case Plaintiff relies on, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), simply makes clear that misrepresentations about a product's production, place of origin, and pricing can establish economic injury. *Id.* at 329. Nothing in *Kwikset* supports Plaintiff's novel theory of an economic injury entirely divorced from the service she purchased.

Finally, Plaintiff's allegations that "she was a loyal Delta customer" and "personally cared about" Delta's "climate impact," *see* Opp. at 9, do not establish an economic injury for any of her claims. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (noting that Proposition 64 amended the UCL and FAL to confer standing only to plaintiffs who have "suffered injury in fact and lost money or property as a result of" the challenged conduct.); *Rev 973 LLC v. Mouren-Laurens*, 2009 WL 10670247, at *3 (C.D. Cal. Aug. 11, 2009) ("Moral injury or harm to goodwill will not suffice."); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 965 (S.D. Cal. 2012) (to having standing to bring a CLRA claim, plaintiff must allege a "tangible increased cost or burden to the consumer").

## IV. AT MINIMUM, PLAINTIFF'S EQUITABLE CLAIMS FAIL

***Plaintiff Cannot Seek Restitution.*** "[T]he only available monetary relief under the UCL and FAL is restitution." *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129, at *13 (C.D.

Cal. Mar. 15, 2016). Plaintiff's claims for restitution under the FAL and UCL fail because Plaintiff has alleged an adequate legal remedy under the CLRA for money damages. *See* Mot. at 14-17 (citing *Sonner*, 971 F.3d at 845). Moreover, restitution requires the "offending party [to] have obtained something to which it was not entitled and the victim [to] have given up something which he or she was entitled to keep." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998). Here, the only money that Plaintiff alleges she spent is on the flights she purchased. FAC ¶ 13. Therefore, Plaintiff's claims for restitution relate to Delta's rates, and are preempted.[3]

***Plaintiff Cannot Seek Injunctive Relief.*** Plaintiff's claims for injunctive relief also fail because she has an adequate remedy at law. As this Court has held, "[h]aving considered the holding in *Sonner*, the Court finds that its reasoning is not limited to claims for past harms as opposed to future harms." *Hardy v. Mitsubishi Motors N. Am., Inc.*, 2023 WL 4067408, at *16 (C.D. Cal. Mar. 30, 2023).[4] Moreover, Plaintiff has not alleged any intent to purchase future flights from Delta and, now knowing the alleged truth, cannot be at risk of future harm. *See In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig.* (No. II), 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) (no standing "[w]ithout any stated desire to purchase Coke in the future"). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that [s]he will again be wronged in a similar way." *Davidson.*, 889 F.3d at 967. Plaintiff has made no such showing in her FAC and does not even discuss *Davidson* in her Opposition.

To avoid dismissal of her injunctive relief claims, Plaintiff again attempts to constructively amend her FAC, stating she "hopes to continue to use Delta's business in the future when Delta stops misrepresenting its carbon neutrality to consumers." Opp. at 16. But this type of "abstract interest" in a change of advertising practices "is insufficient to establish Article III standing." *In re Coca-Cola*, 2021 WL 3878654, at *2. "A firm intention to purchase the product in the future" is required. *Rodriguez v. Just Brands USA, Inc.*, 2021 WL 1985031, at *4 (C.D. Cal. May 18,

---

3 Plaintiff's alternative pleading argument is unpersuasive. *Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *4 (C.D. Cal. Dec. 14, 2022) (noting that this argument "has been explicitly rejected by numerous courts post-*Sonner*").

4 *Sonner*'s application can and should be addressed by this Court at the motion to dismiss stage. *See, e.g.*, *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *4 (N.D. Cal. Nov. 6, 2020) ("Plaintiff's attempt to limit *Sonner* to its procedural posture . . . is unpersuasive.").

2021). "Ultimately, the question is whether Plaintiff's allegations cross the line from an insufficient possible future injury to an actionable certainly impending injury." *Id.* (cleaned up). Plaintiff lacks a "firm" intention to purchase Delta flights in the future, and therefore lacks standing to pursue injunctive relief. *See id.* (dismissing claims for injunctive for injunctive relief when a plaintiff alleges they "may" or "would consider" purchasing in the future, and collecting cases).

Finally, Plaintiff cannot rely on other Delta consumers to support standing. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004) (standing for injunctive relief is lacking where plaintiff is "not personally threatened by [defendant's] conduct"); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.").

## V. PLAINTIFF'S CLRA CLAIM MUST BE NARROWED OR DISMISSED

The FAC makes no allegations regarding the "source, sponsorship, approval, or certification" or the "affiliation, connection, [] association with, or certification" of the flights she purchased; Plaintiff's claims under subsections (a)(2) and (a)(3) accordingly fail. Moreover, Plaintiff's Opposition disclaims that Delta's alleged misrepresentations are related to its flights, which is the only "good" or "service" Delta offers, further demonstrating the inapplicability of these subsections here. Plaintiff's attempt to rewrite the FAC as unrelated to Delta's flights is also fatal to the only arguably applicable CLRA claims under subsections (a)(5) and (a)(9). These subsections do not permit claims based on general corporate policies. Instead, they must be directly tied to affirmative representations about services being sold. Cal. Civ. Code § 1770(a)(5) (proscribing representations that "services" have "characteristics [or] benefits, that they do not have"); Cal. Civ. Code § 1770(a)(9) (prohibiting "[a]dvertising goods or services with intent not to sell them as advertised"). Either, as alleged in the FAC, Plaintiff's CLRA claims are about Delta services and are preempted, or, as Plaintiff's Opposition argues, her CLRA allegations are about Delta's "corporate-level" statements and do not state a claim.

## VI. CONCLUSION

For the reasons explained above, Delta respectfully requests that its Motion to Dismiss be granted and the FAC be dismissed with prejudice.

Respectfully submitted,

DATED: November 6, 2023

**KING & SPALDING LLP**

By: *_/s/ Michael D. Roth_*
MICHAEL D. ROTH
*Attorney for Defendant*
*Delta Air Lines, Inc*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Civil L.R. 11-6.2, the undersigned counsel of record for Defendant Delta Air Lines, Inc., certifies that this brief contains 4,756 words, which complies with the word limit of L.R. 11-6.1.

DATED: November 6, 2023

**KING & SPALDING LLP**

By: */s/ Michael D. Roth*

MICHAEL D. ROTH
*Attorney for Defendant*