**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MAYANNA BERRIN, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

DELTA AIR LINES, INC.,

Defendant.

Case No.: 2:23-cv-04150-MEMF-MRW

**ORDER GRANTING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND [ECF NO. 22]**

Before the Court is the Motion to Dismiss filed by Defendant Delta Air Lines, Inc. For the reasons stated herein, the Court hereby GRANTS IN PART the Motion to Dismiss with leave to amend. ECF No. 22.

/ / /

/ / /

1

I.     **Background**

    A. **Factual Background[1]**

        Defendant Delta Air Lines, Inc. ("Delta") is a major commercial airline. FAC ¶ 2. Since March 2020, Delta has repeatedly touted itself as "the world's first carbon-neutral airline" in advertising, press releases, LinkedIn posts, podcasts, and in-flight napkins. *Id.* ¶ 3. A reasonable consumer reviewing these representations would believe that when taking account all of Delta's carbon emissions and related green investments, Delta has not been responsible for releasing any net additional carbon in the atmosphere since March 2020. *Id.* ¶ 4. Delta's claim of carbon-neutrality is based on carbon offsetting via participation in the voluntary carbon offset market, which is a loose arrangement of companies and NGOs that facilitate investment in green projects. *Id.* ¶ 5. In exchange for their investment in these projects, companies receive carbon offsets in the form of credits that in theory verify the amount of carbon not released due to the investment. *Id.*

        Plaintiff Mayanna Berrin ("Berrin") has discovered that Delta's carbon-neutrality representations are false. *Id.* ¶ 6. Berrin alleges that foundational issues with the voluntary carbon offset market make it impossible to make a company carbon-neutral with the purchase of offsets. *Id.* Specifically, the offset vendors purchased by and relied on by Delta have issues with inaccurate accounting, crediting of offsets for projects that would have occurred without the investment, speculative and non-immediate emissions reductions, and impermanent projects whose carbon-offsetting potential may not be fully realized. *Id.* ¶¶ 6–7.

        Scientists and government regulators have identified Delta as one of many companies who have grossly misstated the actual carbon reduction produced by their carbon offset portfolio. *Id.* ¶ 7. As Delta's claims of carbon-neutrality are allegedly false and misleading, the operation of its flights are not carbon neutral. *Id.* ¶ 8. Specifically, since March 2020, Berrin has purchased Delta flights due to her belief that by flying Delta, she was engaging in more ecologically conscious air travel. *Id.*

---

[1] All facts stated herein are taken from the allegations in Plaintiff's operative First Amended Complaint unless otherwise indicated. ECF No. 19 ("FAC"). For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

1   ¶ 9. Accordingly, Berrin alleges that she would not have purchased tickets for Delta flights, or would

2   have paid substantially less for them, had she known this information. *Id.* ¶¶ 8–9.

3   **B.  Procedural History**

4   On May 30, 2023, Berrin brought the instant lawsuit on behalf of herself and others similarly

5   situated, alleging causes of action for: (1) violation of California's Consumers Legal Remedies Act

6   ("CLRA"); (2) violation of California's False Advertising Law ("FAL"); and (3) violation of

7   California's Unfair Competition Law ("UCL"). *See* FAC.

8   On August 18, 2023, Delta filed the instant Motion to Dismiss. ECF No. 22 ("Motion"). On

9   October 16, 2023, Berrin filed her opposition. ECF No. 26 ("Opposition"). On November 6, 2023,

10   Delta filed its reply. ECF No. 29 ("Reply"). On December 14, 2023, the Court heard oral argument

11   on the Motion.[2]

12   **II.   Applicable Law**

13   Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to

14   state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

15   dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

16   relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

17   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

18   pleads factual content that allows the court to draw the reasonable inference that the defendant is

19   liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

20   The determination of whether a complaint satisfies the plausibility standard is a "context-

21   specific task that requires the reviewing court to draw on its judicial experience and common sense."

22   *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view

23   them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir.

24

25   _____

26   [2] At the hearing, Delta for the first time requested that the Court certify this interlocutory order for appeal under 28 U.S.C. § 1292(b). However, a defendant invoking this exception to the final judgment rule has the burden of establishing that the requirements of the rule are met. *Couch v. Telescope, Inc.*, 611 F.3d 629, 633

27   (9th Cir. 2010). Given that this issue was not previously raised and has not been briefed by the parties, the Court declines to certify this order based on Delta's oral request, without prejudice to Delta making any

28   motions it has the right to make after issuance of this order.

2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**III.   Discussion**

Delta primarily moves to dismiss Berrin's claims on the basis that they are preempted by the Airline Deregulation Act ("ADA"). Delta also argues that Berrin's FAL and UCL claims fail because Berrin has an adequate remedy at law, that her CLRA claim has not been adequately pleaded, and that Berrin lacks standing to pursue any injunctive relief. For the reasons discussed below, the Court finds that Berrin's claims are not preempted, and that her CRLA claim is adequately pleaded. However, the Court also finds that Berrin's FAL and UCL claims are inadequately pleaded at this time.

**A.   Berrin's Claims Are Not Preempted by the Airline Deregulation Act**

When analzying federal preemption, there are two guiding principles: (1) that the purpose of Congress is the "ultimate touchstone," and (2) the starting assumption is "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *City of Los Angeles v. AECOM Services, Inc.*, 854 F.3d 1149, 1154 (9th Cir. 2017). Here, the Supreme Court has analyzed, and held, that the purpose of ADA preemption is to prohibit states from regulating anything "relating to [air carriers'] rates, routes, or services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); 49 U.S.C. § 41713(b)(4)(A). Although the Supreme Court noted that the ADA's preemption has a "broad scope" and is "deliberately expansive," it also stated that "'some state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Morales*, 504 U.S. at 390.

In *Morales*, the Supreme Court found that state regulation dictating what sort of disclosures airlines must make when advertising was preempted by the ADA. *Morales*, 504 U.S. at 388 (noting that the "guidelines establish binding requirements as to how tickets may be marketed if they are to

be sold at given prices"). In particular, the Supreme Court found that "every one of the guidelines enumerated [] bears a 'reference to' airfares," and that they restricted the ability of an airline to advertise its cheaper fares. *Id.* at 388. The Supreme Court also noted that "restricting '*price* advertising surely relates to price.'" *Id.* at 389 (emphasis added). However, it explicitly stated that it was not addressing "state regulation of the *nonprice* aspects of fare advertising . . ." and that "the connection [there] would obviously be far more tenuous." *Id.* at 390 (emphasis added). The facts in *Morales* did not present a "borderline" question, and therefore the Court expressed "no views about where it would be appropriate to draw the line" for more tenuous situations. *Id.*[3]

After *Morales*, the Supreme Court next touched on ADA preemption in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995). *Wolens* involved claims against an airline's reotractive changes in terms and conditions to its frequent flyer program. *Id.* The plaintiffs in *Wolens* brought causes of action under the Illinois Consumer Fraud Act as well as for breach of contract. *Id.* at 225. The Supreme Court found that although both causes of action had the same underlying facts—which were clearly related to rates and services—the plaintiffs' Illinois Consumer Fraud Act claim was preempted but the contract claim could proceed. *Id.* at 233. In distinguishing the two, the Supreme Court explained that the ADA's preemption clause does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 228. But, *Wolens* pointed out "the *potential* for intrusive regulation of airline business practices inherent in state consumer protection legislation," implying that there are instances in which such legislation may not be intrusive. *Id.* at 227 (emphasis added). The Court is aware of no binding authority that holds that *any* attempt to regulate airline advertising

---

[3] The Supreme Court also noted that the U.S. Department of Transportation ("DOT") retained the power to "prohibit advertisements which in its opinion do not further competitive pricing." *Id.* at 391. At the hearing, Delta argued that regulation of advertising falls within the purview of the DOT, supporting preemption. However, the Court notes that the DOT's regulation of airline advertising is limited to matters that appear to fall under the scope of rates, routes, and services. *See* Office of Aviation Consumer Protection, About Us, https://www.transportation.gov/airconsumer/about-us (last updated Jan. 27, 2021) (providing consumer protection and enforcement as to "deceptive airline advertising (e.g., fare, on-time performance, schedule, code sharing, etc.)). Therefore, the scope of the DOT's regulation does not appear to conflict with a state's ability to regulate advertising *unrelated* to rates, routes, and services.

or *any* application of consumer protection laws on airlines would be summarily preempted—in fact that is contrary to the Supreme Court's holding in *Morales*. *Morales*, 504 U.S. at 390.

Binding precedent analzying preemption with regards to the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") is also relevant to the Court's analysis here, as Congress drew from the preemptive language of the ADA in passing the FAAAA. *See Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008) (applying *Morales* in "interpreting similar language" in the FAAAA). In *Dilts v. Penske Logistics, LLC*, the Ninth Circuit applied the rates, routes, and services analysis to California meal and rest break laws, and found that these laws were not preempted by the FAAAA. 769 F.3d 637 (9th Cir. 2014). Citing *Rowe*, the Ninth Circuit observed that preemption could occur even if a state law's effect is only indirect, but that "whether direct or indirect, 'the state laws whose effect is forbidden under federal law are those with a *significant* impact on [] rates, routes, or services.'" *Id.* at 645.

The Court finds that *Dilts* properly guides the outcome in this context, despite the fact that it dealt with wage and hour laws. For example, Delta raised in oral argument that one rationale of preemption is that airlines should not be subjected to a confusing patchwork of state regulations. *Rowe*, 552 U.S. at 373. However, wage and hour laws, just like consumer protection laws, do vary from state to state. And, the Ninth Circuit specifically stated that Congress's concern with an impermissible "patchwork" of laws was only relevant to laws "that are significantly 'related to' prices, routes and services." *Dilts*, 769 F.3d at 647 ("The fact that laws may differ from state to state is not, no its own, cause for [] preemption."). Moreover, to the extent a wage and hour law did directly relate to an airline's rates, routes, or services, such a statute would be appropriately preempted. *See People ex rel. Harris v. Pac Anchor Transportation, Inc.*, 329 P.3d 180, 188 (2014) (noting that the FAAAA "does not preempt generally applicable employment laws that affect prices, routes, and services"). A claim-by-claim analysis determines whether preemption applies—not the categorical nature of the statute at issue. *Id.* (where states had "unfair competition laws or deceptive trade practices statutes in force at the time Congress passed the FAAAA . . . Congress did not perceive these laws as implicating regulation of prices, routes, or services").

The analysis set forth by *Dilts* is not a bright line test—the Court's job is to "draw a line between laws that are "significantly" 'related to' rates, routes, or services, even indirectly, and thus are preempted, and those that have 'only a tenuous, remote, or peripheral' connection to rates, routes, or services, and thus are not preempted." *Id.* at 643. While this line may be easier to draw in cases like *Morales*, where it was "clear" the fare advertising restrictions at issue impacted rates,[4] the Ninth Circuit has set forth guidance for what to do in "borderline cases," where "a law does not refer directly to rates, routes, or services." *Dilts*, 769 F.3d at 646. In these cases, "the proper inquiry is whether the provision, directly or indirectly, *binds* the carrier to a particular price, route, or service and thereby interferes with the competitive market forces within the industry." *Id.* In applying this test to the meal and rest break laws, the Ninth Circuit found that "[t]hey do not set prices, mandate or prohibit certain routes, or tell [] carriers what services they may or may not provide, either directly or indirectly." *Id.* at 647. Accordingly, the meal and rest break laws did not bind a carrier to specific prices, routes, or services, and could not be preempted. *Id.*

Laws do not bind carriers to rates, routes, or services even if there is some impact on costs or market share. *Id.* at 646 (noting that "[n]early every form of state regulation carries some cost"). In *Dilts*, the Ninth Circuit acknowledged that employers may have to factor prevailing wage laws or safety regulations "into their decisions about the prices they set, the routes that they use, or the services that they provide." *Id.* State laws may also "shift[] incentives and make[] it more costly for [] carriers to choose some routes or services *relative* to others, leading the carriers to reallocate resources or make different business decisions." *Id.* at 647. However, as long as the state laws did not interfere with a carriers decision to "make their own decisions about where to fly and how many resources to devote to each route and service," such laws are not preempted. *Id.*

Here, the Court is not deciding whether false or deceptive advertising in general, or whether California consumer protection statutes generally, are preempted. The Court's task at hand is to discern "on which side of the line" state regulation of Delta's claims of carbon-neutrality falls (if they are not accurate). *California Trucking Ass'n v. Su*, 903 F.3d 953, 960 (9th Cir. 2018). The Court

---

[4] *Morales*, 504 U.S. at 388.

1  does not find that the claims at issue directly refer to rates, routes, or services.[5] Therefore, the

2  question before the Court is whether or not Delta would be bound to particular rates, routes, or

3  services if its representations on carbon-neutrality were regulated by state law. Delta argues that

4  Berrin's claims relate to both Delta's rates and services. As discussed below, the Court does not find

5  that Berrin's claims would bind Delta to any particular rate or service. Accordingly, the Court finds

6  that the claims are not preempted.

7                          i.  Berrin's claims do not sufficiently relate to Delta's rates.

8           Delta focuses on specific allegations in the FAC that Delta argues makes Berrin's claims

9  relevant to its rates—that Berrin would not have paid, or paid substantially less, for the flights (FAC

10 ¶ 8); that she lost money as a result (FAC ¶ 105); and that Delta gained "undeserved market share"

11 (FAC ¶ 1). The Court finds that none of these allegations sufficiently relate to Delta's rates to be

12 preempted under the ADA.

13          Here, any claims about what Berrin would have paid do not affect Delta's rates in the way

14 that allegations that Delta charged a price premium does. Allegations regarding the latter imply that

15 Delta should have charged less on its end, and therefore may implicate its rates. However,

16 allegations regarding the former are merely subjective opinions from a customer that can be

17 separated from how much Delta should charge. The damages Berrin alleges that she suffered cannot

18 be reverse-engineered to implicate Delta's rates, because the damages at issue are individualized to

19 Berrin. There are undoubtedly numerous other Delta customers who have no issue with Delta's rates,

20 regardless of its carbon-neutral status. *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890

21 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by

22 _____

23 [5] At the hearing, Delta argued that there is a direct relationship between the claims at issue and rates, routes,
   and services. However, it cannot be disputed that the claims do not directly reference Delta's rates, routes, or

24 services. Delta next argued that even if the relationship was indirect, the Court should next analyze whether
   there is a significant impact to rates, routes, and services, and only if it found there was not, would the *Dilts*

25 test apply. As an initial matter, this is an incorrect reading of the case law. A borderline case is one where a
   law "does not refer directly to rates, routes, or services," in which case the *Dilts* test applies. *Dilts*, 769 F.3d at

26 646. It would be illogical for the *Dilts* test to apply only after a finding that there is no significant impact—if a
   claim had no significant impact on rates, routes, or services, it would not be found to bind an airline to the

27 same. Meanwhile, if rates, routes, or services are directly referenced, evaluating whether the claim has a
   significant impact is still necessary to find preemption. *Morales*, 504 U.S. at 389. In any event, as explained

28 below, the Court does not find that Berrin's claims have a significant impact on rates, routes, and services.

1    misrepresentations into making a purchase, the economic harm is the same: the consumer has

2    purchased a product that he or she *paid more for* than he or she otherwise might have been willing to

3    pay if the product had been labeled accurately . . . Two wines might to almost any palate taste

4    indistinguishable—but to serious oenophiles, the difference . . . might be sufficient to carry with it

5    real economic differences in how much they would pay.").[6]

6         Berrin is not alleging that Delta charged more than it was supposed to for its flights. What

7    Berrin alleges is that she would not have paid as much as she did, or at all, for a Delta ticket if she

8    knew that Delta was not carbon-neutral. Allegations regarding how much any particular consumer

9    would be subjectively willing to pay for a flight have no bearing on how much Delta is required to

10   charge for its flights. Berrin's claims, if enforced, would not require that Delta should have to set its

11   rates at any particular amount, or that it has to make any claims about carbon neutrality with regards

12   to how it would like to market its flights. *See Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057,

13   1066 (9th Cir. 2017) (finding no preemption where "[n]o state law made [the defendant] promise

14   timely delivery of the first bag for $15" and that the defendant "could have made any of the promises

15   hypothesized or none of them"); *cf. Morales*, 504 U.S. at 375 (noting that challenged guidelines

16   "require[d] . . . that advertisements contain certain disclosures as to fare terms, restrictions, and

17   availability"). Rather, enforcement under these circumstances would entail that, should Delta want to

18   make a claim that it is carbon-neutral, it must actually be carbon-neutral. That damages may be

19   ultimately be calculated in the form of a price premium[7] does not change that the thrust of the claim

20   itself is not an allegation of a price premium. For example, if Berrin bought a ticket for a window

21   seat on a flight and was given an aisle seat instead, her remedy may be a refund, or the difference in

22

23   _____

24   [6] Delta cites to non-binding case law, specifically *Vail*, where the defendants were alleged to have charged
     extra to help defray the cost of a new security system that was never implemented. *Vail v. Pan Am Corp.*, 260

25   N.J. Super. 292, 299 (1992). The New Jersey Superior Court found that this claim "at the very least, indirectly
     relates to the 'rates' charged by an air carrier." *Id.* The Court does not interpret *Morales* to compel the

26   conclusion that *anything* that "indirectly" relates to the rates charged *must* be preempted. Rather, binding
     precedent appears to hold otherwise—specifically, "whether the effect is direct or indirect, 'the state laws

27   whose effect is forbidden under federal law are those with a *significant* impact on [] rates, routes or services."
     *Dilts*, 769 F.3d at 645.

28   [7] The Court is not making any finding at this stage of how damages would or should be calculated in this case.

9

1   price between the two seats. But, the nature of her allegation is not necessarily that she should have

2   paid less—she paid for the window seat and presumably had no objection to paying what she did for

3   it. The nature of her allegation would simply be that Delta wronged her by giving her the wrong seat.

4        Of course, it may be true that requiring Delta to not make false representations regarding the

5   company's environmental impact could impact the prices it could set, or cost Delta more to

6   accurately meet the carbon-neutral standards it is claiming. But, even if there is some cost associated

7   with being regulated, this is insufficient to find a relation to rates—just because regulations may

8   cause airlines to "face increased costs," that does not make them impermissible. *California Trucking*

9   *Ass'n*, 903 F.3d at 963. This is further exemplified by the Ninth Circuit's analysis of ADA

10  preemption on an anti-discrimination ordinance—there, although the airlines argued that the costs of

11  compliance with the ordinance would "force [them] to change their routes and services," the district

12  court found that the only costs complained of were "small, if not inconsequential." *Air Transport*

13  *Ass'n of America v. City and County of San Francisco*, 26 F.3d 1064, 1074 (9th Cir. 2011). Here,

14  Delta has not identified how, if at all, regulation on its carbon-neutrality representations would

15  significantly and necessarily impact the prices they could set.

16       Delta's argument that Berrin's allegations that Delta has gained undeserved market share

17  shows a relation to rates is similarly unpersuasive. Again, her claims would create no discernable

18  obligation as to how Delta, or any airline, must market towards environmentally conscious travelers

19  or how it should compete in the marketplace. While Delta notes a lack of authority where

20  preemption did not apply to an airline's advertisements, this does not mean that any attempt to

21  regulate an airline's advertising must be preempted. For example, *Wolens* specified that the

22  congressional purpose of the ADA was to leave to the airlines "the selection and design of marketing

23  mechanisms appropriate to the furnishing of air transportation *services*" (emphasis added). *Wolens*,

24  513 U.S. at 220. Therefore, if the message being advertised is not sufficiently related to rates, routes,

25  or services, the advertising may properly be regulated. *See Morales*, 504 U.S. at 390 (noting that

26  state regulation of "nonprice aspects of fare advertising" would be more "tenuous," such as in cases

27  involving obscenity). For instance, it is conceivable that Delta could gain market share if it

28  advertised "gambling and prostitution" to consumers. *Id.* at 390. But, the precedent set by the

1    Supreme Court clearly leaves room for states to regulate such advertisement, and suggests it would

2    not be preempted. *Id.*[8]

3           Accordingly, as the Court does not find that Berrin's claims would bind Delta to any

4    particular rate, the Court does not find that the claims sufficiently relate to rates such that preemption

5    would apply.

6                       ii.   Berrin's claims do not sufficiently relate to Delta's services.

7           The Court also does not find that Berrin's claims relate to Delta's services such that they

8    should be preempted, because regulation on carbon-neutrality would not bind Delta to any particular

9    service. As an initial matter, it is not clear that there is even a service at issue. Delta points out that

10   Berrin's allegations expressly implicate the manner by which Delta transports its passengers. Motion

11   at 11. However, the FAC is clear that carbon-neutrality is not achieved through any difference on

12   Delta's actual flights, which presumably exude the same amount of carbon regardless of how

13   carbon-neutral Delta represents itself to be. Rather, carbon-neutrality is achieved through carbon

14   offsetting via investment in the carbon offset market. FAC ¶ 5. While airlines surely may compete

15   by choosing to offer different services that would affect the travel experience, the Court finds that

16   carbon-neutrality does not qualify as such a "service." *See Charas v. TransWorld Airlines, Inc.*, 160

17   F.3d 1259, 1265–66 (9th Cir. 1998) ("It therefore follows that 'service,' when juxtaposed to 'rates'

18   and routes,' refers to such things as the frequency and scheduling of transportation, and to the

19   selection of markets to or from which transportation is provided.").[9] The Ninth Circuit in particular

20

21   [8] At the hearing, Delta argued that states had historic police powers to regulate prostitution and gambling, and
     therefore these examples were distinguishable. But, the historic police powers of the state is not an element in

22   the preemption analysis set forth by *Morales*. Rather, the preemption analysis as laid out by the Supreme
     Court in *Morales* focuses on whether a claim "relates to" rates, routes, or services. *Morales*, 504 U.S. at 390.

23   Even areas where states have had historic police powers may be preempted where Congress articulates a clear
     intent to do so. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). One could imagine that a state gambling

24   regulation that required airlines to offer seats with gambling services for a specific flight could very well be
     preempted consistent with the ADA's statutory purpose.

25

26   [9] Delta also argues that a CLRA claim requires a transaction that results in the sale of "goods or services," and
     that since carbon neutrality is not a good, it must be a service under the CLRA. Motion at 13. However, as

27   noted in *Charas*, the definition of the term "service" in the context of ADA preemption is particular to the
     statute, whereas the definition of "services" in the context of the CLRA appears to be quite different. Cal. Civ.

28

appears to have cabined the definition of "service," noting that to interpret it more broadly would "result in the preemption of virtually everything an airline does," which is "not what Congress intended." *Id.*[10]

Regardless, even if a service were involved, the regulation at issue does not bind Delta to providing carbon neutral flights. As the Ninth Circuit reminded in *Air Transport Ass'n of America*, "the question is not whether the Ordinance compels or binds [the airline] into not discriminating; the question is whether the Ordinance compels or binds them to a particular price, route, or service." *Id.* at 1074. Similarly, here, the question is not whether state regulation would compel Delta to make accurate representations about its carbon neutrality; the question is whether such regulation would bind them to a particular service, like offering carbon neutral flights or not. Regulation in this manner does neither, as Delta can do whatever it wishes with regards to carbon-neutrality—the regulation at issue would only require that Delta accurately represent what it is doing, if it chooses to make any representations at all.

Accordingly, the Court does not find that Berrin's claims bind Delta to any particular service, and therefore are not sufficiently related to services so as to be preempted.

### B. Berrin's FAL and UCL Claims Are Insufficiently Pleaded

Delta next argues that should preemption not apply, Berrin's FAL and UCL claims should be dismissed because there is an adequate legal remedy, which is demonstrated by Berrin's CLRA claim that seeks money damages. Delta cites to *Sonner*, a Ninth Circuit case finding that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." 971 F.3d 834, 844 (9th Cir. 2020). The Court finds that

---

Code § 1761(b) (defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods"). Therefore, it does not appear that the service under ADA preemption and the CLRA need to match—Berrin could assert that the service under the CLRA is a carbon-neutral flight without conceding preemption under the ADA.

[10] The Court notes that this appears to be the minority view among the circuits. *See Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) ("A majority of the circuits to have construed 'service' have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompass matters such as boarding procedures, baggage handling, and food and drink."). However, even under this view, carbon neutrality would not qualify as a service as it involves no labor from the airline to its passengers.

1   *Sonner* is clear that equitable restitution specifically cannot be sought where an adequate legal

2   remedy exists—therefore, to the extent that Berrin seeks equitable restitution (*see* FAC ¶ 95), the

3   Court finds that Berrin has actually alleged that there is an adequate legal remedy. *See* FAC ¶ 86

4   (seeking $1,000 and punitive damages for each class member). Therefore, she cannot adequately

5   allege the basis for seeking equitable restitution.

6   Nevertheless, this is insufficient for dismissal of the FAL and UCL claims completely. As

7   Delta concedes, neither *Sonner* nor other binding precedent would forbid Berrin from pleading

8   alternative remedies. Motion at 16. Here, while Berrin appears to be seeking actual damages for past

9   harm, the Court is satisfied that allegations of future harm may not have an adequate remedy at law,

10   and therefore equitable relief may be appropriate. *See* FAC ¶¶ 96, 109 (seeking injunctive relief for

11   FAL and UCL claims). However, Delta has separately raised that Berrin does not have standing for

12   injunctive relief. "Article III standing requires an injury that is actual or imminent, not conjectural or

13   hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a real or immediate

14   threat of irreparable injury." *Cole v. Oroville Union High Sch.*, 228 F.3d 1092, 1100 (9th Cir. 2000).

15   Berrin argues that she is a loyal customer who "hopes to continue to use Delta's business in the

16   future." Opposition at 16. However, no such allegations are in the FAC, and it does not appear that

17   Berrin has alleged any sort of intent to purchase flights from Delta in the future. Therefore, she lacks

18   standing to seek any sort of injunctive relief, as there is no threat of harm. The Court finds that this

19   deficiency may be cured by amendment.

20   Accordingly, the FAL and UCL claims are dismissed with leave to amend.

21   **C.  Berrin's CLRA Claim Is Adequately Alleged**

22   Delta argues that Berrin's CLRA claim must be narrowed, and specifically that there is no

23   applicability in this case for California Civil Code Section 1770(a), (2) and (3). Specifically,

24   1770(a)(2) forbids misrepresenting the source, sponsorship, approval, or certification of goods or

25   services, and 1770(a)(3) forbids misrepresenting the affiliation, connection, or association with, or

26   certification, by another. Cal. Civ. Code § 1770(a). The FAC places at issue the verification of the

27   offsets, in particular by "three major voluntary carbon credit vendors." FAC ¶¶ 49–55. This would

28   appear to relate to the source or certification of any carbon-neutrality. At the hearing, Delta

13

emphasized that Berrin is not alleging that *Delta* is the one directly falsifying any certifications. However, Berrin's allegations are that these vendors base their certifications on fraudulent projections of carbon reduction. FAC ¶ 20. Additionally, Berrin alleges that Delta either knew or should have known about this, such that its representations about its own carbon-neutrality are effectively misrepresentations about the accuracy of the underlying certification. FAC ¶ 69–70; *see Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 680 (2006) ("The CLRA is to be 'liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive practices and to provide efficient and economical procedures to secure such protection.'").

Accordingly, the Court finds the CLRA claim adequately alleged, although any equitable relief sought under the CLRA is also dismissed with leave to amend for lack of standing, just like the FAL and UCL claims discussed above.

**IV.    Conclusion**

For the foregoing reasons, the Court GRANTS IN PART Defendant's Motion to Dismiss, and hereby ORDERS as follows:

1.  Plaintiff's Second Cause of Action for False Advertising is DISMISSED with leave to amend;

2.  Plaintiff's Third Cause of Action for Unlawful, Unfair, and Fraudulent Trade Practices is DISMISSED with leave to amend.


IT IS SO ORDERED.


Dated: March 28, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

14