UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYANNA BERRIN, individually, and on behalf of all others similarly situated,<br><br>       Plaintiff,<br>    v.<br><br>DELTA AIR LINES, INC., a Delaware Corporation,<br><br>       Defendant. | Case No.:  2:23-cv-04150-MEMF-MRW<br><br>**ORDER DENYING PARTIAL MOTION TO DISMISS [ECF NO. 42]** |

  Before the Court is the Motion to Dismiss (ECF No. 42) filed by Defendant Delta Air Lines. For the reasons stated herein, the Court hereby **DENIES** the Motion to Dismiss.

/ / /

/ / /

1

I. **Factual Allegations**[1]

The Court set out in detail the facts alleged in the Complaint in its Order Granting in Part the Defendant's Motion to Dismiss. ECF No. 37 ("MTD Order"). To briefly summarize, this putative class action concerns Delta's misrepresentations of the company's total environmental impact of its business operations in its advertisements, corporate announcements, and promotional materials, thereby attaining undeserved market share from environmentally concerned consumers. ECF No. 39 ("SAC") ¶ 1.

Plaintiff Mayanna Berrin ("Berrin") previously alleged that beginning on March 6, 2020, and repeatedly again within three years preceding the filing of the Complaint, Defendant Delta Air Lines, Inc. ("Delta") has violated California's False Advertising Law ("FAL") by making untrue, false, deceptive, and/or misleading statements in connection with the advertising and marketing of Delta flights. *See id.* at ¶ 90. Berrin also previously alleged that since March 2020, Delta has violated and continued to violate California's Unfair Competition Law ("UCL") by (1) misrepresenting that Delta operated a carbon-neutral airline; (2) misrepresenting that Delta purchased carbon offsets such that it did not release any net additional carbon into the atmosphere on an annual basis; and (3) failing to inform Berrin and those similarly situated that the representations in (1) and (2) above are false. *See id.* at ¶ 101.

Berrin's sole new allegation in the SAC is that she is a "longstanding and loyal Delta customer" and that she "intends to purchase flights from Delta in the future." *Id.* at ¶ 17. Berrin argues that there is a risk of future concrete harm considering the difficulty for a consumer to independently evaluate the veracity of climate representations (*id.* at ¶ 27), the importance of said representations to consumers (*id.* at ¶ 37), and the impact said representations have on consumer behavior (*id.* at ¶ 38).

---

[1] The following factual allegations are derived from the allegations in Plaintiff's Complaint, ECF No. 1 ("Compl."), unless otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they *are* true.

## II. Procedural History

On May 30, 2023, Berrin filed her Complaint against Delta in this Court. Compl. On July 19, 2023, Berrin filed a First Amended Complaint. ECF No. 19 ("FAC"). On August 18, 2023, Delta filed a Motion to Dismiss the FAC. ECF No. 22. On March 28, 2024, the Court granted in part Delta's Motion to Dismiss. MTD Order. The Court dismissed the following claims from the FAC with leave to amend: Berrin's second cause of action for false advertising and third cause of action for unlawful, unfair, and fraudulent trade practices. *See id.* at 13. The Court found that equitable relief was not appropriate for past harm because Berrin alleged an adequate legal remedy, which was demonstrated by Berrin's CLRA claim seeking money damages. *Id.* at 12–13. However, the Court also found that Berrin's allegations of future harm may not have an adequate remedy at law, and therefore equitable relief may be appropriate if she could amend the FAC to allege an intent to purchase flights from Delta in the future. *Id.* at 13.

On April 10, 2024, Berrin filed the Second Amended Complaint on behalf of herself and others similarly situated, asserting three causes of action: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (2) violation of California's FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; and (3) violation of California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq. See generally* SAC.

For the FAL claim, Berrin seeks on behalf of herself and those similarly situated: (1) a declaration that Delta's practices constitute false, misleading, and deceptive advertising practices; (2) full restitution of monies acquired by Delta by means of the false, misleading, and deceptive advertising practices; and (3) an injunction prohibiting Delta from continuing to engage in the false, misleading, and deceptive advertising practices. *Id.* at ¶¶ 94–97. For the UCL claim, Berrin seeks on behalf of herself and those similarly situated: (1) equitable relief as a result of Delta's conduct; and (2) a declaration that Delta's trade practices are fraudulent, unfair, and/or unlawful. *Id.* at ¶¶ 108, 110. The form of relief at dispute is the injunctive relief for Berrin's claims. ECF No. 42 ("Motion" or "Mot.") at 4.

On May 3, 2024, Delta filed a Partial Motion to Dismiss the SAC. *See generally id*. On May 17, 2024, Berrin filed an Opposition. ECF No. 43 ("Opposition" or "Opp'n"). On May 24, 2024, Delta filed a Reply in Support of the Motion. ECF No. 44.

### III. Applicable Law

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009) apply with equal force to Article III standing when it is being challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"Article III of the U.S. Constitution authorizes the judiciary to adjudicate only 'cases' and 'controversies.'" *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "The doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Where a plaintiff lacks standing, a federal court "lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson*, 889 F.3d at 967 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "[T]o satisfy Article III's standing requirements, a plaintiff

must show (1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 185.

## IV. Discussion

Delta moves to dismiss Berrin's second and third causes of actions for violations of California's FAL and UCL on the basis that Berrin has failed to allege a likelihood of future injury and thus lacks Article III standing to seek injunctive relief. *See* Mot. at 4.

In the Court's previous Order granting in part Delta's Motion, it found that Berrin lacked standing to seek injunctive relief for her FAL and UCL claims because she had not alleged any threat of future harm in the FAC. *See* MTD Order at 13. "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of irreparable injury." *Cole v. Oroville Union High Sch.*, 228 F.3d 1092, 1100 (9th Cir. 2000). Berrin's SAC added a sole new allegation that she is a "longstanding and loyal Delta customer" who "intends to purchase flights from Delta in the future." SAC ¶ 17.

As explained further below, the Court finds that Berrin has adequately alleged Article III standing for injunctive relief on all her claims.

### A. Berrin's Injury is Concrete and Particularized

Regarding the first element of Article III standing, "[a]lthough related, concreteness and particularity are distinct concepts." *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016)). Particularized injuries "affect the plaintiff in a personal and individual way," while a "concrete injury must be de facto; that is, it must actually exist." *Spokeo*, 578 U.S. at 340 (quoting *Lujan*, 504 U.S. at 560 n.1). "Indeed, 'concrete' is not . . . necessarily synonymous with 'tangible.'" *Davidson*, 889 F.3d at 971 (citing *Spokeo*, 578 U.S. at 340).

*Davidson* is the Ninth Circuit authority controlling on the issue of Article III standing with respect to injunctive relief. There, the plaintiff was a consumer who sought injunctive relief, inter

alia, for her FAL and UCL claims regarding her purchase of wipes that the defendant had labeled as "flushable," but in fact were not flushable. *Id.* at 962. The plaintiff purchased these wipes because she believed that the flushable wipes were more environmentally friendly than the non-flushable wipes. *Id.* at 961. The plaintiff's alleged harm was her "inability to rely on the validity of the information advertised on [the defendant's] wipes despite her desire to purchase truly flushable wipes." *Id.* at 971. The Ninth Circuit held that the plaintiff had Article III standing because she adequately alleged that the defendant engaged in false advertising and that she will suffer further harm in the absence of an injunction. *Id.* at 961.

In *Davidson*, the court found that the plaintiff's injury was concrete based on her allegation that "she would purchase truly flushable wipes manufactured by [the defendant] if it were possible . . ." *Id.* at 971. The court also found that the plaintiff's injury was particular to her "because it would affect her, as a direct consumer of [the defendant's] wipe products, in a personal and individual way." *Id.*

Delta attempts to distinguish *Davidson* on the ground that Berrin did not include the same types of allegations as the plaintiff did in *Davidson* to sufficiently allege a concrete and particularized injury. Mot. at 6. According to Delta, therefore, Berrin lacks Article III standing. *See id.* Delta further maintains that Berrin could not allege the same types of allegations as the plaintiff in *Davidson* because purchasing airfare does not have the same type of continuous exposure to product labeling as purchasing everyday consumer products. *Id.*

The Court finds that Berrin includes similar allegations as the plaintiff in *Davidson*. Berrin's alleged injury is her inability to rely on the validity of Delta's representations that it is a carbon-neutral airline, despite her intention to continue flying Delta. *See* Opp'n at 7. Like the plaintiff's concrete injury in *Davidson*, Berrin's injury is also concrete because she "would not have purchased Defendant's services at the price she paid for them if she understood at the time of purchase that Defendant's carbon neutral representations were false." SAC ¶ 9. Additionally, Berrin's injury is concrete because "[Berrin] and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices . . ." *Id.* at ¶ 92. Some of Delta's false advertising included advertisements, LinkedIn posts, and business reporting in which Delta was

touted as a carbon-neutral airline. *Id.* at ¶ 14. Berrin alleges that she viewed these advertisements, LinkedIn posts, and business reporting prior to purchasing multiple flights from Delta since March 2020, and that she had used these representations in deciding to purchase her flights with Delta, rather than some other airline. *Id.* at ¶¶ 13–15.

Berrin's allegations sufficiently show that her injury is concrete, i.e., that it exists, because she purchased multiple flights from Delta since March 2020 and alleges that she would not have paid for them at that price if she knew at the time that Delta's representations were false.

Similar to the plaintiff's particularized injury in *Davidson*, Berrin's injury is also particularized because she is a direct consumer of Delta's flights. *See id.* at ¶¶ 13, 17. In addition to Berrin stating that she is a "longstanding and loyal Delta customer" who "intends to purchase flights from Delta in the future," Berrin and the class further maintain that had they "been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Delta flights, or paying less for them." *Id.* at ¶¶ 17, 92. Further, Berrin is one of the "environmentally concerned consumers" who detrimentally relied on Delta's "misrepresent[ation of] the total environmental impact of its business operations in its advertisements, corporate announcements, and promotional materials . . . ." *See id.* at ¶ 1.

Berrin has sufficiently alleged a particularized injury because refraining from purchasing future Delta flights, notwithstanding her desire to continue purchasing Delta flights and being an environmentally concerned consumer, is an injury that affects her in a harmful and personal way.

Thus, Delta's reliance on *Davidson* is misplaced because Berrin sufficiently alleged a concrete and particularized injury similar to the plaintiff's injury in *Davidson*. Delta misreads *Davidson* because the Ninth Circuit does not require more than an allegation that the misled plaintiff intends to continue purchasing the product from the defendant but is unable to rely on the defendant's representations, thereby constituting a concrete and particularized injury. *See Davidson*, 889 F.3d at 961.

To the extent that Delta reads *Davidson* as requiring regular and continuous exposure for the injury to be concrete and particularized, Delta is wrong. *See* Mot. at 6. The court in *Davidson* makes no such holding and in fact does not refer to the plaintiff's allegations of continuous exposure in

analyzing the "concrete and particularized" element. *See Davidson*, 889 F.3d at 970–71. Delta's reading amounts to a holding that a plaintiff cannot establish a concrete and particularized injury outside of the consumer goods context because purchasing flights does not "lend itself to the type of continuous exposure to product labeling" as the purchase of everyday consumer products. *See* Mot. at 6.[2]

### B. Berrin's Injury is Actual or Imminent

Turning to the next element of the injury in fact required under Article III, a plaintiff must adequately allege "an imminent or actual threat of future harm caused by. . ." the defendant's false advertising. *Davidson*, 889 F.3d at 970. "The 'threatened injury must be certainly impending to constitute injury in fact' and 'allegations of possible future injury are not sufficient.'" *Id.* at 967 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Past wrongs, though insufficient by themselves to grant standing, are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Delta argues that Berrin failed to allege an actual or imminent injury because she does not show that she is likely to encounter Delta's alleged deceptions in the future. Mot. at 7. Delta provides three reasons why Berrin is not likely to encounter Delta's alleged deceptions in the future: (1) Berrin is a previously deceived plaintiff; (2) Berrin failed to make any allegations suggesting that she regularly encounters or is continuously presented with Delta's representations regarding its carbon neutrality; and (3) Berrin failed to make any allegations regarding her inability to rely on Delta's representations. *Id.* at 8–9.

i. <u>Being a previously deceived plaintiff does not bar Berrin from alleging an actual or imminent injury.</u>

The *Davidson* court held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling . . . ." *Davidson*, 889 F.3d at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). The court reasoned that "[k]nowledge that the

---

[2] Frankly, even if regular and continuous exposure were a requirement for the injury to be concrete and particularized, it appears to be met. Reading all inferences in Berrin's favor, it is plausible that she encounters a Delta advertisement of its purported carbon neutrality at least as often as Davidson saw "flushable" wipes at her local grocery store. *See Davidson*, 889 F.3d at 972.

advertisement or label was false in the past does not equate to knowledge that it will remain false in the future," and that a "threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [he or] she would like to." *Id.* at 969–70.

Delta notes that Berrin is a previously deceived plaintiff based on Berrin's allegations that Delta's representations are "manifestly and provably false" and that "foundational issues with the voluntary carbon offset market mean the purchase of said offsets cannot make a company 'carbon neutral.'" SAC ¶ 6. Thus, Delta argues that Berrin's "disclaimer of any faith in the carbon credit market precludes her from plausibly alleging the likelihood of future injury." Mot. at 10. Here, despite now knowing that Delta's carbon neutral assertion "was false at the time of purchase, should [Berrin] encounter the . . . [carbon neutral assertion] on a[n advertisement or in some other form] . . . today, she could not rely on that representation with any confidence." *Davidson*, 889 F.3d at 971. Thus, Berrin's actual or imminent injury is the difficulty to verify Delta's future carbon neutral representations, which prohibits Berrin and the class of similarly situated persons from relying on such representations when deciding to purchase another Delta flight in the future.

The Court finds that Berrin has alleged an actual or imminent injury despite her being a previously deceived plaintiff because the court in *Davidson* ruled that a previously deceived plaintiff's inability to rely on future representations is sufficient to allege future harm and have standing to seek injunctive relief.

ii.  <u>Regular or continuous exposure is not required to allege an actual or imminent injury.</u>

The Davidson court goes on to hold that though a previously deceived plaintiff may have standing to seek injunctive relief against false advertising or labeling, "[w]here standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" *Id.* at 967 (quoting *Lyons*, 461 U.S. at 111). Delta argues that Berrin has not shown this. *See* Mot. at 7. Delta bases this contention on an unpublished Ninth Circuit case, *Lanovaz v. Twinings North America Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018), which cited the language from *Lujan* stating that a "some day intention—without any description of

1  concrete plans, or indeed even any specification of when the some day will be—does not support a
2  finding of the 'actual or imminent' injury that Article III requires" (quoting *Lujan*, 504 U.S. at 564).

3  Delta's argument based on *Lanovaz* fails for two reasons:; (1) the facts of this case are
4  distinguishable from *Lanovaz* and (2) Berrin does not merely allege a "some day intention" as
5  quoted from *Lujan*. In *Lanovaz*, the Ninth Circuit held that the plaintiff lacked Article III standing
6  based on her statements from a deposition and an interrogatory response that she would not purchase
7  products from the defendant again, "even if the company removed the allegedly misleading labels"
8  and that she would "consider buying" the defendant's products in the future. *Id.* The facts of this
9  case are distinguishable because Berrin did not allege that she would "consider buying" Delta flights
10 in the future, but that she "intends to purchase flights from Delta in the future," and she certainly did
11 not allege that she would not purchase flights from Delta again, even if Delta stopped making carbon
12 neutral representations. *See* SAC ¶ 17.

13 Further, Berrin's intention to continue flying Delta is sufficient under *Davidson* to show an
14 actual or imminent injury, even though she has not alleged any new carbon neutral representations
15 made by Delta. Delta relies on *Lujan* to argue that Berrin's intention to continue flying Delta is
16 merely a "some day intention," which is insufficient to confer Article III standing. *See* Mot. at 7. In
17 *Lujan*, the plaintiffs sought injunctive relief against a rule promulgated by the Secretary of the
18 Interior interpreting a section of the Endangered Species Act. *Lujan*, 504 U.S. at 558. The Supreme
19 Court held that the plaintiffs failed to allege an imminent injury because they alleged no facts
20 showing how damage to the species would produce an imminent harm to them. *Lujan*, 504 U.S. at
21 564. One of the plaintiffs stated that her harm is the fact that she "'intends to return to Sri Lanka in
22 the future and hopes to be more fortunate in spotting at least the endangered elephant and leopard.'"
23 *Lujan*, 504 U.S. at 563. Additionally, when this plaintiff was asked at a deposition if she had any
24 future plans to return to Sri Lanka, "she reiterated that 'I intend to go back to Sri Lanka,'" but stated
25 "that she had no current plans: 'I don't know when. There is a civil war going on right now. I don't
26 know. Not next year, I will say. In the future.'" *Lujan*, 504 U.S. at 564. Thus, the Supreme Court
27 found that the fact that the plaintiffs "'had visited' the areas of the projects before the projects
28 commenced proves nothing." *Lujan*, 504 U.S. at 564. The Supreme Court reasoned that a

1 "profession of an 'intent' to return to the places they had visited before—where they will
2 presumably, this time, be deprived of the opportunity to observe animals of the endangered
3 species—is simply not enough. Such 'some day' intentions—without any description of concrete
4 plans, or indeed even any specification of *when* the some day will be—do not support a finding of
5 the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564.

6       Here, Berrin's injury is distinguishable from the plaintiffs' injury in *Lujan* because she is a
7 consumer who intends to continue purchasing Delta flights but cannot do so because of her inability
8 to rely on Delta's carbon neutral representations that they have made in the past. Therefore, Berrin's
9 injury is similar to the plaintiff's injury in *Davidson*, where the Ninth Circuit found that "[a]
10 consumer's inability to rely on a representation made on a package, even if the consumer knows or
11 believes the same representation was false in the past, is an ongoing injury that may justify an order
12 barring the false advertising." *Davidson*, 889 F.3d 956 at 961. Further, Berrin's intention to continue
13 flying Delta is sufficient even if it is a bare intent because the Supreme Court asserted that "[a]t the
14 pleading stage, general factual allegations of injury resulting from the defendant's conduct may
15 suffice" because "on a motion to dismiss[,] we 'presume that general allegations embrace those
16 specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v.*
17 *National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

18       Delta also relies on the following allegations from the plaintiff in *Davidson* to argue that
19 Berrin is required to allege regular or continuous exposure to Delta's misrepresentations to show an
20 actual or imminent injury: the plaintiff alleged that she "continues to desire to purchase wipes that
21 are suitable for disposal in a household toilet; would purchase truly flushable wipes manufactured by
22 [the defendant] if it were possible; regularly visits stores . . . where [the defendant's] 'flushable'
23 wipes are sold"; and "is continually presented with [the defendant's] flushable wipes packaging but
24 has no way of determining whether the representation 'flushable' is in fact true." *Davidson*, 889 F.3d
25 at 970–71. Delta argues that based on these allegations and the fact that district courts following
26 *Davidson* have "generally require[d] a plaintiff to make similar allegations [to those in *Davidson*]
27 that they are likely to encounter defendants' alleged deceptions on a regular or continuous basis to
28 find standing," Berrin is also required to make similar allegations as the plaintiff in *Davidson*. Mot.

at 7.³ As mentioned above, to the extent that Delta reads *Davidson* as requiring regular and continuous exposure for the injury to be actual or imminent, Delta is wrong. Delta appears to read the court's holding that "[w]here standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he [or she] will again be wronged in a similar way'" to mean that regular or continuous exposure is a requirement to allege an actual or imminent injury and relies on nonbinding authority to support this reading. *Davidson*, 889 F.3d at 967. Delta's reading amounts to a holding that a plaintiff cannot establish an actual or imminent injury outside of the consumer goods context because purchasing flights does not have the same type of continuous exposure as the purchase of everyday consumer products, and Berrin, "unlike *Davidson*," did not allege any facts that she was continuously exposed to Delta's carbon neutral representations. *See* Mot. at 6, 8.⁴ The court in *Davidson* makes no such holding. Rather, the court in *Davidson* considered "the FAC's allegations" as a whole in determining that the plaintiff alleged an actual or imminent injury. *Davidson*, 889 F.3d at 970–71. Further, *Davidson* found that an allegation of an ongoing injury, not regular and continuous exposure, to be sufficient to allege an actual or imminent injury. *Id.* at 961 (holding that "[a] consumer's inability to rely on a representation made on a package, even if the consumer knows or believes the same representation was false in the past, is an ongoing injury that may justify an order barring the false advertising").

The Court finds that *Davidson* is clear that a plaintiff's inability to rely on a representation on a product is sufficient to allege an ongoing injury. *Id.* Berrin alleges that "the veracity of Delta's climate representations is continually dependent on facts outside of an ordinary consumer's readily

---

³ Delta cites to nonbinding district court opinions to support its contention that a plaintiff lacks standing where he or she does not allege that they "regularly" encounter the representation, unlike the plaintiff in *Davidson*. *See, e.g.*, *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078, 2018 WL 6264994, at *2 (C.D. Cal. Oct. 9, 2018) (holding the plaintiff lacked standing to seek injunctive relief where the plaintiff failed to allege that he "regularly purchases bats, or is regularly visiting stores where bats are sold"); *Morizur v. Seaworld Parks and Ent., Inc.*, No. 15-cv-02172, 2020 WL 6044043, at *12 (N.D. Cal. Oct. 13, 2020) (holding the plaintiffs lacked standing to seek injunctive relief where the plaintiffs failed to allege that they were regularly "confronted with SeaWorld's allegedly false statements"). Mot. at 7.

⁴ Frankly, even if regular and continuous exposure were a requirement for the injury to be actual or imminent, it appears to be met. Reading all inferences in Berrin's favor, it is plausible that she encounters a Delta advertisement of its purported carbon neutrality at least as often as Davidson saw "flushable" wipes at her local grocery store. *See Davidson*, 889 F.3d at 972.

1  available information . . . making said representations precisely those where the risk of future
2  deception cannot be cured by the singular discovery of a previous misrepresentation." Opp'n at 7.
3  Thus, the Court finds that Berrin's allegation that she is unable to determine the validity of Delta's
4  ongoing or future carbon neutral assertions is an ongoing or future injury, and consequently shows a
5  sufficient likelihood that she will again be wronged in a similar way. *See id.*

         iii.      <u>Berrin adequately alleges her inability to rely on Delta's representations.</u>

Delta finally argues that Berrin does not specifically allege that she is unable to purchase flights in the future because she cannot rely on Delta's carbon neutral representations, as required by *Davidson*. Mot. at 8. As mentioned above, in *Davidson*, the plaintiff alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet," and she "is continually presented with [the defendant's] flushable wipes packaging but has no way of determining whether the representation 'flushable' is in fact true." *Davidson*, 889 F.3d at 970.

Similarly, here, Berrin alleges that she "intends to purchase flights from Delta in the future" and that "the veracity of Delta's climate representations is continually dependent on facts outside of an ordinary consumer's readily available information . . . making said representations precisely those where the risk of future deception cannot be cured by the singular discovery of a previous misrepresentation." SAC ¶ 17; Opp'n at 7. Berrin need not use the same exact words as the plaintiff in *Davidson* to meet the requirements of standing. Berrin has alleged an inability to rely on Delta's carbon neutral representations when deciding whether to purchase flights from Delta in the future, which the Ninth Circuit held is sufficient to allege an ongoing injury to have Article III standing for injunctive relief.

The Court finds that Berrin has adequately alleged facts that she is unable to purchase flights in the future because of her inability to rely on Delta's carbon neutral representations, as required by *Davidson*.

        **C. Berrin's Injury is Likely Redressable by a Favorable Decision**

Finally, Berrin "meets the redressability prong of standing because a favorable ruling would likely provide redress for her alleged injury." *Davidson*, 889 F.3d at 972 (finding injunctive relief likely to redress plaintiff's injury because such relief would require defendant to "only make truthful

representations on their wipe products upon which" the plaintiff "could reasonably rely"). Like the plaintiff's injury in *Davidson*, injunctive relief is likely to redress Berrin's injury because she is unable to determine if Delta's carbon neutral claims are accurate when she buys Delta flights in the future, and an injunction would require Delta to only make truthful representations regarding its environmental impact. *See* Opp'n at 7.

Accordingly, the Court finds that Berrin has sufficiently alleged Article III standing for injunctive relief for her FAL and UCL claims.

## V. Conclusion

For the foregoing reasons, the Court hereby DENIES Delta's Partial Motion to Dismiss. ECF No. 42.

IT IS SO ORDERED.

Dated: December 11, 2024

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

14