1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HADERLEIN AND KOUYOUMDJIAN LLP**
Jonathan Haderlein (Cal. Bar No. 336644)
jhaderlein@handklaw.com
Krikor Kouyoumdjian (Cal. Bar No. 336148)
kkouyoumdjian@handklaw.com
700 Flower St., Suite 1000
Los Angeles, California 90017
Telephone:      (818) 304-3435

**RUSSELL LAW, PC**
L. David Russell (Cal. Bar No. 260043)
david@russelllawpc.com
1500 Rosecrans Ave, Suite 500
Manhattan Beach, California 90266
Telephone: (323) 638-7551

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAYANNA BERRIN, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 2:23-cv-04150-MEMF-MRW<br><br>**PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Maame Ewusi-Mensah Frimpong<br>Hearing Date: December 18, 2025<br>Hearing Time: 10:00 a.m.<br>Hearing Location: Courtroom 8B |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**TO THE COURT, ALL PARTIES, ALL INTERESTED PERSONS, AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on December 18, 2025, at 10:00 a.m. in the above-entitled Court, before the Honorable Maame Ewusi-Mensah Frimpong, in Courtroom 8B of the Central District of California Courthouse located at 350 West First Street, Los Angeles, CA 90012, Plaintiff Mayanna Berrin ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her counsel of record Jonathan Haderlein and Krikor Kouyoumdjian of Haderlein and Kouyoumdjian LLP, and L. David Russell of Russell Law, PC, will and hereby do move for class certification pursuant to Fed. R. Civ. P. 23(b)(3).

Plaintiff moves this Court for an Order as follows:

1.     Plaintiff seeks class certification under Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on all causes of action set forth in Plaintiff's Third Amended Class Action Complaint filed against Defendant Delta Air Lines, Inc. ("Defendant" or "Delta") on behalf of the following Class:

> All California residents exposed to Delta's representations that it was carbon neutral made between September 1, 2021 through March 31, 2022, who purchased tickets to fly on Delta Airlines from September 1, 2021 through the present.

Plaintiff additionally seeks certification of the following subclass:

> All California residents, who between September 1, 2021 through March 31, 2022, purchased tickets to fly on Delta Airlines on the Delta.com website.

2.     That Plaintiff Mayanna Berrin is appointed as Class Representative.

3.     That Jonathan Haderlein and Krikor Kouyoumdjian of Haderlein and Kouyoumdjian LLP, and L. David Russell of Russell Law, PC are appointed Class Counsel pursuant to Fed. R. Civ. P. 23(g).

4.     Plaintiff will also move the Court for injunctive relief.

This motion is based upon this notice of motion, the concurrently filed memorandum of points and authorities, declarations, exhibits, and evidence submitted in support thereof, any written or oral arguments or other evidence submitted in connection therewith, all relevant

1   papers on file in this action, and upon such further arguments and evidence as may be

2   presented in connection with the hearing of this matter.

3

4   Dated: August 29, 2025                    Respectfully submitted,

5

6                                             /s/ L. David Russell

7                                             **RUSSELL LAW, PC**
                                              L. David Russell (Cal. Bar No. 260043)

8
                                              **HADERLEIN AND KOUYOUMDJIAN LLP**
9                                             Jonathan Haderlein (Cal. Bar No. 336644)
                                              Krikor Kouyoumdjian (Cal. Bar No. 336148)
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1

## <u>TABLE OF CONTENTS</u>

2

3

I.      INTRODUCTION ............................................................................................1

II.     RELEVANT FACTUAL BACKGROUND .................................................1

    A.    Delta Announces That It is The "World's First Carbon Neutral Airline." ........................................................................................................1

    B.    Delta Undertakes A Long-Term Advertising Campaign Touting Its Purported Carbon Neutrality Across All Media.......................................2

    C.    Delta's Advertising Touting Its Carbon Neutrality Was A Success. .......6

    D.    Delta's Carbon Neutral Claims Were False And Misleading. ................6

    E.    Plaintiff And California Residents Purchasing Tickets From Delta Were Exposed To Delta's Misrepresentations Regarding Carbon Neutrality...8

    F.    Delta Fails to Retract Its Claim That It Is Carbon Neutral. ....................9

III.    LEGAL STANDARD ....................................................................................10

IV.     ARGUMENT .................................................................................................10

    A.    The Proposed Class and Subclass Are Adequately Defined and Clearly Ascertainable...........................................................................................10

    B.    Numerosity (Fed. R. Civ. P. 23(a)(1)). ..................................................11

    C.    Commonality (Fed. R. Civ. P. 23(a)(2)). ...............................................12

    D.    Typicality (Fed. R. Civ. P. 23(a)(3)). .....................................................13

    E.    Adequacy (Fed. R. Civ. P. 23(a)(4). ......................................................14

    F.    Class Certification Under Rule 23(b)(2) and (b)3 Should Be Granted..14

    G.    Predominance of Common Questions (Fed. R. Civ. P. 23(b)(3)) ..........16

    H.    Damages Can Be Determined on a Class-Wide Basis. ..........................20

    I.     Superiority (Fed. R. Civ. P. 23(b)(3)). ...................................................24

V.      CONCLUSION ..............................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013)............................................................13

*Bargetto v. Walgreen Co.*, No. 22-CV-02639-TLT, 2024 WL 3493260 (N.D. Cal. June 14, 2024) ........................................................................................................................................17

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)...................................................................22

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121(9th Cir. 2017)................................................10

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011)............................12, 17

*Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586 (E.D. Cal. 2008) ......................24

*Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111 (N.D. Cal. 2010) .................................17

*Combe v. Intermark Commc'ns, Inc.*, No. CV0909127SJOPJWX, 2010 WL 11597517 (C.D. Cal. Nov. 18, 2010) ....................................................................................................................13

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .....................................................................20

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2nd Cir. 1995) ........................11

*Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41 (D. Conn. 2011)........................................14

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974).................................................................24

*Elliott v ITT Corp.*, 150 F.R.D. 569 (N.D. Ill. 1992) ..............................................................10

*Ellis v. Costco Wholesale Corporation*, 657 F.3d 970 (9th Cir. 2011).....................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 US 804 (2011).............................................17

*Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997)..............................................................14

*Forcellati v. Hyland's, Inc.*, CV 12-1983-GHK (MRWx),  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ..............................................................................................................................17, 18

*Gates v. Rohm and Haas Co.*, 655 F.3d 255 (3rd Cir. 2011).....................................................15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).................................................13, 14

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)..................................................13

*In re First All. Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006).......................................................19

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ...............................19, 23

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009)........................................................................17

*Jabbari v. Farmer*, 965 F.3d 1001 (9th Cir. 2020) ................................................................16

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ........................................................13

*Klay v. Humana, Inc.,* 382 F.3d 1241 (11th Cir.2004) ............................................................24

*Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011 (9th Cir. 2024)........................................19, 21, 23

*Navellier v. Sletten*, 262 F.3d 923 (9th Cir. 2001) .................................................................10

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006) ..........................11

*Nguyen v. Nissan North America, Inc.* 932 F.3d 811 (9th Cir. 2019)................................21, 22

*Noohi v. Johnson & Johnson Consumer Inc.*, No. 23-55190, 2025 WL 2089582 (9th Cir. July 25, 2025) ..............................................................................................................18, 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) .................................................................................................................................13, 23

*People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219 (2013)..........................................................16

*People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064 (2017)...................................................16

*Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565 (C.D. Cal. 2016) ................................13, 17

*Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) .......................................................................................................................14

*Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245 (N.D. Cal. 2015) ............................24

*Red v. Kraft Foods, Inc.*, No. CV 10–1028–GW(AGRx), 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ......................................................................................................................11

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) .....................................................................10

*Reitman v. Champion Petfoods USA, Inc.*, No. CV18-1736-DOC(JPRX), 2019 WL 7169792 (C.D. Cal. Oct. 30, 2019), *aff'd*, 830 F. App'x 880 (9th Cir. 2020) .......................17, 18

*Schwartz v. Upper Deck Co.*, 183 F.R.D. 672 (S.D. Cal. 1999) ................................................10

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011)...............................................17

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) .....................11, 13, 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................................12, 13

*Warner-Lambert Co. v. FTC*, 562 F.2d 749 (D.C. Cir. 1977) .................................................16

*Wilson v. Cty. of Gloucester*, 256 F.R.D. 479 (D.N.J. 2009).................................................15

*Yumul v. Smart Balance, Inc.*, 733 F. Supp.2d 1117 (C.D. Cal. 2010).....................................18

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001)................................24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

Cal. Bus. § Prof. Code §§ 1735..........................................................................16

Cal. Bus. § Prof. Code §§ 17203.........................................................................16

Cal. Civ. Code § 1780(a) ....................................................................................16

Fed. Rule Civ. Proc. 23 ................................................................................ passim

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

1    **I.    INTRODUCTION**

2        This case illustrates the purpose of Rule 23.  Between September 2021 and March

3    2022, Defendant Delta Air Lines, Inc. ("Delta" or "Defendant") executed a multimillion-dollar

4    advertising campaign saturating every major consumer touchpoint—its website, inflight

5    entertainment, email marketing, social media, paid streaming ads, and even cocktail napkins—

6    with the unequivocal message that it was "Carbon Neutral."  This message was not targeted to

7    a niche audience; it was uniformly broadcast to millions of California consumers, including

8    every prospective ticket purchaser navigating Delta's online sales path.

9        These representations were false and misleading.  As Delta's internal documents and

10    executive testimony confirm, the carbon neutrality claim was premised on unreliable carbon

11    offsets, temporal accounting gaps, and incomplete coverage that excluded major sources of

12    emissions (only covering Delta's airline operations and not its total carbon footprint).  Delta's

13    sustainability leadership acknowledged the risk of "████████," admitting the claims could

14    be "██████."  Yet the company not only persisted in making them, but promoted them long

15    after it had abandoned any semblance of actual carbon neutrality, never issuing a retraction.

16        Because every Class member's claim arises from the same uniform course of conduct,

17    turns on the same false material representations, and seeks relief that can be established

18    through common proof, this dispute cries out for resolution on a representative basis.

19    Certification will ensure that Delta is held to account in a single, efficient proceeding, rather

20    than forcing millions of Californians to relitigate the same facts and law over and over.  This

21    approach will promote fairness, avoid inconsistent judgments, and fulfill the central purpose of

22    the class action mechanism: delivering justice while promoting judicial efficiency.

23    **II.    RELEVANT FACTUAL BACKGROUND**

24        **A.    Delta Announces That It is The "World's First Carbon Neutral Airline."**

25        From February 14, 2020, through March 31, 2022, Delta represented that it was a

26    carbon neutral operation—in fact, "the world's first carbon-neutral airline," and touted that it

27    "committed $1B over ten years" to reach that position.  Exhibit 1 to Russell Decl. (for ease of

28    reference, citations to "Ex." without further, refer to those attached to the Russell Decl.) at #1

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

and #2; Ex. 2 at #1; Ex. 3 at 77294; Ex. 4 at 100:3-25 (explaining that "███████████

████████████████████████████████████████████████████████████████████████

███████████); Ex. 5 at 7761 (Delta advertised itself as "███████████████████████████

██████████████████████████████████████████████").[1]

Delta announced its operation as a carbon neutral airline in multiple media channels to the public, including in press releases, on its social media accounts, in emails to consumers, on its website, and on in-flight materials, including in-flight napkins. Ex. 1 at #11; Ex. 2 at #'s 3, 4, 6, 7, 8; Ex. 10 at 121787. Touting its "████████████████████████" was Delta's "███

██████████████," as Delta found ways to drive awareness of its purported commitment to carbon neutrality. Ex. 11 at 98:3-7, 31:24-32:2; Ex. 12 at 56777; Ex. 4 at 102:3-6 ("████████

████████████████████████████████████████████████████████████████████████

████████████████████████████").

On February 14, 2020, Delta issued a press release representing its commitment to being the first carbon neutral airline. Ex. 13 at 22:23-23:9. In follow-up inquiries with the press, Delta explained that it would "████████████████████████████████████████████████."

Ex. 14 at 100563. Delta received significant earned media from this press release, with several news articles ranging "███████████████████████ on Delta's pledge to "become first carbon-neutral airline in the world." Ex. 13 at 38:21-40:24, 44:4-45:5; Ex. 15 at 130236.

**B.      Delta Undertakes A Long-Term Advertising Campaign Touting Its Purported Carbon Neutrality Across All Media.**

Starting in the beginning of September 2021 through the end of March 2022, Delta ran a major advertising campaign where its "████████████████████████████████████████████

████████████████[.]"[23] Ex. 8 at 3754-55; *see also* Ex. 17 at 45308 (████████████████████

_____

[1] Delta made the decision ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ Ex. 6 at 5012;

Ex. 58 at #19 (identifying representative examples of the reasons for Delta's decision-making).

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 8 at 3755; Ex. 9 at 56:24-58:6.

[2] The paid portion of this campaign was referred to as the "Paradox of Travel" campaign. Ex. 11 at 27:25-28:23.

[3] Carbon Neutral means "being neutral on our carbon emissions." Ex.13 at 77:18-23; Ex. 16 19:18-20:7.

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

1  ███████████████████████████████████████████████████████████████

2  ███████████      In all, Delta spent $8,146,321.63 on paid media advertising related to its Carbon

3  Neutrality pledge, while retaining well known advertising firms to assist with its

4  communications strategy.  Ex. 58 at #5; Ex. 59 at #9.  This advertising expenditure does not

5  count resources and funds spent on advertising on Delta's own media, including the

6  advertising on Delta's website and on Delta flights.

7  　　　In the advertising, Delta made three substantially similar representations that it was

8  carbon neutral: that it was (a) **"Carbon Neutral Since March 2020"**; (b) **Committed To "A**

9  **Carbon-Neutral Future"** (often paired with "Since March 2020"); and (c) **"The World's**

10  **First Carbon-Neutral Airline"** (together, referred to as the "Carbon Neutral

11  Representations").  Delta made these representations across various media to purchasers of

12  Delta's tickets.

13  　　　　　**1.　　　Website Advertisements**

14  　　　Delta's website advertisements including the Carbon Neutral Representations ran from

15  September 2021 through March 2022 and were placed on portions of the Delta.com website

16  that consumers were required to interact with to "select flights to purchase."  Ex. 11 at 68:20-

17  69:4; Ex. 18 at #33 (admitting ads were on sales path).

18  　　　On multiple ads, Delta claimed it was "**Carbon Neutral Since March 2020**."  Ex. 1 at

19  #1; Ex. 19; Ex. 20.  At least two such ads were on the website's sales path.[4]  Ex. 19; Ex. 11 at

20  61:9-62:9, 63:21-24, 78:22-79:2, 81:10-13, 117:11-119:18, 132:14-20; Ex. 21 at 58523, 58531

21  (regarding Ex. 19); Ex. 20; Ex. 11 at 70:19-71:9, 80:21-81:9 (regarding Ex. 20).  Delta's

22  sustainability page included the same—that Delta was "**Carbon Neutral from March 2020**

23  **onward**[.]"  Ex. 10 at 121787; Ex. 21 at 58532; Ex. 11 at 134:6-23.

24  　　　Delta's website featured multiple advertisements about its commitment to "**A Carbon-**

25  **Neutral Future**." These ads appeared on various places on the Delta website, including a

26  "holding page" (for when customers click on flights while the website gathers requested data)

27  

28  ──────────────────────
[4] The website sales path are the pages "that someone might click when they are trying to book a flight." Ex. 11 at
77:3-78:5.

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

and the home page, where most consumers begin airline ticket purchases.  Ex. 21 at 58531; Ex. 11 at 133:8-134:5 (holding page); Ex. 22; Ex. 11 at 73:8-74:14, 81:14-18, 132:21-133:3 (home page); Berrin Decl. at ¶ 9.  And an ad touting Delta's commitment to its "**carbon-neutral future**" appeared on the sustainability page.  Ex. 11 at 74:15-75:7, 82:23-83:23.

### 2. In Flight Advertisements

Delta also used the captive audiences of consumers on its flights to tout its carbon neutral status.  Delta provided napkins to its passengers in flights between September 2021 to June 2022, that read: "**Carbon Neutral Since March 2020**."  Ex. 10 at 121787; Ex. 23; Ex. 11 at 50:8-20, 52:1-56:18, 60:2-19.

Delta also ran "IFE billboards" from September 2021 through March 2021, which are static visuals that have messaging that runs on seat-back screens before takeoff.  Ex. 10 at 121785; Ex. 21 at 58520; Ex. 11 at 57:24-59:25.  The IFE billboards stated that Delta was "**carbon neutral since March 2020**."  Ex. 21 at 58520.

Delta also played the "Paradox of Travel" video on Delta flights.  Narrated by EGOT winner Viola Davis, this video claimed that "**Delta has committed to becoming the world's first carbon-neutral airline on a global basis**."  Ex. 24 at 121090 (script).  "Paradox of Travel" was played on every Delta flight with video capacity (almost all flights) from the beginning of September 2021 to the end of March 2022.  Ex.11 at 45:19-47:15, 56:19-57:23, 128:5-130:6; Ex. 10 at 121787; Ex. 21 at 58520.

### 3. Email

Delta also sent an email on October 21, 2021, to its SkyMiles members touting its carbon neutral status.[5]  Ex. 18 at #30.; Ex. 11 at 86:1-7.  The email claimed that Delta was "**Carbon Neutral Since March 2020**" and that "[b]ecause we're committed to carbon neutrality, you can book confidently knowing that we will offset the carbon emitted on your Delta flight."  Ex. 25 at 125952; Ex. 11 at 115:21-116:18.

---

[5] Delta's distribution list for this email were SkyMiles members who either earned or used a SkyMile in the 180 days prior to the date the email was sent. Ex. 18 at #29.

4.      **Social Media Posts**

Delta also posted on social media sites—including LinkedIn, Facebook, and Instagram—regarding its commitment to carbon neutrality from March 2021 through March 2022.  Ex. 11 at 88:10-20; Ex. 18 at #31; Ex. 58 at #18 (representative examples of social media posts).  Delta promoted these social media posts and paid social media influencers as part of its paid advertising campaign.  Ex. 11 at 125:22-127:25; Ex. 21 at 58519.  Delta's social media posts included the following:

- Delta posted 2-3 times on Facebook that it was "**committed to becoming the world's first carbon neutral global airline.**" Ex. 26; Ex. 11 at 88:21-90:6; Ex. 58 at #18 (explaining that Ex. 26 was a representative example of Delta's social media posts).

- Delta posted on LinkedIn two to three times touting its "**continued commitment to being the first carbon-neutral airline globally**[.]" Ex. 27; Ex. 11 at 91:4-92:8; Ex. 58 at #18 (explaining that Ex. 27 was a representative example of Delta's social media posts).

- Delta posted an Instagram Story posts where it made similar claims of carbon neutrality: "**Carbon Neutral – In March 2020, we made a commitment to being carbon neutral**."  Ex. 28; Ex. 29; Ex. 11 at 92:18-93:4, 94:21-95:5, 105.

5.      **Paid Media**

Beyond Delta's website, in-flight entertainment system, and social media pages, Delta also used third parties to distribute its advertisements.  Delta used third party advertisers to play the "Paradox of Travel" video as an ad on streaming services as well as on its Delta's own YouTube channel.  Ex. 11 at 45:19-46:8, 48:25-49:15, 83:25-84:13; Ex. 21 at 58517.  Delta also used third party advertisers to distribute banner ads on websites such as the New York Times and Wall Street Journal.  Ex. 11 at 83:25-84:14; Ex. 21 at 58517, 58529.

Delta also paid for physical billboards in Atlanta and Boston stating: "**We are carbon neutral since March 2020**." Ex. 10 at 121787; Ex. 21 at Delta 58520; Ex. 11 at 84:19-85:5, 131:20-132:10; *see also* Ex. 55 (OOH billboard stating "A Carbon-Neutral Future Is Here").

**C.** **Delta's Advertising Touting Its Carbon Neutrality Was A Success.**

Delta's advertising touting its "Carbon Neutral" status was well liked and exceeded benchmarks for similar advertisements. Ex. 9 at 26:22-29:21. The Paradox of Travel ad campaign, which ran between September 1, 2021 through November 31, 2022, █████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Ex. 8 at 3754-55; Ex. 9 at 53:22-55:23. In December 2021, Delta concluded that ████████

████████████████████████████████████████████████

████████████████████████████ Ex. 17 at 45304.

In February 2022, ████████████████████████████████

██████████████████████████████ Ex. 8 at 3756. At the same time, another Delta executive commented that Delta ████████████████

████████████████████████████████████████████████

██████████████████████████████ Ex. 30 at 121097;

*see also* Ex. 31 at 23685 ████████████████████████

████████████████████████ "); *and* Exs. 56, 57 (same).

**D.** **Delta's Carbon Neutral Claims Were False And Misleading.**

The Carbon Neutral Representations were false and misleading.[6] ***First***, the representations were premised on offsets that do not work.[7] Delta relied on its participation in the voluntary carbon credit offset market as the basis for its representation that it was carbon neutral. Ex. 2 at #'s 13, 14; Ex. 16 at 23:19-24:1. In 2021, ████████████████

████████████████████████████████████████████████

██████████████████████ Ex. 4 at 25:17-21. ████████████████

████████████████████████████████████████████████

---

[6] Plaintiff acknowledges that the Court may not consider the merits of the claims during class certification (*see* Section III., *infra*), but simply provides this background for context.

[7] Even if the offsets actually made Delta "carbon neutral," its representation that it was the "world's first" carbon neutral airline was false. Multiple other airlines announced carbon neutral commitments before Delta, and claimed to "achieve carbon neutrality" for domestic flights months before Delta even began purchasing offsets to attempt to fulfill its commitment. Ex. 32; *see also* (EasyJet was the "First airline to offset all direct omissions" and achieved "Carbon-Neutrality from 2019") Ex. 33 at 64:4-9; Ex. 34 at 112974.

1 ███████████████████████████████████

2 ████████████████████████████████

3 ███████████  Ex. 35 at 130193; Ex. 36 at 70957—70959; Ex. 37 at 119387-119389;

4 Ex. 4 at 45:15-51:12, 54:3-66:23, 73:3-81:9.  In 2021, reporters at the Guardian and elsewhere

5 placed Delta on further notice—foundational methodological issues, accounting errors, and

6 outright fraud plagued the prevented deforestation offset markets, including many offsets Delta

7 had purchased in the first quarter of 2021.[9]  ███████████████████

8 ████████████████████████████████

9 ████████  Romm at 14.

10     **Second,** Delta only attempted to offset the carbon emissions from its flights, not its

11 entire operations. Ex. 33 at 27:21-28:10.  In internal emails, Delta executives even drew a

12 distinction between its claim that it was "currently offsetting all carbon" to actually

13 "achiev[ing] carbon neutrality in nine years."  Ex. 39 at 79074.  Yet Delta's representations are

14 more capacious, promising they are a carbon neutral *airline*, not merely that their flights are

15 carbon neutral.  *See supra:* Carbon Neutral Representations.

16     **Third**, even if one charitably assumed Delta's offsets worked and that they purchased

17 enough of them, Delta purchased them with significant delay.  Delta did not actually purchase

18 offsets for carbon for a previous year until the next year, leaving gaps where—even if the

19 carbon offsets had worked—said offsets went unpurchased for months. Ex. 40; Ex. 16 at

20 21:17-22:4, 30:11-42:4; Ex. 4 at 34:5-16 (Delta only started purchasing offsets to offset carbon

21 emitted after "the calendar year [wa]s done").  ████████████████

22 ████████████████████████████████

23 ██████████████████████  Ex. 40 at 125029; Ex. 16 at 40:19-42:4.  When

24 reporters followed up, Delta executives ████████████████████

25 ████████████████████████████████

26

27 _____

[8] Chaired by current Canadian Prime Minister Mark Carney.  Ex. 4 at 53:18-23.

28 [9] Delta was asked for comment on many of these exposes, including in Spring 2021, months prior to Delta's decision to launch a national advertising campaign predicated on the effectiveness of the same offsets.  Ex. 38 at 51445-51446.

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

Ex. 41 at 11226-27.

Even prior to touting its "carbon neutral" credentials, Delta's executives ███████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████ [.]" Ex. 42 at 82688.  Delta's General Manager of Sustainability ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████  Ex. 43 at 129117.

### E. Plaintiff And California Residents Purchasing Tickets From Delta Were Exposed To Delta's Misrepresentations Regarding Carbon Neutrality.

Plaintiff Mayanna Berrin was exposed to Delta's Carbon Neutral Representations,[10] and relied on them prior to making purchases of Delta flights during the class period.  Plaintiff recalls seeing representations as early as spring of 2020 when Delta announced via its CEO Ed Bastian that it was "going fully carbon neutral."  Berrin Decl. ¶ 4.  Plaintiff recalls seeing an announcement on Delta.com in 2021 where Delta announced that "13 M metric tons will be offset by Delta, making the company carbon neutral."  Berrin Decl. ¶ 5.  Plaintiff recalls seeing a Delta video advertisement in the Fall of 2021 referring to Delta as "the world's first carbon neutral airline on a global basis. We believe you shouldn't have to choose between seeing the world and saving it."  Berrin Decl. ¶ 6.  In addition, Plaintiff recalls seeing various social media posts in fall of 2021 that referred to Delta as "carbon neutral" and the "world's first carbon neutral airline."  Berrin Decl. ¶ 7.  These representations had the effect of causing Plaintiff to believe that Delta was, in fact, a carbon neutral airline.  Berrin Decl. ¶ 11.

Plaintiff purchased flights via Delta's website on April 8, 2021,[11] September 28, 2021, July 18, 2022, and December 7, 2022.  Berrin Decl. ¶ 8.  On at least one occasion while booking these flights on Delta.com, Plaintiff recalls seeing further representations that Delta

---

[10] Plaintiff was also exposed to a number of other substantially similar representations, as detailed in this Section.
[11] This purchase is outside the Class Period but is provided for additional context. Delta's misleading claims of Carbon Neutrality began before the Class Period but the full campaign including booking path representations began in September of 2021.

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

was "carbon neutral," prior to confirming her purchase of the flights.  Berrin Decl. ¶ 9.

Plaintiff recalls seeing an in-flight video claiming that Delta was "carbon neutral," and recalls

seeing a napkin claiming "Carbon Neutral Since March 2020 – Travel confidently knowing

that we will offset the carbon emitted on your Delta flight."  Berrin Decl. ¶ 10.  Plaintiff relied

on all these representations when she made the decision to purchase Delta tickets.  Berrin

Decl. ¶ 11.

Plaintiff's exposure to these representations is typical of other class members.  Delta's

campaign promoting Delta as "carbon neutral" was far ranging, and very effective, especially

among SkyMiles members and Delta fliers.  *See* Section II(C) above.

**F.      Delta Fails to Retract Its Claim That It Is Carbon Neutral.**

As the year 2022 approached, Delta's claims of carbon neutrality and use of offsets to

achieve them came under increased scrutiny from the media.  Ex. 44; Ex. 13 at 62:5-64:5,

65:2-66:6, 71:21-72:9; Ex. 38; Ex. 45.  Delta's Chief Sustainability Officer, understanding that

their claims were not viable, stated: "This is why we don't like offsets anymore."  Ex. 44 at

Delta 21883.  Delta "paused" its carbon neutral representations on March 31, 2022.  Ex. 16 at

27:7-15; Ex. 33 at 89:22-90:7.  And, Delta concedes that, since March 31, 2022, to the present,

it has not been carbon neutral, and that it will not be carbon neutral until 2050 at earliest.  Ex.

2 at #20-21; Ex. 33 at 90:8-91:15; Ex. 46 at 121566.; Ex. 58 at #25.  But ***Delta continued to***

***claim that it had achieved carbon neutrality.***  Indeed, in March 2023, Delta's Chief

Sustainability Officer stated in an update to a 2021 LinkedIn post shared on the Delta website

that: "Last year, we became the first carbon neutral airline on a global basis. We're committed

to carbon neutrality from March 2020 onward[.]"  Ex. 47 at 109167; Ex. 33 at 74:14-75:13.

This post is *still* up on LinkedIn and links to Delta's official website.  Russell Decl. ¶ 67, Ex.

48.

Delta never retracted its false and misleading statements regarding carbon neutrality.

Ex. 2 at # 11; Ex. 33 at 89-90:7.  Instead, Delta pivoted ███████████████████████

████████████████████████████████████████████████

████████████████  Ex. 49 at 29176-29177.  ████████████████



Ex. 50 at 121775 (emphasis added); *see also* Ex. 12 (another executive opining "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [.]").  Even Delta can't tell the terms apart.  Delta's 2022 Chief Sustainability Officer used the terms interchangeably, saying she was "unsure" what the difference entailed.  Ex. 33 at 26:21-29:13.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[12]  Ex. 51 at 7750.

## III.    LEGAL STANDARD

A district court has broad discretion in making a class certification determination under Federal Rule of Civil Procedure 23.  *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them by Fed. Rule Civ. Proc. 23").

## IV.    ARGUMENT

### A.    The Proposed Class and Subclass Are Adequately Defined and Clearly Ascertainable.

"Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed."  *Schwartz v. Upper Deck Co*., 183 F.R.D. 672, 679-680 (S.D. Cal. 1999) (quoting *Elliott v ITT Corp.*, 150 F.R.D. 569, 573-574 (N.D. Ill. 1992)).  The Ninth Circuit has held that consumer class action plaintiffs need not identify class members, nor must they present a feasible methodology for doing so, reserving manageability for post-certification.  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123, 1132-33 (9th Cir. 2017).

Here, the class is made up of California residents who were exposed to the Carbon Neutral Representations between September 1, 2021, through March 31, 2022, who went to

---

[12] Notably, according to Delta's current Chief Sustainability Officer, the "science-based targets" upon which the "Net Zero" pledge is made "does not allow for [the use of] offsets."  Ex. 16 at 27:7-25.

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

buy tickets.  The subclass consists of those members of the larger Class that purchased tickets on Delta.com during this class period, who were necessarily exposed to the Carbon Neutral Representations on the website.

Class membership may readily be determined by objective criteria—the California residents who purchased tickets on Delta.com (who were necessarily exposed to the Carbon Neutral Representations that were in the website sales path) and those who flew on Delta during that time period (viewing Carbon Neutral Representations on the in-flight entertainment video, billboards, and napkin).  Such objective information can be readily determined by using Delta's records of ticket purchasers and fliers.  *See* Ex. 54 at #3, 4.  These methods can plausibly be used to identify Class members in this case, which is all that is required at the certification stage.  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 494-495 (C.D. Cal. 2006) ("plaintiffs need only show that their proposed methods are plausible.").

For the remaining class members—including those exposed to the representations on social media, streaming services, or third-party websites—identification can be achieved through a standard claims process requiring a sworn affidavit or declaration.  Self-identification is no barrier to ascertainability when "consumers are likely to have retained receipts, where the relevant purchase was a memorable big-ticket item, or where the defendant would have access to a master list of either consumers or retailers who dealt with the items at issue."  *Red v. Kraft Foods, Inc.*, No. CV 10–1028–GW(AGRx), 2012 WL 8019257, at *5 (C.D. Cal. Apr. 12, 2012) (collecting cases).  Airline flights meet all of these criteria. Consumers are likely to have transaction data in their email or on their credit cards, the purchases are specific and large enough the payment and transaction history are easy to locate and reproduce, and Delta is likely to have this data.[13]

### B.    Numerosity (Fed. R. Civ. P. 23(a)(1)).

Numerosity exists when joinder of all class members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed when there are a few dozen members or more.  *See*

---

[13] Delta proved as such the week of Plaintiff's deposition, producing an accounting of each flight they contend Plaintiff had flown on Delta, as well as records of card numbers purportedly used to purchase said flights.  Ex. 52 at 130740.

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995) (noting that "numerosity is presumed at a level of 40 members").  Here, the precise number of class members is unknown, but "general knowledge and common sense indicate it is large." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012) (quoting *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011)).

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████  Ex. 54 at #3, 4.  This undercounts the size of the class, as it only includes California consumers with SkyMiles accounts.  Accordingly, common sense dictates the class satisfies numerosity.

### C.    Commonality (Fed. R. Civ. P. 23(a)(2)).

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In other words, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (quotations and citations omitted).  The claims of the proposed class members "must depend upon a common contention," which "must be of such a nature that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.  To establish commonality, "even a single common question will do." *Id.* at 359 (internal citations omitted).  In false advertising cases, such as this, commonality exists because "the claims at issue here arise from the same facts, namely the purchase of products that were marketed with alleged material misrepresentations." *Bruno*, 280 F.R.D. at 535.

Here, the commonality requirement is met for both the class and subclass because the claims arise from the purchase of airline tickets that were marketed with the misrepresentations that Delta was "Carbon Neutral."  Core common issues include: (a)

whether the Carbon Neutral Representations were misleading; (b) whether the Carbon Neutral

Representations were material; and (c) whether the Carbon Neutral Representations were false.

Determining the "truth or falsity" of these common issues "will resolve an issue that is central

to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at

350.[14]  Indeed, in false advertising cases, courts have found that these common issues satisfy

this requirement.  *Combe v. Intermark Commc'ns, Inc.*, No. CV0909127SJOPJWX, 2010 WL

11597517, at *5 (C.D. Cal. Nov. 18, 2010).

### D.    Typicality (Fed. R. Civ. P. 23(a)(3)).

Typicality is fulfilled if "the claims or defenses of the representative parties are typical

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The test of typicality is

whether other members have the same or similar injury, whether the action is based on

conduct, which is not unique to the named plaintiffs, and whether other class members have

been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

508 (9th Cir. 1992) (internal citations and quotations omitted).  "The purpose of the typicality

requirement is to assure that the interests of the named representative align with the interests of

the class." *Tait*, 289 F.R.D. at 475.  This requires that the representative's claims are

"reasonably co-extensive with those of absent class members; they need not be substantially

identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other

grounds by Wal-Mart*, 564 U.S. at 338.

Here, Plaintiff and the class members were exposed to one common practice—

advertising the airline as carbon neutral.  "[I]t is sufficient for typicality if the plaintiff endured

a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118

(9th Cir. 2017); *see also Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 577 (C.D. Cal.

2016) (typicality is met when "Plaintiffs have [] alleged their injuries derive from the same

course of conduct" including the "sale" of goods).  Indeed, Plaintiff has alleged to have

---

[14] "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022).

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

suffered "the same type of economic injury" as the other class members; overpaying for the tickets they purchased and seeking "a refund of all or part of the purchase price." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013). Accordingly, Plaintiff and the class's interests align, satisfying typicality.

### E.    Adequacy (Fed. R. Civ. P. 23(a)(4).

"To determine whether a named plaintiff will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corporation*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F. 3d at 1020).

Plaintiff is an adequate class representative of the class and subclass who has no conflicts of interest with the other class members. Berrin Decl. ¶ 14; Russell Decl. ¶ 18. *Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2016 WL 7428810, at *12 (N.D. Cal. Dec. 22, 2016) (finding adequacy of class representative satisfied where, *inter alia*, Plaintiff and proposed class share the same claims and interest in obtaining relief). In addition, Plaintiff has actively participated in this litigation, communicating regularly with counsel, reviewing documents, producing documents, responding to press inquiries, responding to written discovery, and sitting for a day-long deposition. Berrin Decl. ¶ 15; Russell Decl. ¶ 6. Plaintiff is aware of her duties as class representative and is knowledgeable and informed about her and the class's claims and the relief they are requesting. *Id.* She has adequately represented the Class and will continue to do so. *See Tait*, 289 F.R.D. at 477-78.

Moreover, Plaintiff's counsel is adequate because they are "qualified, experienced, and generally able to conduct the proposed litigation." *Id.* at 477. Plaintiff's counsel has conducted extensive work identifying and investigating potential claims for this class action, has extensive experiencing litigating complex cases and class action cases (including consumer class actions), and has sufficient resources to litigate this case. Russell Decl. ¶¶ 7-19, Fed. R. Civ. Proc. 23(g)(1)(A).

### F.    Class Certification Under Rule 23(b)(2) and (b)3 Should Be Granted.

Plaintiff seeks hybrid certification[15] pursuant to Rule 23(b)(2) and (b)(3).

### 1.     Injunctive Relief under Rule 23(b)(2)

Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b).[16] Despite conceding that, since at least March 2022, Delta has not operated as a carbon neutral airline and will not be carbon neutral for 25 years, it has never retracted the representations it previously made that it was "Carbon Neutral Since March 2020" and committed to "A Carbon-Neutral Future from March 2020 onward." *See* Section II(F).

Delta has continued to post articles declaring it was "carbon neutral since March 2020" after it allegedly stopped this practice in March 2022. Indeed, Delta's Chief Sustainability Officer posted a LinkedIn update post in March 2023 that was shared on the Delta website, which stated that: "Last year, we became the first carbon neutral airline on a global basis. We're committed to carbon neutrality from March 2020 onward[.]" Ex. 47 at 109167; Ex. 33 at 74:14-75:13. This post is still up on LinkedIn, and links to Delta's official website.[17]

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ (Silverman at 79, Romm at 33). Furthermore, many of Delta's carbon neutral representations express a commitment to being "carbon neutral" into the future, meaning that, even if Delta has stopped repeating that language, customers who believed these representations will still believe them absent a retraction. Ex. 23 "since 2020;" Ex. 3 at 77298 "Carbon Neutral from March 2020 Onward," *see also* Section II(F).

---

[15] Plaintiff seeks to certify her claims for injunctive relief under Rule 23(b)(2), and monetary relief under Rule 23(b)(3). *See Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997) (noting that when a "(b)(2) class seeks monetary and injunctive relief," the court can certify "a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief"); *Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41, 51 (D. Conn. 2011) ("[T]he plaintiff's claims for class-wide declaratory and injunctive relief are certified under Rule 23(b)(2), while the plaintiff's claims for monetary and individualized injunctive relief are certified under Rule 23(b)(3)."); *Wilson v. Cty. of Gloucester*, 256 F.R.D. 479, 491 (D.N.J. 2009) (certifying "the equitable portion of this suit under (b)(2), and the damages portion under (b)(3)").

[16] Rule 23(b)(2) classes "need not meet the additional predominance and superiority requirements." *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 263-264 (3rd Cir. 2011).

[17] Delta's Chief Sustainability Officer testified that Delta's communications staff draft her LinkedIn content. Ex. 16 at 13:25-14:5.

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

Only an injunction ordering Delta to issue a retraction to clarify that it never has been, and is not, carbon neutral, can resolve this issue. Federal courts have long recognized the value of corrective advertising to dissipate the effects of a deceptive campaign. *See Warner-Lambert Co. v. FTC*, 562 F.2d 749, 759-761 (D.C. Cir. 1977). Moreover, the CLRA, FAL, and UCL empower courts to grant such relief. *See* Cal. Civ. Code § 1780(a); Cal. Bus. § Prof. Code §§ 17203, 1735. As the Court of Appeal explained:

> The remedial power granted under these sections is extraordinarily broad. Probably because false advertising and unfair business practices can take many forms, the Legislature has given the courts the power to fashion remedies to prevent their use or employment in whatever context they may occur.

*People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1257 (2013) (quotations and citations omitted).

Plaintiff continues to allege that she maintains an "inability to rely on Delta's carbon neutral representations when deciding whether to purchase flights from Delta in the future." ECF No. 59 at 13, Berrin Decl. ¶ 12. Because this injury is common to all class members who were deceived and may wish to fly Delta in the future, class-wide injunctive relief is appropriate. The lingering effect of Delta's multi-million-dollar campaign persists, leaving consumers with the false impression that Delta is a climate leader. *See People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1091-1092 (2017), *as modified* (June 23, 2017) (injunction proper when defendant had discontinued enjoined practice but "continued to take the position that [the enjoined practice] was proper").

This impact has been exacerbated by Delta's strategic choice not to retract its Carbon Neutral Representations, but also to use terms like Net Zero to continue to give its operations an unearned "green halo," because their customers are not "savvy enough" to tell the difference. Ex. 50 at 121775, Romm at 37. To remedy this ongoing harm, a corrective advertising order is required.

Accordingly, certification under Rule 23(b)(2) is necessary and appropriate.

## G.    Predominance of Common Questions (Fed. R. Civ. P. 23(b)(3))

To determine whether a class satisfies Rule 23(b)(3) predominance requirement, a court pragmatically compares the quality and import of common questions to that of individual questions. *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020). Making this determination "is not an exact science" but instead "requires a court to determine which questions are likely to drive the resolution of the litigation." *Id.* (citations and quotations omitted). "If a common question will drive the resolution, even if there are important questions affecting only individual members, then the class is sufficiently cohesive to warrant adjudication by representation." *Id.* (citations and quotations omitted).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 US 804, 809-810 (2011) (citing Fed. R. Civ. Pro. 23(b)(3)). "In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims (both the causes of action and affirmative defenses) and then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried." *Petersen*, 312 F.R.D at 579. Here, each of Plaintiff's claims center on common issues that drive the resolution of the case and predominate over any individual issues.

### 1.    Applying Predominance To UCL, FAL, and CLRA Claims.

For purposes of determining predominance, courts consider CLRA, FAL, and UCL claims together. *See Bargetto v. Walgreen Co.*, No. 22-CV-02639-TLT, 2024 WL 3493260, at *7 (N.D. Cal. June 14, 2024) (analyzing UCL, FAL, and CLRA claims together); *Forcellati v. Hyland's, Inc.*, CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) ("[f]or purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable"); *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1124-27 (N.D. Cal. 2010) (analyzing UCL, FAL, and CLRA claims together).

Courts analyze these claims together because the CLRA, FAL, and UCL "rely on the same objective test, that is, whether 'members of the public are likely to be deceived.'" *Bruno*, 280 F.R.D. at 532 (*quoting In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009)). Indeed,

under these statutes "[c]ausation, on a classwide basis, may be established by materiality[.]" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (citations omitted); *see also Reitman v. Champion Petfoods USA, Inc.*, No. CV18-1736-DOC(JPRX), 2019 WL 7169792, at *8 (C.D. Cal. Oct. 30, 2019), *aff'd*, 830 F. App'x 880 (9th Cir. 2020). Thus, "[i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Id.*; *see Forcellati*, 2014 WL 1410264, at *9 (holding that "[e]ach statute allows Plaintiffs to establish the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation"); *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp.2d 1117, 1125 (C.D. Cal. 2010) ("California courts have held that reasonable reliance is not an element of claims under the UCL, FAL, and CLRA.").

"This objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Reitman*, 2019 WL 7169792, at *8 (quotations and citations omitted). "For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Id.*; *see also Noohi v. Johnson & Johnson Consumer Inc.*, No. 23-55190, 2025 WL 2089582, at *9 (9th Cir. July 25, 2025) (class certification proper when "materiality, and therefore reliance, can be shown by reference to a reasonable consumer standard, avoiding the need for individualized inquiries").

## 2. Plaintiff Has Satisfied The Predominance Requirement.

Here, Plaintiff has satisfied the predominance requirement for both the class and subclass. As described above, Plaintiff and the class members were exposed to a set of misleading advertisements contending that Delta was "Carbon Neutral." *See* Section II, *supra*. The principal legal issue in this case is whether a reasonable consumer would have found these Carbon Neutral Representations material to their purchase. This core issue is identical for every class member, each of whom suffered the same type of harm as a direct result of Defendant's uniform and pervasive advertising practices. And as Plaintiff's advertising expert notes, "Defendant's sustainability messaging, which was particularly well-articulated by its

1    'carbon-neutral' claim, resonated with consumers and was a very positive factor in enhancing

2    Delta's brand."  Silverman at 79.  Proceeding as a class action will enable the Court to address

3    these critical, common questions in one coordinated proceeding, ensuring consistent results for

4    all parties and eliminating the wasteful duplication inherent in individual trials.  This not only

5    promotes fairness but also serves the paramount policy goal of judicial economy.

6         In *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019), the plaintiff

7    sought class certification for claims that the defendant car manufacturers had engaged in a

8    "uniform" and "centralized" practice of inflating fuel economy data.  The Ninth Circuit

9    reasoned that "when misrepresentations are made as part of a nationwide, concerted marketing

10   effort, it makes no difference to the predominance analysis whether consumers encounter them

11   in different guises" as "the exact wording of the ... misrepresentations ... is not the

12   predominant issue.  It is the underlying scheme which demands attention." *Id* at 560 (quoting

13   *In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006).  "That some individualized

14   issues might need to be addressed does not in and of itself defeat predominance.  The

15   predominance inquiry is mainly concerned with the balance between individual and common

16   issues." *Hyundai* at 560.

17        More recently, in *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011 (9th Cir. 2024), the

18   defendant sold a dog supplement with various marketing claims about promoting "healthy

19   joints," and argued these claims were too varied for the proposed class to survive

20   predominance.  The Ninth Circuit disagreed, affirming certification on the basis that the "core

21   theory" of the challenged representations—that the product provided a joint health benefit—

22   was consistent across all marketing.  *Id.* at 1024.

23        A reasonable consumer does not parse advertising slogans like a statute.  The powerful,

24   overarching, and material message from Delta was singular: ████████████████████

25   ████████████████████████████████████████████████████████████

26   ████████████  Ex. 25 at 125952; Ex. 11 at 115:21-116:18.  ████████████

27   ████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████  Ex. 9 at

50:16-23. 

Silverman at 65.

**H.      Damages Can Be Determined on a Class-Wide Basis.**

Plaintiff offers two straightforward damages models directly tied to her theory of liability and capable of class-wide proof, satisfying Rule 23(b)(3).  The first is a "brand premium" model which attempts to quantify the additional revenue Delta was able to capture based on increased demand.  The second calculates the cost for Delta to have actually fulfilled its promise of carbon neutrality and individualizes that cost to each class member in accordance with the emissions produced by their Delta ticket purchases.  Both methods ensure that common questions of liability and damages predominate.

**1.      Plaintiff's Brand Premium Model Is Tied to Her Theory of Liability and Provable with Common Evidence.**

A plaintiff seeking class certification must present a damages model that is consistent with the theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).  Plaintiff's first model does precisely that.  The liability theory is that Delta's misrepresentation about being "carbon neutral" artificially inflated the demand for its tickets and allowed Delta to capture an increased market share as a more climate conscious brand.  The damages model, therefore, is designed to isolate and measure the value of that specific misrepresentation—the "brand premium" that consumers paid.



Ingersoll at 23-24.

1 ██████████████████████████████████████ Ingersoll at 44. ████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████

6      Crucially, Plaintiff is not required to have fully executed this damages study prior to

7 certification.  In *Lytle v. Nutramax Lab'ys, Inc.*, the court held there is "no general requirement

8 that an expert actually apply to the proposed class an otherwise reliable damages model in

9 order to demonstrate that damages are susceptible to common proof at the class certification

10 stage."  114 F.4th at 1019.  This principle was reaffirmed in *Noohi v. Johnson & Johnson*

11 *Consumer Inc.*, where the court affirmed certification based on an expert's proposed, but not-

12 yet-executed, plan to measure a premium.  2025 WL 2089582, at *2.  ████████████

13 ████████████████

14           **2.      An Alternative "Cost of Fulfillment" Model Is An Equally Viable**

15                  **Path to Class-Wide Damages.**

16      As an alternative, Plaintiff proposes a "cost of fulfillment" damages model, which is

17 also directly tied to the theory of liability and calculable using common proof.  The "bargain"

18 Delta offered was a flight on a genuinely carbon-neutral airline.  The value of that bargain can

19 be measured by what it would have cost Delta to actually deliver on its promise.  Damages,

20 therefore, can be calculated as the difference between what Delta should have spent on

21 legitimate carbon offsets to achieve neutrality and what it actually spent on the cheap, low-

22 quality offsets it purchased.

23      The Ninth Circuit has repeatedly approved similar methodologies.  In *Nguyen v. Nissan*

24 *North America, Inc.*, the court reversed a denial of certification, holding that a benefit-of-the-

25 bargain model was appropriate where liability stemmed from the "sale of the [product] with

26 the known defect."  932 F.3d 811, 820 (9th Cir. 2019).  Just as in *Nguyen*, the injury here

27 occurred at the point of sale for every class member who purchased a ticket while operating

28 under the false promise of flying a "carbon neutral" airline.

This model is firmly grounded in publicly available evidence and easily administered.



(Romm Decl. ¶¶ 32).

Once these common, class-wide figures are established at trial, calculating the specific damages for each individual class member becomes "virtually a mechanical task."  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  This approach aligns perfectly with *Nguyen*, where the court approved a damages model based on the replacement cost of a defective component.  932 F.3d at 821-22.  Here, the damages represent the cost to "replace" the

---

[18] The only question for this variable is the extent to which this *undercounts* class damages by crediting Delta for purchasing offsets that did nothing at all or were even counterproductive. This is a matter for further expert discovery

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

1    worthless offsets attributable to each purchaser's emissions with legitimate ones that would

2    have fulfilled Delta's promise. ████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ██████████████████████████████    Ingersoll at 54.

6                    **3.       The Presence of Potentially Uninjured Class Members Does Not**

7                               **Defeat Predominance.**

8            The Ninth Circuit, sitting en banc, has squarely rejected the existence of potentially

9    uninjured class members as a basis for denying certification.  In *Olean*, the court made clear

10   that Rule 23 does not require a plaintiff to prove every class member was injured at the

11   certification stage.  31 F.4th at 669.  The proper inquiry under Rule 23(b)(3) is not whether

12   every class member can prove injury, but whether "the common question predominates over

13   any individual questions, including individualized questions about injury or entitlement to

14   damages."  *Olean*, 31 F.4th at 669 (citing Fed. R. Civ. P. 23(b)(3)).  Here, the common

15   questions—whether Delta's uniform representations were false, misleading, and material to a

16   reasonable consumer—are central issues that can resolve this litigation for the entire class.[19]

17          Regardless, "fraud damages do not normally correlate with the degree of reliance. 'It is

18   not ... necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation

19   be the sole or even the predominant or decisive factor influencing his conduct .... It is enough

20   that the representation has played a substantial part, and so had been a substantial factor, in

21   influencing his decision.'"  *Hyundai & Kia*, 926 F.3d at 561 (quoting *Tobacco II Cases*, 46

22   Cal. 4th at 326.  This is especially true in the context of consumer brands. ███████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████    Silverman 42,

25   56. ██████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   _____

28   [19] Even if the Court disagrees, whether a small fraction of the class was uninjured is a merits question best resolved later and cannot alone overwhelm common questions of Delta's conduct and the materiality of its claims.

1

2

3 ████████████████████████████████████████████ Silverman at 58, Ingersoll at 44.

### I.    Superiority (Fed. R. Civ. P. 23(b)(3)).

Rule 23(b)(3) requires that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "In determining superiority, courts must consider the four factors of Rule 23(b)(3)."  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).  The first factor requires analysis of "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A).  Where, as here, "damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190; *see also Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 265 (N.D. Cal. 2015).

The second factor considers "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  This factor weighs in favor of class certification because no class representatives have commenced a previous or subsequent suit against Defendant regarding the subject matter of this action. Furthermore, the theory proffered by Plaintiff is a novel theory, the first of its kind against an airline in an American court.  Russell Decl. ¶ 17.

The third factor examines "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(D).  The class claims all stem from a common course of conduct and events that occurred in the State of California and impacted California citizens.  Plaintiff seeks at this point to certify only a California class.

Finally, courts consider "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  "Commonly referred to as 'manageability,' this consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164 (1974). Manageability concerns "will rarely, if ever, be in itself sufficient to prevent certification of a

1  class." *Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586, 605 (E.D. Cal. 2008)

2  (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1272 (11th Cir.2004)).

3        Here, certification of the class and subclass presents no case management problems and

4  serves judicial economy.  Uniform issues and evidence render class adjudication practical and

5  efficient, yielding the benefits Rule 23 means to produce.  Class certification will avoid

6  needless expenditures of time, effort, and money from individual lawsuits, as well as

7  inconsistent outcomes.

8  **V.     CONCLUSION**

9        For the foregoing reasons, Plaintiff respectfully requests that the Court grant her

10  Motion for Class Certification.

11

12  Dated: August 29, 2025         Respectfully submitted,

13

14           */s/ L. David Russell*

15           **RUSSELL LAW, PC**
         L. David Russell (Cal. Bar No. 260043)

16

17           **HADERLEIN AND KOUYOUMDJIAN LLP**
         Jonathan Haderlein (Cal. Bar No. 336644)
         Krikor Kouyoumdjian (Cal. Bar No. 336148)

18

19           *Attorneys for Plaintiff and the Proposed Class*

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMO OF POINTS & AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION