1
2
3
4
5
6

Paul Watford (SBN 183283)
pwatford@kslaw.com
Peter Hsiao (SBN 119881)
phsiao@kslaw.com
Michael D. Roth (SBN 217464)
mroth@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Fax: (213) 443-4310

7
8
9
10
11
12

David L. Balser (admitted *pro hac vice*)
dbalser@kslaw.com
Billie B. Pritchard (admitted *pro hac vice*)
bpritchard@kslaw.com
Allison Hill White (admitted *pro hac vice*)
awhite@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Fax: (404) 572-5100

13
14

Attorneys for Defendant
DELTA AIR LINES, INC.

15
16

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

17
18
19
20
21
22
23
24

MAYANNA BERRIN, individually, and on
behalf of all others similarly situated,

        Plaintiff,

v.

DELTA AIR LINES, INC.

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:23-cv-04150-MEMF-MRWx

**DEFENDANT DELTA AIR LINES, INC.'S
MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

**Judge:** Hon. Maame Ewusi-Mensah Frimpong
**Hearing Date:** December 18, 2025
**Hearing Time:** 10:00 a.m.
**Hearing Location:** Courtroom 8B

25
26
27
28

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.  INTRODUCTION ...............................................................................................1

II.  RELEVANT BACKGROUND ............................................................................2

    A.  Delta's Carbon Neutral Representations........................................................2

    B.  Plaintiff's Claims ..........................................................................................3

    C.  Plaintiff's Motion for Class Certification ....................................................4

III.  CLASS CERTIFICATION SHOULD BE DENIED BECAUSE Plaintiff CANNOT SATISFY THE REQUIREMENTS OF RULE 23. ..............................................4

    A.  Plaintiff Fails to Satisfy Her Burden Under Rule 23(a)...............................5

        1.  Plaintiff Supplies No Evidence Her Proposed Classes Are Sufficiently Numerous (Rule 23(a)(1)).................................................................5

        2.  Plaintiff Fails to Prove Commonality (Rule 23(a)(2))..........................5

        3.  Plaintiff Is Atypical and Inadequate (Rule 23(a)(3) and (a)(4)). ....................6

    B.  Plaintiff Fails to Satisfy Her Burden Under Rule 23(b)(3)...........................7

        1.  Materiality and Reliance Are Highly Individualized Issues That Predominate Over Any Issues Common to the Classes..................................7

        2.  Individual Issues Related to Exposure Also Predominate. ..............................10

        3.  The Variety of Statements at Issue Forecloses Certification. .........................14

        4.  Plaintiff's Proposed Damages Classes Create Individualized Inquiries. .........15

        5.  Plaintiff Cannot Prove Damages on a Class-Wide Basis...............................16

        6.  The Proposed Classes Are Unmanageable. ......................................................18

    C.  Plaintiff's Proposed Injunctive Classes Are Uncertifiable Under Rule 23(b)(2). ......................................................................................................19

IV.  CONCLUSION..................................................................................................19

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
   2017 WL 2559615 (C.D. Cal. June 7, 2017) ....................................................10

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. 2014) ...................................................................7

*Allen v. Hyland's Inc.*,
   300 F.R.D. 643 (C.D. Cal. 2014) ...................................................................6

*In re Am. Apparel, Inc. S'holder Litig.*,
   855 F. Supp. 2d 1043 (C.D. Cal. 2012) ......................................................14

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013)....................................................................................5

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................................7

*Arabian v. Sony Electronics Inc.*,
   2007 WL 627977 (S.D. Cal. Feb. 22, 2007)...............................................15

*Bailey v. Rite Aid Corp.*,
   338 F.R.D. 390 (N.D. Cal. 2021)..................................................................6

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014) .....................................................................7

*Brewer v. Gen. Nutrition Corp.*,
   2014 WL 5877695 (N.D. Cal. Nov. 12, 2014) ............................................6

*Cabral v. Supple LLC*,
   608 F. App'x 482 (9th Cir. 2015) ...............................................................10

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007).........................................................6

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011) .......................................................16

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)........................................................................4, 5, 16, 18

*Conde v. Sensa*,
   2019 WL 4277414 (S.D. Cal. Sept. 10, 2019)............................................15

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

*Doe v. SuccessfulMatch.com*,
   70 F. Supp. 3d 1066 (N.D. Cal. 2014) ...................................................................11

*dotStrategy, Co. v. Facebook, Inc.*,
   2021 WL 2550391 (N.D. Cal. June 22, 2021) ...............................................12, 13

*Edmunson v. Procter & Gamble Co.*,
   2011 WL 1897625 (S.D. Cal. May 17, 2011)........................................................14

*Edwards v. Walmart, Inc.*,
   2020 WL 13133009 (C.D. Cal. Aug. 4, 2020)......................................................10

*Ewert v. eBay, Inc.*,
   2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)......................................................15

*In re Facebook Priv. Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011)..................................................................16

*Fairbanks v. Farmers New World Life Ins. Co.*,
   197 Cal. App. 4th 544 (2011) .................................................................................8

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...............................................................18

*In re Hyundai & Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................................12

*Ivie v. Kraft Foods Global, Inc.*,
   2015 WL 183910 (N.D. Cal. Jan. 14, 2015) ........................................................17

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. June 13, 2014) ........................................................8

*Kramer v. Wilson Sporting Goods, Co.*,
   2014 WL 12570919 (C.D. Cal. Mar. 21, 2014)................................................8, 10

*Krueger v. Wyeth, Inc.*,
   396 F. Supp. 3d 931 (S.D. Cal. 2019)..................................................................17

*Lytle v. Nutramax Labs., Inc.*,
   114 F.4th 1011 (9th Cir. 2024) .............................................................................12

*Mazur v. eBay Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009)..........................................................................15

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581, 596 (2012)......................................................................................13

*Mickelonis v. Aspyr Media, Inc.*,
   2025 WL 1605332 (C.D. Cal. May 16, 2025) ...............................................11, 13

*Minkler v. Kramer Labs., Inc.*,
   2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) ................................................................18

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) .....................................................................................................17

*Motty v. First Student, Inc.*,
   2016 WL 4498452 (C.D. Cal. 2016) ...............................................................................6

*Noohi v. Johnson & Johnson Consumer Inc.*,
   146 F. 4th 854 (9th Cir. 2025) ........................................................................................8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ..............................................................................2, 4, 5, 7

*Ono v. Head Racquet Sports USA, Inc.*,
   2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) ...................................................10, 11, 15

*Palmer v. Stassinos*,
   233 F.R.D. 546 (N.D. Cal. 2006) ..................................................................................19

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
   2016 WL 5920345 (C.D. Cal. June 23, 2016) .................................................10, 14, 15

*Red v. Kraft Foods, Inc.*
   2012 WL 8019257, at *8 (C.D. Cal. Apr. 12, 2012) ......................................................12

*Spacone v. Sanford, L.P.*,
   2018 WL 4139057 (C.D. Cal. Aug. 9, 2018) ...................................................................7

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ...........................................................................7, 8, 14

*Sweet v. Pfizer*,
   232 F.R.D. 360 (C.D. Cal. 2005) ..................................................................................19

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) .......................................................................................15

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (Cal. 2009) .............................................................................................6

*Todd v. Tempur-Sealy Int'l, Inc.*,
   2016 WL 5746364 (N.D. Cal. Sept. 30, 2016) ...............................................11, 12, 14

*Tunick v. Takara Sake USA Inc.*,
   2025 WL 2644748 (N.D. Cal. Sept. 7, 2025) ................................................................13

*Vazquez v. DataRobot, Inc.*,
   2023 WL 6323101 (N.D. Cal. Sept. 28, 2023) ..............................................................14

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

*In re Vioxx Class Cases*,
    103 Cal. Rptr. 3d 83 (Cal. Ct. App. 2009) ................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................................2, 4, 5, 6

*Withers v. eHarmony, Inc.*,
    2010 WL 11520198 (C.D. Cal. June 2, 2010) ........................................................6

*Zajac v. United Airlines, Inc.*,
    2024 WL 3784535 (D. Md. Aug. 13, 2024) ..........................................................17

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ..........................................................................7, 18

**Statutes**

Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ..............................................17, 18

California's False Advertising Law,
Cal. Bus. & Prof. Code § 17500, *et seq.* ......................................................... *passim*

California's Consumers Legal Remedies Act,
Cal. Civ. Code §§ 1750, *et seq.*...................................................................... *passim*

California's Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, *et seq.* .......................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

Fed. R. Evid. 702 ..............................................................................................16

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION

Plaintiff's motion for class certification is built on a false assumption: that California residents chose to fly Delta (and continue to fly Delta) *because* (for approximately seven months several years ago) Delta described itself as "carbon neutral." That assumption not only contradicts common sense, it has no basis in fact. There are myriad reasons consumers fly Delta, and thus this case cannot be resolved on a class-wide basis.

At the outset of this case, the Court intuitively observed, "[t]here are undoubtedly numerous…Delta customers who have no issue with Delta's rates, regardless of its carbon-neutral status." Dkt. 37 at 8. Class discovery has proven the Court's intuition to be true. In fact, even *Plaintiff* testified that she did not rely on Delta's carbon neutral representations when purchasing Delta flights, and neither did her ex-boyfriend. *See* Declaration of Allison White in Support of Opposition to Motion for Class Certification, Ex. A, Deposition Transcript of Mayanna Berrin ("Berrin Tr.") 84:25-86:7; 121:22-122:2, 128:11-14, 129:13-24.[1] The reason is self-evident: flight choice is driven by a host of factors that have nothing to do with an airline's sustainability, including (but not limited to) flight departure/arrival times, route availability, base fare price, safety, loyalty programs, direct vs. connecting flights, customer service, and airport location. That fact is not just a matter of logic or experience; it is borne out by evidence. A survey conducted by Delta's expert found that, when asked directly, only 0.1% of national respondents and none of California respondents mentioned environmental impact or carbon neutrality as a factor that influences their flight decisions. *See* Ex. B, Declaration of On Amir ("Amir Decl.") ¶¶ 51-54. When asked to select up to five factors from a list of nineteen options, only 6.4% of national respondents and 7.9% of California respondents even considered environmental impact or carbon neutrality as a factor in their flight decisions. *Id.* ¶¶ 55-57. Plaintiff has no empirical (or competent) evidence to counter these results.

Ultimately, an unknown number of California residents *may* have purchased Delta flights because of carbon-neutral representations—but Plaintiff is not one of them. And she has not

---

[1] Subsequent citations to "Ex." refer to exhibits attached to the White Declaration.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

identified a viable method to identify those rare individuals, let alone resolve any common issues on a class-wide basis "'in one stroke.'" *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (hereinafter "*Olean*") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011)). Accordingly, a class should *not* be certified under Rule 23, and her motion for class certification should be denied.

## II.    RELEVANT BACKGROUND

### A.  Delta's Carbon Neutral Representations

In February 2020, Delta announced it was "committing $1 billion over the next 10 years on its journey to mitigate all emissions from its global business, going forward." *See* Ex. C, DELTA_00108717. As part of this initiative, Delta spent more than $280 million purchasing carbon credits to offset its carbon emissions from March 1, 2020 to March 31, 2022. Ex. D, DELTA_00000001 at -04; Ex. E, DELTA_00001279 at -22; Ex. F, DELTA_00001090 at -30.

In 2021, Delta launched the first and only advertising campaign that highlighted its carbon-reduction efforts. The centerpiece of this campaign was the "Paradox of Travel" video, which stated "Delta has committed to becoming the world's first carbon neutral airline on a global basis." Dkt. 82-19 at 2. This video, along with banner advertisements featuring a variety of claims—including "Our Newest Destination? A Carbon-Neutral Future," "Delta Has Committed To Becoming The World's First Carbon-Neutral Airline,"[2] and "Carbon Neutral Since March 2020"—were promoted in various third-party media from September to November 2021. Ex. G, Deposition Transcript of Shannon Womack ("Womack Tr.") 27:21–28:9; Dkt. 82-18 at -517. From September 2021 to March 2022, Delta promoted, on a rotating basis, varied carbon content on its website and in-flight entertainment systems. Ex. G, Womack Tr. 66:5-21; Dkt. 82-18 at -520, -531. Delta also shared its efforts in a patchwork of different statements across disparate media channels—including three website pages, in-flight napkins, a single SkyMiles email, a few dozen social media posts and press releases, and two billboards in cities outside of California. *See* Dkt. 82-1 at 1–5.

---

[2] To alter the aspirational meaning of these representations, Plaintiff and her experts edit them by omitting the "committed" language. *See, e.g.,* Dkt. 82-1 at 23-24.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Delta ceased its carbon neutral advertising in March 2022, pivoting instead to a "net zero by 2050" goal based on new industry standards. Ex. H, Deposition Transcript of Amelia Deluca 27:7-28:22; Ex. I, Deposition Transcript of Pam Fletcher 89:22-90:23.

## B. Plaintiff's Claims

Plaintiff filed this putative class action on May 30, 2023, asserting claims under California's False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and Consumers Legal Remedies Act ("CLRA"). Dkt. 1 ¶¶ 82-112. Plaintiff alleged that Delta's carbon neutral representations were false and that she relied on these representations in purchasing Delta flights. *Id.* ¶ 15. Ultimately, the Court allowed Plaintiff's injunctive relief claims under the FAL and UCL to proceed, as well as her claim for actual damages under the CLRA. *See* Dkt. 59 at 12-13.

Plaintiff's flight history reveals that she flew with Delta over 30 times during the relevant time period, *see* Dkt. 82-38, yet she seeks damages for only four of these flights. Ex. J, Amended Initial Disclosures. There are individualized explanations for this gap: some flights were purchased by her ex-boyfriend, who did not care about Delta's carbon neutrality, Berrin Tr. 84:25–85:14; in other instances, her parents purchased the flights, *id.* at 133:1-3; and in some cases, she flew for business travel, or the flight was booked by others, *id.* at 123:19–23, 31:25-32:19. Moreover, Plaintiff acknowledged that even she considers other attributes when booking flights, such as the benefits of her SkyMiles membership and convenience. *Id.* at 42:6-15, 121:18-25. Plaintiff likewise conceded that not everyone shares her sustainability values and that people may choose to fly with Delta for "any number of reasons." *Id.* 49:8-11.

Significantly, Plaintiff repeatedly testified in her deposition that she did not rely on Delta's carbon neutral representations when purchasing the flights that form the basis for her damages claim. *Id.* 121:22–122:2, 128:11–14, 129:13–24.[3] She confirmed that she did not begin to rely on Delta's representations until 2023—well after she had already purchased the four flights for which she seeks damages. *Id.* at 129:13-24; Ex. J, Amended Initial Disclosures. Further, Plaintiff acknowledged that Delta has transitioned to a "Net Zero by 2050" commitment. Berrin Tr. 88:14–

---

[3] Plaintiff's improper attempt to reverse her unequivocal testimony through a sham declaration (Dkt. 80-1) and errata are the subject of Delta's concurrently filed motion to strike.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

89:9. She does not challenge this message as false and understands it to mean that Delta is not presently carbon neutral. *Id.* at 77:18–79:3; *see also* Pl.'s Mot. for Class Cert., Dkt. 82-1 at 3, 6.

### C. Plaintiff's Motion for Class Certification

Plaintiff moved for class certification under Rule 23(b)(3) for her CLRA damages claim and Rule 23(b)(2) for her injunctive relief claims under the FAL and UCL. *See* Dkt. 82-1.[4] Plaintiff seeks to certify the following class for both her damages claim and her injunctive relief claims:

> All California residents exposed to Delta's representations that it was carbon neutral made between September 1, 2021 through March 31, 2022, who purchased tickets to fly on Delta Airlines from September 1, 2021 through the present.

*Id.* Plaintiff also seeks certification of the following subclass: "All California residents, who between September 1, 2021 through March 31, 2022, purchased tickets to fly on Delta Airlines on the Delta.com website." *Id.*

## III. CLASS CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFF CANNOT SATISFY THE REQUIREMENTS OF RULE 23.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Dukes*, 564 U.S. at 348 (quotation omitted). Departure from this rule requires a putative class representative to "affirmatively demonstrate" she has met all requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and one provision of Rule 23(b). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23 does not establish a "mere pleading standard." *Olean*, 31 F.4th at 687 (quoting *Dukes*, 564 U.S. at 350). Plaintiffs must "satisfy" Rule 23's requirements "through evidentiary proof," and the Court must conduct a "rigorous analysis" of that evidence. *Comcast*, 569 U.S.

---

[4] Plaintiff conflates the relief available under the CLRA, UCL, and FAL by suggesting that Rule 23(b)(3) applies to all three claims. *See* Dkt. 82-1 at 17. However, the remedies available in a UCL or FAL action are limited to injunctive relief and restitution, *see In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 96 (Cal. Ct. App. 2009), and Plaintiff has no remaining claims for restitution. *See* MTD Order at 12–13; Dkt. 42, n.1. Plaintiff's UCL and FAL claims can only be certified, if at all, under Rule 23(b)(2).

at 33; *Olean*, 31 F.4th at 664. Rule 23's "stringent requirements… in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).

Plaintiff has not satisfied these stringent requirements.[5]

**A. Plaintiff Fails to Satisfy Her Burden Under Rule 23(a).**

    1. <u>Plaintiff Supplies No Evidence Her Proposed Classes Are Sufficiently Numerous (Rule 23(a)(1)).</u>

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." While an exact number of members is not required, Plaintiff cannot simply leave the Court to guess. Indeed, the Supreme Court has explained that like all Rule 23 requirements, a plaintiff must "satisfy through evidentiary proof" that "there are *in fact* sufficiently numerous parties." *Comcast*, 569 U.S. at 33 (cleaned up).

Here, Plaintiff attempts to satisfy numerosity by pointing to the fact that 1,452,601 individuals with at least one California address purchased at least one ticket from Delta between March 1, 2020 and March 31, 2022. Dkt. 82-1 at 12. But that number does not align with Plaintiff's class definitions, which require proof of exposure to Delta's carbon-neutral representations or purchases through Delta's website. Both issues require an individualized inquiry, and Plaintiff cannot hide the need for that inquiry by embedding those issues in her class definitions and then ignoring her burden to prove enough people meet the definitions.

    2. <u>Plaintiff Fails to Prove Commonality (Rule 23(a)(2)).</u>

To satisfy Rule 23(a)(2), a plaintiff's claims "must depend upon a common contention… of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common

---

[5] Plaintiff's motion should also be denied because her counsel failed to comply with this Court's Local Rules. Namely, they failed to meet and confer before filing this motion, submitted a brief nearly 3,000 words over the applicable limit, and failed to include a certification of word count. *See* L.R. 7-3, 11-6.1, 11-6.2.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

answers apt to drive the resolution of the litigation.'" *Brewer v. Gen. Nutrition Corp.*, 2014 WL 5877695 at *4 (N.D. Cal. Nov. 12, 2014).

Plaintiff points to three "core common issues": whether Delta's carbon neutral representations were misleading, false, and material. Dkt. 82-1 at 12–13. But those questions will *not* generate common answers that will drive the resolution of this matter. The key issue is whether *all* California consumers purchased Delta flights based on the exposure to a misrepresentation about Delta's carbon neutrality, and that core issue cannot be resolved based on any class-wide proof. *See Dukes,* 564 U.S. at 349-50. In other words, commonality cannot be satisfied because there is "undoubtedly" no common injury. Dkt. 37 at 8.

3.   Plaintiff Is Atypical and Inadequate (Rule 23(a)(3) and (a)(4)).

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Withers v. eHarmony, Inc.*, 2010 WL 11520198, at *2 (C.D. Cal. June 2, 2010) (internal citation omitted). Relatedly, the adequacy requirement of Rule 23(a)(4) requires "Plaintiff to demonstrate that [she] … will adequately protect the interests of those absent class members [she] purport[s] to represent." *Motty v. First Student, Inc*., 2016 WL 4498452, at *3 (C.D. Cal. 2016) (internal citation omitted).

As detailed *supra*, Section II.B, Plaintiff affirmatively testified that she did *not* rely on Delta's carbon neutral representations and will not be deceived in the future, which supports a host of individualized defenses, including challenges to her standing and the merits of her claims. *See* Dkt. 91; *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) ("[A] plaintiff suing under the CLRA for misrepresentations in connection with a sale [must] plead and prove she relied on a material misrepresentation."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (Cal. 2009). ("[A] plaintiff must plead and prove actual reliance to satisfy the standing requirement of [the UCL and FAL]."); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 662 (C.D. Cal. 2014) (plaintiff who "explicitly testified that she did not rely on [challenged representations]" was not typical); *Bailey v. Rite Aid*

*Corp.*, 338 F.R.D. 390, 406 (N.D. Cal. 2021) (representative was not typical where testimony indicated there was no likelihood he would purchase the product in the future).

Ultimately, Plaintiff's lack of reliance makes her both atypical and inadequate—and these deficiencies are magnified by her improper attempt to change her testimony. *See* Dkt. 90; *Spacone v. Sanford, L.P.*, 2018 WL 4139057, at *10 (C.D. Cal. Aug. 9, 2018) (plaintiff who submitted a sham declaration was inadequate because "his credibility as to his claimed injury jeopardize[d] the class's ability to prevail").

**B.  Plaintiff Fails to Satisfy Her Burden Under Rule 23(b)(3).**

Although it overlaps with commonality, the predominance test under Rule 23(b)(3) is "far more demanding." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). A plaintiff must "show 'that the questions of law and fact common to class members predominate over any questions affecting only individual members.'" *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014) (citation omitted). In assessing predominance, "the court must make a rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the class-wide evidence to prove the common question in one stroke." *Olean*, 31 F.4th at 666 (quotation omitted). "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (quotation omitted).

    1.   <u>Materiality and Reliance Are Highly Individualized Issues That Predominate Over Any Issues Common to the Classes.</u>

To obtain certification of her CLRA claim under Rule 23(b)(3), Plaintiff must offer a means of proving class-wide reliance on the challenged representations. *See Berger*, 741 F.3d at 1069. Plaintiff seeks to satisfy this requirement through an inference of class-wide reliance, but that inference arises only if "a material representation is made to the entire class." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 453 (S.D. Cal. 2014). A misrepresentation is material "if a reasonable [consumer] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). If the alleged misrepresentation "is not material as to all class members, the

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

issue of reliance would vary from consumer to consumer and the class should not be certified." *Id.*
at 1022-23 (quotation omitted); *see Kramer v. Wilson Sporting Goods, Co.*, 2014 WL 12570919,
at *6 (C.D. Cal. Mar. 21, 2014) (predominance not satisfied where evidence demonstrated there
were "many different factors that motivate a consumer's decision to purchase"); *Fairbanks v.
Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544, 565 (2011) (common issues did not
predominate where evidence showed representation was immaterial to "many, if not most"
purchase decisions).

### i.    Plaintiff Misconstrues the Reasonable Consumer Standard.

Plaintiff relies on *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F. 4th 854 (9th Cir.
2025) and asserts that her claims are suitable for class certification because "[t]he principal legal
issue in this case is whether a reasonable consumer would have found these Carbon Neutral
Representations material to their purchase." Dkt. 82-1 at 18. But Plaintiff ignores the Ninth
Circuit's "important caveat" in *Noohi*: "while materiality can support an inference of reliance, that
does not necessarily mean that the inference will hold as to the entire class, such that common
questions predominate." *Id*. at 868. In *Noohi*, the inference held because the defendant marketed a
product called "Neutrogena Oil-Free Face Moisturizer for Sensitive Skin," a label the plaintiff
alleged was misleading because the product in fact contained oils. *Id.* at 860. In concluding that
the alleged misrepresentation would have been material to the purchasing decisions of all class
members, the court emphasized that the challenged statement "appears in the Product's name
prominently displayed on the front of the packaging" and reasoned that "[i]t is hard to imagine that
consumers would purchase a product labeled 'Oil-Free Moisturizer' without regard to whether the
product was free from oil." *Id.* at 869.

This case is entirely different. Delta's carbon neutral representations are not synonymous
with (and do not appear on) the purchased product. Rather, as discussed below, the evidence proves
that consumers purchase Delta flights for many different reasons that have nothing to do with
carbon neutrality. And Plaintiff offers no empirical evidence that Delta's carbon neutral claims
were material compared to the many other purchasing factors consumers consider. *Jones v.
ConAgra Foods, Inc.*, 2014 WL 2702726, at *16 (N.D. Cal. June 13, 2014) (predominance not

1 | satisfied as to materiality because there were "numerous reasons a customer might buy" the

2 | product and "a lack of evidence demonstrating the impact of the" challenged representations).

3 | ii.    *Delta's Representations Were Not Material to Most of the Class.*

4 |    Plaintiff's motion rests on the false premise that Delta's carbon neutral messaging was

5 | material to the flight purchasing decisions of all putative class members. Dkt. 82-1 at 18. Plaintiff's

6 | sole support for this proposition is her advertising expert, Bruce Silverman, who opines that

7 | Delta's "sustainability messaging" "resonated with consumers and was a very positive factor in

8 | enhancing Delta's brand." *Id.* at 18-19. Critically, this statement is *not* an opinion that Delta's

9 | carbon neutral statements were *material* to *all* class members' purchasing decisions. Nor could

10 | Silverman offer that opinion. He has never done any research to evaluate how airline customers

11 | respond to sustainability messaging, he has no experience evaluating consumer perceptions of

12 | carbon neutral claims, and he does not intend to conduct any survey or consumer behavior research

13 | on the topic. Ex. K, Deposition Transcript of Bruce Silverman ("Silverman Tr.") 90:3-8; 90:14-

14 | 16, 99:18-100:2.

15 |    If anything, Silverman's testimony refutes any showing of uniform materiality. Silverman

16 | testified that some reasonable consumers are indifferent to sustainability and that carbon neutral

17 | representations might even have a negative effect on some consumers' perceptions of Delta. *Id.*

18 | 76:21-24, 223:25-224:7. He also conceded that the top factor consumers consider when they fly is

19 | their desired route, followed by price, loyalty status, and schedule. *Id.* at 129:10-130:20. Silverman

20 | identified airline brand as the fifth factor, which he contends encompasses sustainability as well

21 | as other factors. *Id.* at 77:21-78:17, 130:21-131:17.

22 |    Silverman's anecdotal observation that consumers purchase flights for many different

23 | reasons that have nothing to do with sustainability is confirmed by Delta's evidence. Delta's expert

24 | surveyed consumers who purchased Delta flights about the factors that impact their flight purchase

25 | decisions. *See* Ex. B, Amir Decl. ¶¶ 51-57. When asked directly through an open-ended question

26 | designed to measure top-of-mind factors via unaided recall, only 0.1% of national respondents and

27 | none of California respondents mentioned environmental impact or carbon neutrality as

28 | influencing their flight decisions. *See id.* ¶¶ 51-54. When asked to select up to five factors from a

9

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

list of nineteen options, the top-selected options (departure or arrival times, route availability, customer service, safety, direct flights, and base fare) were selected by about one-third to one-half of respondents. *Id.* ¶¶ 55-57. In contrast, "environmental impact and carbon neutrality" was selected by only 6.4% of national respondents and 7.9% of California respondents—ranking above only "Other" and "Don't know." *Id.* This empirical data shows the challenged representations were *not* material to most Delta fliers. That includes Plaintiff, who testified that neither she nor her ex-boyfriend (a California resident and member of the putative class) relied on Delta's representations when purchasing Delta flights. Berrin Tr. 49:8-11, 84:25–85:14, 121:22-122:2, 128:11-18, 129:13-24.

Where "many different factors [] motivate a consumer's decision to purchase," as here, materiality (and therefore reliance) cannot be proved on a class-wide basis. *Kramer*, 2014 WL 12570919, at *6; *Edwards v. Walmart, Inc.,* 2020 WL 13133009, at *6 (C.D. Cal. Aug. 4, 2020) (denying certification and holding plaintiff was not entitled to a presumption of materiality where defendant's survey found the challenged claim was not material to the "vast majority" of consumers); *In re 5-Hour Energy Mktg. & Sales Practices Litig.,* 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017) (plaintiff was not entitled to a presumption of materiality where defendants' undisputed survey suggested the representations were not material to "most or even a substantial portion of the class"); *Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949 at *12-13 (C.D. Cal. Mar. 8, 2016) (finding it would be "unreasonable" to conclude that materiality could be litigated class-wide where only 6% of survey respondents found the challenged statement material); *Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL 5920345, at *8 (C.D. Cal. June 23, 2016) ("Besides the fact that Diaz himself may not have relied upon the challenged product packaging…Defendants introduced evidence that consumers purchase TVs based on a variety of factors.").

2.  Individual Issues Related to Exposure Also Predominate.

In class actions under the CLRA, "it is critical that the misrepresentation in question be made to *all* of the class members." *Cabral v. Supple LLC*, 608 F. App'x 482, 483 (9th Cir. 2015) (emphasis added). And "[i]n cases where it is unreasonable to assume that all class members were

exposed to the practices at issue, common issues do not predominate under Rule 23(b)(3)." *Ono*, 2016 WL 6647949, at *10.

Here, Plaintiff asserts that "California Residents Purchasing Tickets From Delta Were Exposed To Delta's Misrepresentations Regarding Carbon Neutrality." Dkt. 82-1 at 8. This assertion is unsupported by the evidence, which consists of a patchwork of different statements across disparate media channels—none of which were necessarily viewed by consumers prior to purchasing a Delta flight.

> i.  *Plaintiff Fails to Offer Class-Wide Proof of Exposure to In-Flight Materials.*

Plaintiff asserts that exposure can be assumed for "those who flew on Delta during that time period (viewing Carbon Neutral Representations on the in-flight entertainment video, billboards, and napkin)." Dkt. 82-1 at 11. This assertion fails.

First, any exposure to in-flight materials necessarily occurred *after* the consumer purchased a Delta ticket, which cannot support a claim. *See Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) ("[I]f Plaintiffs did not see the specified representations before they purchased Defendant's services, then Plaintiffs did not rely on these representations and suffered no injury."). And Plaintiff offers no class-wide method for determining which passengers were exposed to in-flight materials and subsequently purchased a Delta ticket, much less which passengers did so in reliance on representations viewed on a prior flight. *See Mickelonis v. Aspyr Media, Inc.*, 2025 WL 1605332, at *11 (C.D. Cal. May 16, 2025) (class-wide exposure could not be inferred without evidence of how many "impressions" led to a purchase); *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5746364, at *11 (N.D. Cal. Sept. 30, 2016) (same).

Further, exposure to the in-flight materials was not universal to California residents who flew on Delta. Some consumers did not have access to seatback video displays and therefore could not have been exposed to any carbon neutral representations on them. *See* Ex. G, Womack Tr. 47:11-15. Even on video-enabled aircraft, there is no evidence that all class members saw (or paid attention to) Delta's "Paradox of Travel" advertisement, which might have played *if* a consumer opted to watch in-flight entertainment. *Id.* 44:22–45:5, 129:17-21. The same is true of the carbon

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

neutral napkin. Certain flights—including, for example, Los Angeles to San Diego—do not even offer beverage service due to short routes or turbulence.[6]

The mere possibility that some travelers could have been aware of Delta's in-flight statements is insufficient to establish class-wide exposure. *See dotStrategy, Co. v. Facebook, Inc.*, 2021 WL 2550391, at *8 (N.D. Cal. June 22, 2021) ("no evidence of class-wide exposure" where plaintiff pointed to "the mere existence of the misrepresentations…none of which [the putative class] would have been required to view"); *Todd*, 2016 WL 5746364, at *12 (unreasonable to assume class-wide exposure where an unknown portion of third-party retailers did not display the challenged advertising).

        ii.    *Plaintiff Fails to Offer Class-Wide Proof of Exposure to "Other Representations."*

Individual exposure issues similarly predominate for the remaining members of the proposed class, *i.e.*, consumers who were allegedly exposed to Delta's representations on social media, streaming services, or third-party websites. Dkt. 82-1 at 11. Plaintiff misconstrues the law by suggesting this group could be identified via individual declarations because airline "[c]onsumers are likely to have transaction data in their email or on their credit cards." *Id*. Self-identification may be feasible in cases such as *Red v. Kraft Foods, Inc.*, where challenged statements appear on the product label such that exposure could reasonably be presumed. *See* 2012 WL 8019257, at *8 (C.D. Cal. Apr. 12, 2012); *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019) (at-issue statement appeared on label placed on all new vehicles); *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1020 (9th Cir. 2024) (at-issue statements appeared on product packaging). But this case does not involve representations printed on tickets or receipts. Whether a consumer was exposed to carbon neutral representations on "social media, streaming

---

[6]  *See*  https://www.delta.com/us/en/onboard/onboard-experience/main-cabin-economy-class ("*Offerings may vary. Beverage service is offered on flights over 250 miles") (last visited 10/10/2025);
https://www.faa.gov/sites/faa.gov/files/about/initiatives/cabin_safety/regs/acob213.pdf (air carriers should have procedures to discontinue beverage service during turbulence) (last visited 10/10/2025).

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1   services, or third-party websites," Dkt. 82-1 at 11, depends entirely on their individualized

2   behavior, and Delta would have the right to cross-examine each class member under Plaintiff's

3   suggested "self-identification" methodology.

4       Indeed, courts consistently find that campaigns far broader than Delta's are insufficient to

5   support an inference of exposure and therefore present a predominance problem. For example, in

6   *Mazza v. American Honda Motor Co.*, the Ninth Circuit held that it was "unreasonable to assume

7   that all class members viewed" representations in a Honda advertising campaign that included

8   three years of product brochures, more than six months of magazine and television commercials,

9   website ads, and statements in the owner's manual of the vehicle. 666 F.3d 581, 596 (2012); *see*

10  *also Mickelonis*, 2025 WL 1605332, at *11-12 (collecting caselaw and holding that campaign that

11  utilized social media, traditional media, and emails to consumers for one-year period insufficient

12  to create inference of exposure); *dotStrategy*, 2022 WL 2550391, at *9–10 (campaign that placed

13  statements on specific Facebook pages insufficient to create inference of exposure). Plaintiff

14  cannot rely on Delta's seven-month campaign to support an inference of class-wide exposure.

15          iii.    *Plaintiff Fails to Show That Website Purchasers Were "Necessarily*

16                  *Exposed."*

17      Plaintiff's proposed subclass also fails for lack of class-wide exposure. Plaintiff is incorrect

18  that California residents who purchased tickets on Delta.com between September 1, 2021, and

19  March 31, 2022, were "necessarily exposed to the Carbon Neutral Representations that were in the

20  website sales path." Dkt. 82-1 at 11. To the contrary, the banners on Delta.com appeared on a

21  rotating basis such that visitors saw different content depending on when they accessed a webpage.

22  *See* Ex. G, Womack Tr. 66:5-21 ("[E]very placement is featuring an ad that's running on rotation…

23  a different person would see a different thing based on when they clicked on the site."). The carbon

24  neutral banners placed on Delta's website between September 2021 and March 2022 appeared 6%

25  of the time compared to other advertisements in the same rotation. *See* Ex. L, Womack Decl. ¶ 4.

26  Thus, it would be impossible to determine whether any given website purchaser was or was not

27  exposed to the representations at issue without individualized inquiries. *See, e.g.*, *Tunick v. Takara*

28  *Sake USA Inc.*, 2025 WL 2644748, at *7 (N.D. Cal. Sept. 7, 2025) (individual issues predominated

where alleged misrepresentation was illegible on some retailer websites); *Pierce-Nunes*, 2016 WL 5920345, at \*7 (individual issues predominated where 90% of the product labels contained clarifying information or did not include the alleged misrepresentation at all); *Todd*, 2016 WL 5746364, at \*11 (individual issues predominated where 90% of products were sold by third-party retailers who may not have used the at-issue advertising).

### 3. The Variety of Statements at Issue Forecloses Certification.

Class certification is inappropriate where, as here, class members are exposed to "quite disparate information from various representatives of the defendant[.]" *Stearns*, 655 F.3d at 1020. Indeed, Plaintiff challenges a patchwork of statements that vary in content and legal significance. She tries to sidestep this issue by collapsing distinct statements into a single "Carbon Neutral Promise." Specifically, Plaintiff identifies three representations—(a) "Carbon Neutral Since March 2020," (b) "Committed to a Carbon-Neutral Future," and (c) "Committed to Becoming the World's First Carbon-Neutral Airline" and treats them as interchangeable. *See* Dkt. 82-1 at 3-4. This framing is factually and legally flawed.

To begin, Plaintiff's own motion confirms that Delta made *other*, non-uniform statements regarding carbon neutrality that are not included in the "Carbon Neutral Promise." *See id.* at 3–5. And even the three she identifies have differing meanings. Some are statements of present status (*e.g.*, "Carbon Neutral Since March 2020"), and others are aspirational (*e.g.*, "Committed to a Carbon-Neutral Future" and "Committed to Becoming the World's First Carbon-Neutral Airline"). Even Plaintiff's advertising expert distinguished between these categories and agreed that he would not classify "Committed To Becoming The World's First Carbon Neutral Airline" or other forward-looking goals as ones that would be taken literally. Ex. K, Silverman Tr. 214:10-216:8.

These distinctions are legally significant. "An alleged misrepresentation must relate to an objectively verifiable fact." *Edmunson v. Procter & Gamble Co.,* 2011 WL 1897625, at \*3 (S.D. Cal. May 17, 2011). Aspirational statements are not actionable. *See In re Am. Apparel, Inc. S'holder Litig.,* 855 F. Supp. 2d 1043, 1072 (C.D. Cal. 2012) ("committed to" reflects goals, not factual claims); *Vazquez v. DataRobot, Inc.*, 2023 WL 6323101, at \*12 (N.D. Cal. Sept. 28, 2023) ("[C]ommitments to take some action in the future generally are not actionable."). This variety

precludes certification because Plaintiff offers no method to determine *which* class members were exposed to *which* statements. *See, e.g.*, *Pierce-Nunes*, 2016 WL 5920345, at *7 (individual issues predominated where consumers were exposed to non-uniform representations); *Ono*, 2016 WL 6647949, at *14 (denying certification where class members were exposed to different advertisements from different sources, requiring individualized analysis of which statements were misleading and who saw them); *Conde v. Sensa*, 2019 WL 4277414, at *8 (S.D. Cal. Sept. 10, 2019) (finding individual reliance issues where different misrepresentations were made to different groups).

### 4.   Plaintiff's Proposed Damages Classes Create Individualized Inquiries.

Plaintiff's proposed damages classes include all California residents who purchased Delta tickets regardless of their purpose of travel. This definition ignores a critical limitation: the CLRA applies only to purchases made for "personal, family, or household purposes." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003). Individuals who purchase goods or services for business purposes are not "consumers" under the CLRA and cannot recover. *See Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009) (denying CLRA claim where plaintiff used eBay to purchase items for her business). Further, Plaintiff offers no method for distinguishing between class members who purchased Delta tickets for personal travel and those who did so for business purposes. This is a significant problem, as airline travel is uniquely susceptible to mixed-use purchases. *See, e.g.*, https://www.airlines.org/wp-content/uploads/2023/03/A4A-Air-Travel-Survey-2023-Key-Findings.pdf at 10 (last visited 10/10/2025) (Airlines For America study finding 24% of air trips were for business rather than personal travel in 2022). Indeed, Plaintiff's own testimony underscores the problem. *See, e.g*., Ex. A, Berrin Tr. 31:25-32:19 (testifying that her organization paid for her Delta flight in 2023).

Courts have denied class certification when similar individualized inquiries were required. *See Arabian v. Sony Electronics Inc.*, 2007 WL 627977, at *14 (S.D. Cal. Feb. 22, 2007) (denying certification of a CLRA because of individualized inquiry needed to determine whether laptops were acquired for personal or business use); *Ewert v. eBay, Inc.*, 2010 WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010) (denying certification because of individualized inquiry required to determine

if eBay purchases were made for personal or business purposes).

In addition, a person qualifies as a consumer under the CLRA only if they personally purchased the good or service at issue. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011) (CLRA claim failed because plaintiff did not pay the defendant for the product at issue). Proof of purchase or lease from the defendant is "a strict requirement under the statute." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011). Here, Plaintiff claims that she can determine each ticket purchaser for Delta passengers using Delta's records. Dkt. 82-1 at 11. She believes Delta is "likely to have this data" for the class because Delta already produced records for Plaintiff that showed each flight she flew, along with the credit card information used to purchase said flights. *Id.* (citing Ex. 52). But Plaintiff has provided no evidence that this method will work to identify the actual purchasers of flights on a class-wide basis. To the contrary, Plaintiff confirmed that her own flight records included numerous flights purchased by her ex-boyfriend (who did not care about Delta's carbon neutrality) and parents (who live in Florida and would not be class members). *See* Ex. A, Berrin Tr. 23:19-23, 52:21-25, 53:7-8, 54:5-14.

The individualized issues of who purchased a flight, and the purpose of the purchase, preclude class certification.

5.   Plaintiff Cannot Prove Damages on a Class-Wide Basis.

Under *Comcast*, a plaintiff seeking certification bears the burden of presenting a damages model that is both capable of measurement on a class-wide basis and directly tied to the theory of liability. 569 U.S. at 34–35. Here, Plaintiff seeks class certification under Rule 23(b)(3) based on two damages approaches: a "brand premium" approach using a conjoint survey and a "cost of fulfillment" approach.[7] Neither satisfies *Comcast*.[8]

---

[7] Plaintiff's amended initial disclosures state that she "seeks to recover the full purchase price of her tickets." Ex. J, Amended Initial Disclosures at 8. Plaintiff does not advance this theory on behalf of the classes, *see generally* Dkt. 82-1; Ex. M, Deposition Transcript of William Ingersoll ("Ingersoll Tr.") 84:9–85:1.
[8] Delta also challenges Plaintiff's expert under Federal Rule of Evidence 702 and *Daubert*. Dkt. 93.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

As a threshold issue, Plaintiff seeks "actual damages" through her CLRA claim. *See* Ex. J, Amended Initial Disclosures at 8. "[A]ctual damage" under the CLRA means "the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received." *Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 949 (S.D. Cal. 2019). Thus, in the context of CLRA claims, damages must reflect the actual loss to the consumer, not the gain to the defendant. By contrast, nonrestitutionary disgorgement—which focuses on the defendant's purported unjust enrichment—is not an available remedy. *See Ivie v. Kraft Foods Global, Inc.*, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015).

Plaintiff's "brand premium" approach does not calculate actual damages. It does not assess or even factor in what the putative class members paid—*i.e.*, the value departed. *See* Ex. M, Ingersoll Tr. 51:9-18 ("I am not sure that the payments [the class members] made are necessarily relevant"). Instead, it purports to estimate the value consumers place on a "carbon neutral" attribute when purchasing airline tickets, to be used to calculate the aggregate market share gain and additional profits Delta allegedly achieved through its carbon neutral claims. *See* Dkt. 82-2, Ingersoll Decl. ¶¶ 25, 37–47. In short, this model fails to measure consumer loss and instead seeks to redistribute additional profits from an unidentified increase in market share, a textbook example of nonrestitutionary disgorgement that is not recoverable under the CLRA. Ex. N, Declaration of Dr. Bruce Strombom ("Strombom Decl.") ¶ 56.

Plaintiff's alternative "cost of fulfillment" model fares no better. The cost of fulfillment model purports to estimate Delta's alleged cost savings from not purchasing unspecified "higher-quality carbon offsets," treating those avoided expenses as unjust profits to be rewarded to the entire class. But this model measures only Delta's internal cost-side behavior—not any actual loss to, or any value paid by, the consumers. *See* Dkt. 82-2, Ingersoll Decl. ¶¶ 48, 54; Ex. N, Strombom Decl. ¶ 56. Dr. Ingersoll confirmed this at his deposition: the model measures "costs that [Delta]

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1  didn't have to incur," not costs to consumers.[9] Ex. M, Ingersoll Tr. 48:16–49:9, 114:8-10, 114:19-

2  21.

3       A similar CLRA damages model was rejected in *Hadley v. Kellogg Sales Co.*, 324 F. Supp.

4  3d 1084 (N.D. Cal. 2018), where the plaintiff attempted to measure how many fewer products

5  Kellogg would have sold had it disclosed certain health risks. The court found that this model

6  focused on Kellogg's unjust enrichment rather than consumer loss, and thus constituted

7  nonrestitutionary disgorgement—an impermissible remedy under the CLRA. *Id.* at 1113-14. The

8  court emphasized that damages must "focus[] on the plaintiff's loss," *id.* at 1113, not the

9  defendant's gain. Because the advantage realized model measured only Kellogg's increased sales,

10  it failed under *Comcast*. The same flaw infects Plaintiff's models. Both rely on theories of unjust

11  enrichment and speculative valuation that are legally improper. Because Plaintiff has failed to

12  present a damages model that is consistent with her theory of liability and capable of class-wide

13  application, she has not met her burden under Rule 23(b)(3).

14       6.  The Proposed Classes Are Unmanageable.

15       Plaintiff also cannot demonstrate that a class proceeding is "superior to other available

16  methods" of adjudication as required under Rule 23(b)(3). "The superiority analysis requires a

17  determination of whether the proposed class action would be manageable." *Minkler v. Kramer

18  Labs., Inc.*, 2013 WL 3185552, at *7 (C.D. Cal. Mar. 1, 2013). Plaintiff has offered no trial plan

19  or other means for the Court to manage this case on a class-wide basis. *See Zinser*, 253 F.3d at

20  1189 (party seeking class certification "bears the burden of demonstrating 'a suitable and realistic

21  plan for trial of the class claims'") (citation omitted).

---

[9] If Plaintiff's expert attempts to quantify damages based on "price premium" or Delta's alleged overcharging of consumers, that theory would be preempted by the Airline Deregulation Act ("ADA"). *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992); *see also Zajac v. United Airlines, Inc.*, 2024 WL 3784535, at *3 (D. Md. Aug. 13, 2024) (claim based on airline's commitments to "going green" preempted by the ADA). Here, the Court has already drawn a critical distinction: while subjective valuations do not implicate Delta's rates, any suggestion that Delta objectively charged customers *too much* for carbon neutrality is a challenge to its pricing decisions and collides with the ADA. *See* Dkt. 37 at 8–9.

Some simple math illustrates the problem. If 1,452,601 individuals were given five minutes to prove that (a) they are a member of the class (*see, supra*, Section III.A.1); and (b) they purchased a Delta flight based on a carbon-neutral representation (as opposed to some other reason) (*see, supra*, Section III.B.1-4), it would take 7,263,005 minutes or 121,050 hours. If court were in session 8 hours a day for 365 days a year, it would take 41.45 years to try those issues. That is *not* manageable and cannot satisfy Rule 23.

### C.  Plaintiff's Proposed Injunctive Classes Are Uncertifiable Under Rule 23(b)(2).

To certify her FAL and UCL claims under Rule 23(b)(2), Plaintiff must prove Delta "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." And while Rule 23(b)(2) does not contain predominance requirements, a class under Rule 23(b)(2) must not be "overrun with individual issues" and must still be cohesive. *Sweet v. Pfizer*, 232 F.R.D. 360, 374 (C.D. Cal. 2005). As discussed, *supra*, Plaintiff cannot satisfy this requirement or otherwise show that Delta acted in a manner generally applicable to the classes. Her bid for certification also fails because she lacks standing to seek an injunction, *see* Dkt. 91, and her proposed relief—a retraction of Delta's prior carbon neutral claims—will provide no benefit to putative class members. Plaintiff acknowledges that Delta ceased making carbon neutral claims in March 2022, so she does not seek to enjoin current or future conduct; rather, she seeks to compel Delta to retract past statements. *See* Dkt. 82-1 at 15-16. This backward-looking remedy addresses the same conduct as Plaintiff's damages claim and, thus, is not the type of independent and prospective relief contemplated by Rule 23(b)(2). *See Palmer v. Stassinos*, 233 F.R.D. 546, 552 (N.D. Cal. 2006) ("Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery." (citation omitted)).

### IV.    CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for class certification.

**RESPECTFULLY SUBMITTED.**

DATED:  _October 10, 2025                        **KING & SPALDING LLP**

                                                                    By: */s/ Michael D. Roth*
                                                                            MICHAEL D. ROTH
                                                                            *Attorney for Defendant*

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Delta Air Lines, Inc., certifies that this brief contains 6,999 words, which complies with the word limit of LR.11-6.1.

DATED:  October 10, 2025                **KING & SPALDING LLP**

By: */s/ Michael D. Roth*
MICHAEL D. ROTH
*Attorney for Defendant*

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION