UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYANNA BERRIN, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> DELTA AIR LINES, INC., a Delaware Corporation, <br><br> Defendant. | Case No.:  2:23-cv-04150-MEMF-MRW <br><br> **ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SHAM DECLARATION AND ERRATA, AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [DKT. NOS. 90, 91]** |

Before the Court is Defendant's Motion to Strike Plaintiff's Sham Declaration and Errata (Dkt. No. 90) and Motion to Dismiss For Lack of Subject Matter Jurisdiction (Dkt. No. 91). For the reasons stated herein, the Court hereby DENIES the Motion to Strike and GRANTS IN PART the Motion to Dismiss.

/ / /

/ / /

/ / /

1

## I.    Factual Allegations[1]

The Court set out in detail the facts alleged in the Complaint in its Order Granting in Part the Defendant's Motion to Dismiss the First Amended Complaint. Dkt. No. 37. This putative class action concerns Delta's alleged misrepresentations of the company's total environmental impact of its business operations in its advertisements, corporate announcements, and promotional materials, thereby attaining undeserved market share from environmentally concerned consumers. Dkt. No. 61 ¶ 1 ("3AC"). These alleged misrepresentations revolve around Delta's representation that it is "the world's first carbon-neutral airline" and various other "carbon-neutral" representations. *See id.* ¶¶ 3-9, 15-17, 46-53, 56, 70, 83-84, 91, 97, 107.

Plaintiff Mayanna Berrin has alleged that she purchased flights on Delta's airline multiple times since March 2020, flying round-trip on Delta on May 6, 2021, November 19, 2021, October 10, 2022, and November 29, 2022. *See id.* ¶ 14. And that prior to purchasing these flights, Berrin had viewed advertisements, LinkedIn posts, and business reporting in which Delta was touted as a carbon-neutral airline, and she relied on such carbon-neutral representations when making the purchases. *Id.* ¶¶ 15-17. Berrin is a "longstanding and loyal Delta customer," who "intends to purchase flights from Delta in the future." *Id.* ¶ 18.

Berrin first alleges that Defendant Delta Air Lines, Inc. ("Delta") has violated California's Consumer Legal Remedies Act ("CLRA") by making carbon-neutral misrepresentations that led customers to falsely believe that Delta operated a carbon-neutral airline since March 2020; and that Delta purchased carbon offsets that meant it did not release any net additional carbon into the atmosphere on an annualized basis since March 2020. *See id.* ¶¶ 90-93. Berrin also alleges that beginning on March 6, 2020, and repeatedly again within three years preceding the filing of the Complaint, Delta has violated California's False Advertising Law ("FAL") by making untrue, false, deceptive, and/or misleading statements in connection with the advertising and marketing of Delta

---

[1] The following factual allegations are derived from the allegations in Plaintiff's Third Amended Complaint, Dkt. No. 61 ("3AC"), unless otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they *are* true.

flights. *See id.* ¶¶ 96-103. And since March 2020, Delta has violated and continued to violate California's Unfair Competition Law ("UCL") by (1) misrepresenting that Delta operated a carbon-neutral airline; (2) misrepresenting that Delta purchased carbon offsets such that it did not release any net additional carbon into the atmosphere on an annual basis; and (3) failing to inform Berrin and those similarly situated that the representations in (1) and (2) above are false. *See id.* ¶¶ 105-08.

## II.    **Procedural History**

On May 30, 2023, Berrin filed her Complaint against Delta in this Court. Dkt. No. 1. On July 19, 2023, Berrin filed a First Amended Complaint. Dkt. No. 19 ("1AC"). On March 28, 2024, the Court granted in part Delta's Motion to Dismiss the First Amended Complaint. Dkt. No. 37. The Court dismissed the following claims from the 1AC with leave to amend: Berrin's second cause of action for false advertising and third cause of action for unlawful, unfair, and fraudulent trade practices. *See id.* at 13. The Court found that equitable relief was not appropriate for past harm because Berrin alleged an adequate legal remedy, which was demonstrated by Berrin's CLRA claim seeking money damages. *Id.* at 12-13. However, the Court also found that Berrin's allegations of future harm may not have an adequate remedy at law, and therefore equitable relief may be appropriate if she could amend the 1AC to allege an intent to purchase flights from Delta in the future. *Id.* at 13.

On April 10, 2024, Berrin filed the Second Amended Complaint on behalf of herself and others similarly situated, asserting three causes of action: (1) violation of California's CLRA, Cal. Civ. Code § 1750, *et seq.*; (2) violation of California's FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; and (3) violation of California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq. See generally* Dkt. No. 39 ("2AC").

On December 11, 2024, the Court denied Delta's Partial Motion to Dismiss the Second Amended Complaint. Dkt. No. 59 ("Order"). Delta moved to dismiss Berrin's second and third causes of actions for violations of California's FAL and UCL on the basis that Berrin failed to allege a likelihood of future injury and thus lacked Article III standing to seek injunctive relief. *Id.* at 5. The Court found that: (1) Berrin had a concrete and particularized injury because "she purchased multiple flights from Delta since March 2020 and allege[d] that she would not have paid for them at

that price if she knew at the time that Delta's representations were false," and "refraining from purchasing future Delta flights, notwithstanding her desire to continue purchasing Delta flights and being an environmentally concerned consumer, is an injury that affects her in a harmful and personal way,"; and (2) despite being a previously deceived plaintiff, Berrin's "intention to continue flying Delta is sufficient under *Davidson* to show an actual or imminent injury," where she "is a consumer who intends to continue purchasing Delta flights [in the future] but cannot do so because of her [alleged] inability to rely on Delta's carbon-neutral representations that they have made in the past." *Id.* at 7, 10-11, 13 (citing *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)).

On December 19, 2024, Berrin filed a Third Amended Complaint adding a named plaintiff. *See* Dkt. No. 58; *see generally* 3AC. On August 29, 2025, Berrin filed a Declaration in support of her Motion for Class Certification. *See* Dkt. No. 80-1. On October 10, 2025, Delta filed a Motion to Strike Plaintiff's Sham Declaration and Errata. Dkt. No. 90 ("Motion to Strike"). On October 24, 2025, Berrin filed an Opposition. Dkt. No. 103 ("Opposition Motion to Strike"). On October 31, 2025, Delta filed a Reply. Dkt. No. 114 ("Reply Motion to Strike"). On October 10, 2025, Delta filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. Dkt. No. 91 ("Motion to Dismiss"). On October 24, 2025, Berrin filed an Opposition. Dkt. No. 102 ("Opposition Motion to Dismiss"). On October 31, 2025, Delta filed a Reply. Dkt. No. 115 ("Reply Motion to Dismiss").

On October 24, 2025, Berrin also filed a Declaration of L. David Russell in support of Plaintiff's Oppositions to Delta's Motion to Strike and Motion to Dismiss, Dkt. No. 104, and filed a Declaration of Mayanna Berrin in support of Plaintiff's Oppositions to Delta's Motion to Strike and Motion to Dismiss, Dkt. No. 105. And on October 31, 2025, Delta filed a Declaration of Allison White in support of Defendant's Reply Briefs. Dkt. No. 116. The Court held a hearing on the Motion to Strike and Motion to Dismiss on December 18, 2025. Dkt. No. 147.

## MOTION TO STRIKE (DKT. NO. 90)

### I. Applicable Law

#### A. Sham Affidavit Rule

The Ninth Circuit recognizes a "sham affidavit" rule on motions for summary judgment, where "a party cannot create an issue of fact by an affidavit contradicting his prior deposition

testimony." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).

However, the Ninth Circuit has cautioned courts to be careful in applying the sham affidavit rule. "[I]t must be recognized that the sham affidavit rule is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence." *Id.* There are two "important limitations" on the rule. *Id.* First, the rule does not apply in every case were "a contradictory affidavit is introduced to explain portions of earlier deposition testimony." Before applying the rule, "the district court must make a factual determination that the contradiction was actually a 'sham,'" *id.*, rather than "the result of an honest discrepancy, a mistake, or the result of newly discovered evidence," *Kennedy*, 952 F.2d at 267. Second, "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous." *Van Asdale*, 577 F.3d at 998. Put another way, only that affidavit testimony that "flatly contradicts" the deposition testimony *and* that is a sham should be excluded. *See Kennedy*, 952 F.2d at 267 (explaining that the rule is concerned with "'sham' testimony that *flatly contradicts* early testimony in an attempt to 'create' an issue of fact and avoid summary judgment" (emphasis added)). The rule should not be invoked to prohibit a party "from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Van Asdale*, 577 F.3d at 999 (quoting *Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995)).

## B.  Federal Rule of Civil Procedure Rule 30(e)

A deponent has thirty days after notification that a deposition transcript is available to review the transcript and make any changes "in form or substance" and to provide "the reasons for making them." Fed. R. Civ. P. 30(e). However, a deponent may not make changes to his deposition testimony "solely to create a material factual dispute in a tactical attempt to evade an unfavorable [outcome]" because Rule 30(e) permits errata deposition testimony only to make "corrective, not contradictory, changes." *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225-26 (9th Cir. 2005).

## II.   Discussion

Delta raises numerous arguments as to why the Court should strike Berrin's declaration and errata that contradict her deposition testimony under the sham affidavit rule. *See* Motion to Strike at 6-7. Berrin first argues that the sham affidavit rule does not apply to 12(b)(1) motions or to class certification motions, and that either way, her declaration and errata are not a sham. *See* Opposition Motion to Strike at 2-15; *see also* Opposition Motion to Dismiss at 7-8. For the reasons discussed below, the Court finds that the sham affidavit rule shall not apply to Berrin's class certification motion, but shall apply to Delta's Rule 12(b)(1) motion, and that Berrin's declaration and errata shall not be stricken under the sham affidavit rule.

### A.   The Sham Affidavit Rule Shall Not Be Applied to Berrin's Class Certification Motion but Shall Be Applied to Delta's Rule 12(b)(1) Motion.

Berrin argues that the sham affidavit rule cannot be applied to Delta's Rule 12(b)(1) or Berrin's class certification motion. *See* Opposition Motion to Strike at 2-4; *see also* Opposition Motion to Dismiss at 7. Delta contends that it applies to both motions. *See* Motion to Strike at 5-6; Reply Motion to Strike at 2-5; *see also* Reply Motion to Dismiss at 4.

Having considered the binding authority on the sham affidavit rule, the Court declines to apply the sham affidavit rule to Berrin's class certification motion. The Ninth Circuit has only applied the rule in the context of summary judgment motions, and its purpose is best fulfilled in that context, where the district court is to weigh conflicting evidence in a particular way and with a particular question in mind—namely, whether there are genuine issues of material fact. *See, e.g.,* *Nelson v. City of Davis,* 571 F.3d 924, 928 (9th Cir. 2009). On summary judgment, the court does not itself resolve issues of material fact, and therefore the sham affidavit rule is necessary to permit the court to essentially do so where otherwise it is not permitted to. *Id.* "The rationale underlying the sham affidavit rule is that a party ought not be allowed to manufacture a bogus dispute with *himself* to defeat summary judgment." *Id.* (emphasis in original). The Court has considered the various district court cases cited by the parties and is not persuaded that the rule should be applied to

Berrin's class certification motion.[2] To the contrary, the Court will—to the extent that it is permitted to resolve factual disputes—do so using its ordinary tools for doing so.

As to Delta's 12(b)(1) Motion to Dismiss, this motion is actually governed under a summary judgment standard because, as discussed below in the Motion to Dismiss, the jurisdictional issues are intertwined with the merits. Accordingly, it appears that this Court should apply the sham affidavit rule before striking any evidence. *See Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) (holding that when jurisdictional issues are "'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact'")); *see also* Reply Motion to Dismiss at 4. Therefore, the Court will apply the sham affidavit rule to Delta's Rule 12(b)(1) Motion.

**B. Neither Berrin's Declaration Nor Her Errata Shall Be Stricken Under the Sham Affidavit Rule.**

The Court evaluates Delta's arguments below as to each piece of evidence Delta wants to strike under the sham affidavit rule.

i.    Berrin's Reliance on Representations of Carbon Neutrality

According to Berrin's declaration, Berrin "purchased flights on Delta's website on or around April 8, 2021, September 28, 2021, July 18, 2022, and December 7, 2022." Berrin Decl. ¶ 8, Dkt. No. 80-1. "While purchasing [her] tickets on these occasions, [Berrin] navigated the home page and web pages where [she] was asked to choose departure and arrival cities, choose flights, and pay for those flights. When [she] navigated these pages while purchasing tickets on at least one of these

---

[2] The Court notes, however, that *Friends of the Earth* does not support the proposition that the sham affidavit rule cannot be applied outside of the summary judgment context. Berrin cites *Friends of the Earth* to argue that "the Ninth Circuit has declined to apply the rule outside of the summary judgment context." *See* Opposition Motion to Strike at 3 (citing *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 954 (9th Cir. 2021)); *see also* Opposition Motion to Dismiss at 7 (citing the same quote from *Friends of the Earth* and arguing that the court did not have to "follow the strictures of the sham affidavit rule" in Delta's Rule 12(b)(1) Motion). However, *Friends of the Earth* does not support this proposition. The Ninth Circuit held that—because the motion at issue involved a factual jurisdictional challenge under Rule 12(b)(1), where the "jurisdictional disputes were not intertwined with the merits," the district court, not a jury, could "resolve [the] factual disputes itself." *See Friends of the Earth*, 992 F.3d at 944-45 (quoting *Leite*, 749 F.3d at 1122). As a result, application of the limits of the sham affidavit rule was unnecessary. This was not a holding that the sham affidavit rule cannot be applied to Rule 12(b)(1) motions.

occasions, [she] recall[ed] seeing statements where Delta claimed that it was 'carbon neutral.'" *Id.* ¶ 9. "When [she] took flights on Delta [during] this time period, [she] recall[ed] seeing an in-flight video claiming that Delta was 'carbon neutral,' and recall[ed] seeing a napkin claiming, 'Carbon Neutral Since March 2020 - Travel confidently knowing that we will offset the carbon emitted on your Delta flight.'" *Id.* ¶ 10. "[She] relied on each of the foregoing representations when deciding to purchase Delta flights as opposed to other, potentially cheaper, flight options." *Id.* ¶ 11.

Delta points to deposition testimony that purportedly contradicts the statement on reliance in Paragraph 11 of the declaration. *See* Motion to Strike at 2-4, 8-9. When asked if she recalled "whether [she was] relying on any carbon-neutral representation when [she] booked this specific [July 18th, 2022] flight," Berrin testified that she did not believe so, and when asked the same question regarding a flight purchased in 2021, Berrin said "[a]t that time, no," and doubled down when asked again. *Id. See* Berrin. Dep. 121:22-122:2, 122:21-23, 128:11-14, Dkt. No. 104-3. Berrin also said it was "probably post 2022" when she "started relying on Delta's carbon-neutral representations when [she] was booking flights." *See id.* 128:15:18. And when asked again when she began relying on Delta's carbon-neutral representations, Berrin testified that it was not until "2023." *Id.* 129:13-24.

Here, the Court finds that the declaration in Paragraph 11 and the deposition testimony do clearly contradict each other on this issue. *See Van Asdale*, 577 F.3d at 998; *see also* Motion to Strike at 9. The fact that Berrin said she started relying on Delta's carbon-neutral representations post-2022, and when asked again when she relied on the same representations for specific flights, she said 2023, directly contradict that Berrin said she relied on Delta's carbon-neutral representations when purchasing Delta flights in 2021 and 2022. *See* Berrin Dep. 121:22-25, 122:21-23, 128:11-18, 129:13-24; Berrin Decl. ¶¶ 8-11.

But it is not enough that the testimony is contradictory. The Court must find that it is a "sham," rather than an honest mistake or discrepancy. *Kennedy*, 952 F.2d at 267. And, having considered the explanations provided, the Court does not find so. Berrin contends that her declaration is not contradictory because she was just correcting an ambiguous question and answer. When asked the question at Berrin Dep. 129:13-24, she explains she was confused by the question

and thought she was "being asked when [she] relied on the carbon-neutral representations to pursue this lawsuit, or used the representations in some way, as opposed to believing in their truth and basing [her] purchasing decisions on them," so Berrin answered 2023, which was when the lawsuit was filed. *See* Berrin Decl. ¶ 8, Dkt. No. 105; *see also* Opposition Motion to Strike at 11-12. And when asked if she relied on Delta's carbon-neutral representations when purchasing specific flights, *see* Berrin Dep. 121:18-122:2, 128:8-14, Berrin explains she was also confused about dates, *see* Berrin Decl. ¶¶ 3-4, Dkt. No. 105. The fact that Delta's counsel gave her the opportunity to advise if she did not understand a question or to ask follow up questions to clarify the questions is not dispositive. *See* Motion to Strike at 14-15; *see also* Ex. A, Berrin Dep. Video at 4:30-4:47. As Berrin explains it, she thought she understood the question and answered accordingly. Upon further reflection, however, she realized she had misunderstood the questions. Under the circumstances—a lengthy deposition, numerous documents and dates, and several similar questions—the Court cannot find that the declaration was a "sham." The Court will therefore not strike the declaration.

Accordingly, because Berrin's declaration at Paragraph 11 is not deemed a sham, Paragraph 11 shall not be stricken.

ii.     Awareness of Carbon-Neutral Representations

According to Berrin's declaration, she "observed multiple statements from Delta that it was 'carbon neutral.'" Berrin Decl. ¶ 4, Dkt. No. 80-1. This started "when [she] viewed an announcement from Delta's CEO Ed Bastian that it was 'going fully carbon neutral,' which [she recalled] viewing as early spring 2020." *Id.* She recalled "seeing an announcement on Delta.com in 2021, where Delta announced that '13 M metric tons will be offset by Delta, making the company carbon neutral.'" *Id.* ¶ 5. "While purchasing [her] tickets on these occasions, [Berrin] navigated the home page and web pages where [she] was asked to choose departure and arrival cities, choose flights, and pay for those flights. When [she] navigated these pages while purchasing tickets on at least one of these occasions, [she] recall[ed] seeing statements where Delta claimed that it was 'carbon neutral.'" *Id.* ¶ 9. "When [she] took flights on Delta [during] this time period [from April 2021 to December 2022], [she] recall[ed] seeing an in-flight video claiming that Delta was 'carbon

neutral,' and recall[ed] seeing a napkin claiming, 'Carbon Neutral Since March 2020 - Travel confidently knowing that we will offset the carbon emitted on your Delta flight.'" *Id.* ¶¶ 8, 10.

Delta points to deposition testimony that purportedly contradicts the above declaration statements. *See* Motion to Strike at 4-5, 9-10. Berrin testified that she generally recalled seeing publicly that Delta was a carbon-neutral airline in 2021 or 2022, and she did not recall if she saw it before. Berrin Dep. 70:6-17. She also could not recall if she saw any statements about carbon neutrality in the spring of 2020. *See id.* 82:35-83:3, 135:4-136:12. When asked about what specific carbon-neutral representations she saw that she believed to be false, Berrin said that it was the statement that Delta was "[t]he world's first carbon-neutral airline," with variations on that idea, and that she may have seen such representations during in-flight security videos and online advertisements in 2021. *See id.* 78:17-80:5, 136:23-137:9. She said she did not believe she saw these statements on Delta's website and believed she would have seen them on social media. *See id.* 81:11-15. And she recalled seeing the in-flight napkin perhaps in 2021 to 2022 on a flight, but was not sure if she saw it beforehand and what flight she saw it on. *See id.* 155:18-157:8.

Here, the Court finds that the deposition testimony and declaration do not clearly contradict each other. The fact that Berrin saw an announcement in 2021 on Delta's website about being carbon-neutral, saw statements on Delta's carbon neutrality when buying tickets, and saw an in-flight video and napkin claiming carbon neutrality does not clearly contradict the fact that she generally saw publicly that Delta was carbon neutral in 2021 or 2022, believed she saw variations on Delta's carbon neutrality claim during in-flight ads and online, and saw an in-flight napkin in 2021 and 2022. *See* Berrin Dep. 70:6-17, 78:17-80:5, 136:23-137:9, 155:18-157:8; Berrin Decl. ¶¶ 4-5, 8-10, Dkt. No. 80-1.

Berrin did not say that the *only* representation she saw and thought was false was that one statement, *see* Motion to Strike at 4, but rather said she saw variations of it, *see* Berrin Dep. 78:17-80:5, 136:23-137:9. And Berrin did not provide a specific date for when she saw the napkin in her declaration, *see* Motion to Strike at 10, but rather said she saw the napkin during the 2021-2022 time period she took the flights, which is consistent with her deposition that she saw the napkin on a flight in 2021 or 2022, *see* Berrin Dep. 155:18-157:8; Berrin Decl. ¶ 10, Dkt. No. 80-1. She recollected

some details about seeing the napkin on a flight and did not "fail[] to recollect *any* details." *See* Motion to Strike at 10 (citing *CrossFirst Bank v. Vieste SPE LLC*, No. 18-01637, 2024 WL 4769769, at *7 (D. Ariz. Nov. 13, 2024) (emphasis added)). Also, the fact that Berrin "did not believe she saw these statements on Delta's website," does not clearly contradict that she did see them on the website. *See id.* 81:11-15; Berrin Decl. ¶ 9, Dkt. No. 80-1. And although Berrin "could not recall if she saw any statements about carbon neutrality in the spring of 2020," it does not clearly contradict that she saw Delta's announcement in spring 2020 regarding carbon neutrality because Berrin said "perhaps" to that question. *See* Berrin Dep. 82:35-83:3, 135:4-136:12; Berrin Decl. ¶ 4, Dkt. No. 80-1; *see also* Opposition Motion to Strike at 6. Therefore, the Court does not find these statements in the declaration to be a sham.[3]

        iii.    Understanding of Carbon-Neutral Representations

Berrin's declaration stated: She "decided to act as a class representative in this case because [she thought it was] wrong that Delta misled its customers about its supposed carbon neutral status. Indeed, because Delta never retracted the representation that it was carbon neutral, and now claims that it will eventually be net zero, [she] believe[s] that Delta's carbon neutral claim continues to mislead consumers." Berrin Decl. ¶ 13, Dkt. No. 80-1.

Delta points to deposition testimony that purportedly contradicts the above declaration statement. *See* Motion to Strike at 5, 10-11. Berrin testified that "[i]f a company said it was aiming to be net-zero by 2050," then she would understand that to mean the company isn't net-zero right now and is not carbon-neutral right now. *See* Berrin Dep. 77:18-21, 78:9-12. And she said that she believes that Delta is still representing itself as carbon-neutral and believes they have pivoted their language to net-zero, and that being net-zero by 2050 is different in her mind than just being net-zero or carbon neutral. *See id.* 88:9-89:1.

Here, the Court finds that the deposition testimony and declaration statement do not clearly contradict each other. It is ambiguous as to whether Delta's question regarding the difference with

---

[3] The Court need not address Berrin's arguments about being flustered or confused, *see* Opposition Motion to Strike at 6, 9-10; Reply Motion to Strike at 6, because as discussed above, the Court finds that the statements in the declaration are not clearly contradictory with the deposition.

net zero by 2050 was referring to a difference between net zero by 2050 and net-zero, or a difference between net-zero by 2050 and carbon neutral. *See* Opposition Motion to Strike at 14. Either way, the fact that Berrin herself would understand the net-zero by 2050 claim to be different than the carbon-neutral claim or net-zero claim does not clearly contradict the fact that she believes the net-zero claim is confusing and misleading to consumers. *See* Berrin Decl. ¶ 13, Dkt. No. 80-1; Berrin Dep. 88:9-89:1. Berrin did not say in her declaration that the net-zero claim is confusing to her. *See* Motion to Strike at 10; Berrin Decl. ¶ 13, Dkt. No. 80-1. Therefore, the Court does not find this statement in the declaration to be a sham.

### iv.    Errata

Delta challenges eleven errata changes as impermissible because they are contradictory rather than corrective changes. *See* Motion to Strike at 12-14; *see also* Ex. A, Dkt. No. 90-1. But Rule 30(e) does not prohibit "contradictory" changes, and the sham affidavit rule as applied to errata permits this Court to strike even contradictory changes only if they are a sham. The Court will walk through the eleven changes (a new change is noted in italics, with a deletion noted as bold).

First, there are three changes from a 'no' to a 'yes': (1) Change No. 1: Q. Do you recall whether you were relying on any carbon-neutral statement when you booked that specific flight [on September 28, 2021]? A. **At that time, no.** *Yes*. *See* Berrin Dep. 121:22-25; Errata 121:25, Ex. A at 5, Dkt. No. 90-1; (2) Change No. 2: Q. At that time you weren't? A. **At that time I was not.** *At that time I was*. *See* Berrin Dep. 122:1-2; Errata 122:2, Ex. A at 5, Dkt. No. 90-1; and (3) Change No. 3: Q. Do you recall whether you were relying on any carbon-neutral representation when you booked this specific flight [on July 18, 2022]? A. **At that time I don't believe so.** *Yes*. *See* Berrin Dep. 128:11-14; Errata 128:14, Ex. A at 5, Dkt. No. 90-1.

Here, the Court finds that these changes from a 'no' to a 'yes' are contradictory. But Berrin has met the requirements of Rule 30(e) by offering an explanation for all three changes, namely that each was a "clarification upon further thought," and that she "misspoke based on [the] date at [the] top of [the] email chain rather than [the] date [the] email was purchased." *See* Ex. B, Dkt. No. 90-4. Rule 30(e) requires nothing more. And the requirements of the sham affidavit rule are not met. The

Court finds that Berrin has provided an arguable explanation for each contradiction and therefore these errata are not shams.

Second, there are two changes of dates: (4) Change No. 4: Q. When do you believe that you started relying on Delta's carbon-neutral representations when you were booking flights? A. I believe probably post **2022**. *2020*. *See* Berrin Dep. 128:15-18; Errata 128:18, Ex. A at 5, Dkt. No. 90-1; and (5) Change No. 5: Q. [W]hen in this list of dates did you begin relying on Delta's carbon-neutral representations? [Objection] The Witness: I'd say **2023**. *2020*. *See* Berrin Dep. 129:17-24; Errata 129:24, Ex. A at 5, Dkt. No. 90-1. Berrin argues that the reasons for the changes are that she had a "clarification upon further thought," and she "misunderstood [the] question," where she "believed [Delta] was asking [her] when [she] relied on the representations to pursue the lawsuit." *See* Ex. B, Dkt. No. 90-4. Even if these changes are contradictory, the Court credits Berrin's explanations for these purposes and therefore finds that they are not shams. They shall not be stricken.

Third, Change No. 7 shall not be stricken. Change No. 7 is an additive change: Q. What did you see online specifically that was this advertising? A. I think similar to what we said earlier, the banner advertisements, sponsored posts on social Media, *Delta's website*. *See* Berrin Dep. 79:14-18; Errata 79:18, Ex. A at 6, Dkt. No. 90-1. Here, the Court finds this is not contradictory because "banner advisements" is ambiguous and could have referred to the website. *See* Opposition Motion to Strike at 16-17. Delta argues that this adds "significant new information," *see* Motion to Strike at 13, but the Court finds it is not "significant new information" as "banner advisements" can be on websites. Accordingly, this is a proper errata change.

Fourth, Change No. 10 shall not be stricken. Change No. 10 is an additive change: Q. Would that be different in your mind? A. Literally, yes, *but still confusing and misleading*. *See* Berrin Dep. 88:14-22; Errata 88:22, Ex. A at 7, Dkt. No. 90-1. Here, the Court finds this is a corrective and not contradictory change because Berrin is simply clarifying how the net-zero change would be different. *See* Opposition Motion to Strike at 17. Delta contends that it is contradictory because it is "lawyerly fixing of problematic testimony," but the deposition did not make clear whether Berrin was confused or not by the statement, so the errata change is not lawyerly gamesmanship. *See*

Motion to Strike at 13 (citing *B&G Foods N. Am., Inc. v. Embry*, No. 20-00526, 2024 WL 4262412, at *3 (E.D. Cal. Sep. 20, 2024)). Accordingly, this is a proper errata change.

Fifth, Change No. 11 shall not be stricken. Change No. 11 states: Q. I'll just read this into the record so we have it: … Plaintiff Mayanna Berrin intends to purchase Delta flights from Delta in the future. Do you see that? A. Yes, I do. Q: Is that a correct statement? A. **No**. *Yes, if Delta can regain my trust*. See Berrin Dep. 87:16-24; Errata 87:24, Ex. A at 7, Dkt. No. 90-1. Here, the Court finds this is a contradictory change because Berrin is trying to assert the opposite of what she alleged. *See* Motion to Strike at 13. Berrin argues this change is because she had a "clarification upon further thought," and that she "misunderstood [the] question." *See* Ex. B, Dkt. No. 90-4. Crediting her explanation for these purposes, the Court finds that this errata is not a sham and shall not be stricken.

Sixth, Change No. 9 shall not be stricken. Change No. 9 states: Q. What statements by Delta exactly did you see that you now believe to be false? A. The exact statements to my recollection were, "The world's first carbon-neutral airline." Q. So that's the specific representation you recall? A. **That's what I recall, yes**. *That's one of the ones I recall*. See Berrin Dep. 78:17-23; Errata 78:23, Ex. A at 7, Dkt. No. 90-1. Here, the Court finds this is a corrective and not contradictory change, because as discussed above, Berrin did not say that the *only* representation she saw and thought was false was that one statement, *see* Motion to Strike at 4, but rather said she saw variations of it, *see* Berrin Dep. 78:17-80:5, 136:23-137:9; Opposition Motion to Strike at 16. Therefore, this errata change is simply clarifying the statement and is thus proper.

Seventh, Change No. 8 shall not be stricken. Change No. 8 states:

> Q. I think -- and correct me if I'm wrong -- but in your previous testimony today you testified that to the best of your knowledge you've – you would have seen these representations in either 2021 or 2022; is that right? A. Yes. MR. KOUYOUMDJIAN: Objection. Vague as to which representations we're talking about specifically. MS. PRITCHARD: The Delta carbon-neutrality representations. A. I believe so. Q. Okay. You don't recall seeing any in 2020? A. **I don't recall**. *I did see some*.

See Berrin Dep. 135:4-19; Errata 135:19, Ex. A at 7, Dkt. No. 90-1; *see also* Motion to Strike at 4. Berrin contends that this change was because of a "clarification upon further thought," and that she was confused about dates. *See* Opposition Motion to Strike at 17-18; Ex. B, Dkt. No. 90-4. Crediting

this explanation for this purpose, the Court finds that the errata is not a sham and therefore should not be stricken.

Lastly, Change No. 6 shall not be stricken. Change No. 6 states: Q. Circling back to what started our discussion about the projecting publicly that it was a carbon-neutral airline, do you recall when you first saw that? A. Not in specific, no. Q. How about in general? A. **2021, 2022**. *2020 to 2022*. *See* Berrin Dep. 70:6-12; Errata 70:12, Ex. A at 6, Dkt. No. 90-1. Here, the Court finds that this is a contradiction because to first know about the carbon-neutral claim generally in 2020 versus in 2021 or 2022 is a different factual situation. Berrin contends that "she misspoke and was clarifying the testimony after further thought," and that this is "consistent with Plaintiff's deposition testimony that she 'perhaps' saw a spring 2020 announcement that Delta was going fully carbon neutral." *See* Opposition Motion to Strike at 16. Because the Court credits Berrin's explanation for these purposes, it does not find that this errata is a sham; it shall not be stricken.

Accordingly, the Court DENIES the Motion to Strike. The parties are advised that in crediting Berrin's explanations, the Court is merely applying the Ninth Circuit's guidance to apply the sham affidavit rule with caution. *Van Asdale*, 577 F.3d at 998. Finding that the declaration and errata are not a sham, is not the same as weighing conflicting evidence and finding that the declaration and the deposition testimony as corrected are the truth.

<b><u>MOTION TO DISMISS (DKT. NO. 91)</u></b>

### I.      Applicable Law

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.* "A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, including for failure to allege injury sufficient for Article III standing, may be made at any time." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019).

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In resolving a factual attack on jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations." *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

Once a defendant has contested "the truth of the plaintiff['s] factual allegations," the plaintiff has the "burden to 'support [their] jurisdictional allegations with competent proof." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (quoting *Leite*, 749 F.3d at 1121 (cleaned up)). When jurisdictional issues are "'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.'" *Bowen*, 118 F.4th at 1143 (quoting *Leite*, 749 F.3d at 1122). Jurisdictional and substantive issues are deemed "so intertwined" when the "question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Safe Air for Everyone*, 373 F.3d at 1040. Thus, when intertwined, a court must "assess Defendant['s] motion as we would a motion for summary judgment, and 'leave the resolution of material factual disputes [regarding Article III standing] to the trier of fact.'" *Bowen*, 118 F.4th at 1146 (quoting *Leite*, 749 F.3d at 1122). Accordingly, "genuine disputes of material fact render dismissal on standing grounds improper." *Id.*

"Article III of the U.S. Constitution authorizes the judiciary to adjudicate only 'cases' and 'controversies.'" *Davidson*, 889 F.3d at 967. "The doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Where a plaintiff lacks standing, a federal court "lacks

subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson*, 889 F.3d at 967 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 185.

## II.  Discussion

Delta moves to dismiss all of Berrin's claims on the basis that (1) Berrin cannot pursue damages under the CLRA because Berrin has not alleged an injury in fact, and (2) Berrin cannot pursue injunctive relief for any of her claims because she does not face any real or imminent threat of future harm. *See* Motion to Dismiss at 7-12; Reply at 4-8.[4] The parties do not dispute that the standing issues are intertwined with the merits issues, so the Court analyzes Delta's Motion as a motion for summary judgment and "leave the resolution of material factual disputes [regarding Article III standing] to the trier of fact." *See* Opposition Motion to Dismiss at 3-4; Reply Motion to Dismiss at 1, 4; *see also Bowen*, 118 F.4th at 1146. For the reasons discussed below, the Court finds that Berrin has shown there is a material factual dispute as to Article III standing for her damages claim but not her injunctive relief claims.

**A.  Berrin Possesses Standing to Pursue Damages Under the CLRA Because There is a Genuine Dispute of Material Fact as to Berrin's Damages Claim.**

---

[4] Berrin contends Delta did not challenge Berrin's standing to pursue equitable relief under the CLRA. *See* Opposition Motion to Dismiss at 5 n.2; 3AC ¶ 92; *see also* Motion to Dismiss at 7-8 (challenging the CLRA damages claim and injunctive relief under the UCL and FAL). But Berrin made the same equitable relief claim under the CLRA in its 2AC as it did in its 3AC, *see* 2AC ¶ 86; 3AC ¶ 92, and the Court previously found that "any equitable relief sought under the CLRA is also dismissed with leave to amend for lack of standing, just like the FAL and UCL claims discussed above," *see* Dkt. No. 37 at 14, so the Court finds that if Berrin cannot now allege standing for its injunctive relief claims under the FAL and UCL, then it cannot allege standing for injunctive relief under the CLRA. Therefore, Delta's general challenge to the injunctive relief claims under the FAL and UCL is likewise a challenge to the general injunctive relief claim under the CLRA.

Delta contends that there is no genuine dispute of material fact as to whether Berrin relied on Delta's alleged misrepresentations when purchasing the four flights at issue, so Berrin does not have standing to pursue her CLRA damages claim. *See* Motion to Dismiss at 7; Reply Motion to Dismiss at 1-2. Berrin contends that there is a genuine dispute of material fact regarding Berrin's standing, which a jury must resolve. *See* Opposition Motion to Dismiss at 5-7.

Under the CLRA, California Civil Code Section 1780(a) provides a cause of action to "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770." Cal. Civ. Code § 1780(a). "The CLRA's 'any damage' requirement is a capacious one that includes any pecuniary damage as well as opportunity costs and transaction costs that result when a consumer is misled by deceptive marketing practices." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (citing *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 299, 302-03 (Cal. 2009)). "Because the 'any damage' standard includes even minor pecuniary damage, [the Ninth Circuit] conclude[s] that any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing." *Id.* at 1108. "The 'lost money or property' requirement [under the UCL and FAL] requires a plaintiff to demonstrate 'some form of economic injury' *as a result of his transactions with the defendant.*" *Id.* at 1104 (emphasis added). Thus, "a consumer's allegation that 'she would not have bought the product but for the misrepresentation . . . is sufficient to allege causation . . . [and ] to allege economic injury.'" *Davidson*, 889 F.3d at 965-66 (quoting *Kwikset Corp. v. Superior Court,* 246 P.3d 877, 890 (Cal. 2011)).

Here, the Court finds there is a genuine dispute of material fact regarding whether Berrin has suffered an economic injury from buying Delta flights. Berrin is seeking actual damages for flights purchased on April 8, 2021, September 28, 2021, July 18, 2022, and December 7, 2022—flights Berrin would not have purchased if she knew Delta's misrepresentations were false. *See* Ex. A at 8, Plaintiff Mayanna Berrin's Amended Initial Disclosures, Dkt. No. 91-2; *see also* 3AC ¶¶ 14-17, 92-93. And Berrin is also seeking damages for the increase in consumer demand for Delta's flights due to such purchases. Ex. A at 8, Dkt. No. 91-2.

Although Berrin has given conflicting testimony on when she began relying on Delta's carbon-neutral representations when booking flights—as discussed above with respect to the Motion to Strike—the Court finds that she has presented enough evidence on this point to create a genuine issue of fact as to whether she relied on Delta's carbon-neutral representations with respect to her 2021 and 2022 flights. *See id.*; Berrin Decl. ¶ 8, Dkt. No. 105. In addition, she presented testimony that she "believed [Delta] was having less of an impact on the planet [through its carbon-neutral representations]." Opposition Motion to Dismiss at 5 (citing Berrin Dep. 39:6-13, 40:2-8, 41:6-12, 44:2-45:3, 45:19-46:7, Dkt. No. 104-3). And she also presented evidence that she "relied on Delta's representation that it was 'carbon neutral' when she purchased tickets to fly on Delta," *see* Ex. 5 at 4, Dkt. No. 104-5. Accordingly, the Court finds there is a genuine issue of material fact as to her alleged injury that is traceable to Delta's conduct concerning her 2021 to 2022 flights, and therefore there is a genuine issue as to whether she has suffered an injury in fact sufficient to establish standing for her CLRA damages claim.

### B. Berrin Lacks Standing to Pursue Injunctive Relief Because There is No Genuine Dispute of Material Fact as to Berrin's Injunctive Relief Claims.

A plaintiff must adequately allege "an imminent or actual threat of future harm caused by [the defendant's] allegedly false advertising." *Davidson*, 889 F.3d at 970. "The 'threatened injury must be certainly impending to constitute injury in fact' and 'allegations of possible future injury are not sufficient.'" *Id.* at 967 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Past wrongs, though insufficient by themselves to grant standing, are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Delta argues that that the undisputed facts show that Berrin failed to allege an actual or imminent injury because she does not face any real or imminent threat of future harm. *See* Motion to Dismiss at 8; Reply Motion to Dismiss at 4-8. Delta points to (1) Berrin's express disinterest in Delta travel, and (2) her conditional intent to fly as legally insufficient. *See* Motion to Dismiss at 9-12. Berrin argues that she has established her intent to fly Delta in the future, which creates a question of fact. *See* Opposition Motion to Dismiss at 8-14.

       i.     <u>Berrin's testimony is clear that she did not have an interest in flying Delta in the future and thus does not create a genuine issue of material fact.</u>

Berrin testified that she does not purchase tickets at Delta anymore for her personal travel, and she stopped purchasing tickets after this lawsuit was filed in May of 2023. *See* Berrin Dep. 50:2-25, 86:12-15, Dkt. No. 104-3. And when asked if Paragraph 18 in her 3AC, which states "Berrin intends to purchase Delta flights from Delta in the future," was a correct statement, Berrin said it was not. *Id.* 87:16-24. The Court's prior Order found that Berrin alleged an "imminent or actual threat of future harm" caused by Delta, because Berrin alleged that she "intends to purchase flights from Delta in the future" and was thus a "consumer who intends to continue purchasing Delta flights but cannot do so because of her inability to rely on Delta's carbon-neutral representations that they have made in the past." *See* Order at 9-11, Dkt. No. 59; *see also* 2AC ¶ 17. But because Berrin has now denied any intent to fly Delta for her future personal travel, she cannot claim an "imminent or actual threat of future harm due to [Delta's] false advertising" to warrant injunctive relief. *See Davidson*, 889 F.3d at 970-71; *see also* Motion to Dismiss at 9. Berrin does not meaningfully address this testimony, rather, she argues that her subsequent clarifying conditional testimony is enough to establish standing for injunctive relief, but for the reasons discussed below, that is insufficient. *See* Opposition Motion to Strike at 9-11.

       ii.     <u>Berrin's conditional testimony does not create a genuine issue of material fact as to whether there is a future harm.</u>

Delta first argues that Berrin's conditional and speculative statement as to whether she would fly Delta again is a "noncommittal desire to buy in the future," which does not support standing. *See* Motion to Dismiss at 9-10. Delta bases this contention on an unpublished Ninth Circuit case, *Lanovaz v. Twinings North America Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018), which cited the "some day intention" language from *Lujan*. *Id.* (quoting *Lujan*, 504 U.S. at 564). In its prior Order, the Court deemed that Berrin did not "merely allege a 'some day intention'" as in *Lujan*. *See* Order at 10-11. However, the Court now finds that Berrin's testimony shows a "some day intention," like the plaintiff in *Lujan*, to warrant no future harm.

In *Lujan*, the plaintiffs sought injunctive relief against a rule promulgated by the Secretary of the Interior interpreting a section of the Endangered Species Act. *Lujan*, 504 U.S. at 558. The

Supreme Court held that the plaintiffs failed to allege an imminent injury because they alleged no facts showing how damage to the species would produce an imminent harm to them. *Id.* at 564. One of the plaintiffs stated that her harm is the fact that she "'intends to return to Sri Lanka in the future and hopes to be more fortunate in spotting at least the endangered elephant and leopard.'" *Id.* at 563. Additionally, when this plaintiff was asked at a deposition if she had any future plans to return to Sri Lanka, "she reiterated that 'I intend to go back to Sri Lanka,'" but stated "that she had no current plans: 'I don't know when. . . . I don't know. Not next year, I will say. In the future.'" *Id.* at 564. Thus, the Supreme Court reasoned that a "profession of an 'intent' to return to the places they had visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species—is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.*

Here, like the plaintiff in *Lujan*, Berrin has "no current plans" to fly Delta, *see* Berrin Dep. 50:2-25, 86:12-15, 87:16-24, Dkt. No. 104-3, and did not describe any "specification of when that some day will be," *Lujan*, 504 U.S. at 564. Berrin testified that she would "perhaps" be a loyal Delta customer if her trust was restored, and it would be "possible [that she'd] fly Delta in the future . . . [i]f they [made] right on these carbon-neutrality claims and [made] amends to the claims that they were falsely projecting." Berrin Dep. 180:10-18, Dkt. No. 104-3. But given the noncommittal language of "perhaps" and it only being "possible" that she would fly Delta if Delta changed their ways, this does not show a specific or concrete plan that she would fly Delta in the future. Therefore, Berrin's testimony does not support a finding of an "actual or imminent' injury." *Lujan*, 504 U.S. at 564.

Berrin contends that there is a question of fact as to whether Berrin desires to fly Delta in the future, because she enjoyed flying Delta, and "intend[s] to purchase flights with Delta" when Delta corrects its misstatements and thus regains her trust. *See* Opposition Motion to Dismiss at 10-11; Berrin Decl. ¶ 7, Dkt. No. 105; *see also* Berrin Dep. 180:20-181:8. However, this does not add specificity of "when that some day will be" to create a question of fact regarding future harm,

because Berrin can decide that Delta has regained her trust at any time. *See* Reply Motion to Dismiss at 6. Therefore, Berrin has not met her burden.[5]

> iii. There is no genuine issue of material fact as to whether there is a future harm from Delta's ceased carbon-neutral representations.

Delta first contends that it "ceased its carbon-neutral advertising in 2022, when it pivoted to a 'net zero by 2050' goal," so there is no risk that Berrin will rely on this representation to warrant injunctive relief. *See* Motion to Dismiss at 11-12; Reply Motion to Dismiss at 6-7. Berrin does not dispute that Delta ceased its carbon-neutral representations in 2022. *See* Opposition Motion to Dismiss at 13-14; Reply Motion to Dismiss at 6. Therefore, there is no "inability to rely on a representation" sufficient to create an "ongoing injury that may justify an order barring the false advertising." *Davidson*, 889 F.3d at 961; *see also* Order at 6, 11-13.[6] Accordingly, there is no genuine dispute of material fact as to whether Berrin will have the "inability to rely on" Delta's carbon-neutral representations in the future.

Delta next contends that Berrin will not be misled by Delta's "net zero by 2050" representations because it is different than its carbon-neutral representations. *See* Motion to Dismiss at 11. Berrin contends that there are still genuine issues of material fact as to whether Berrin will be misled and can rely on Delta's "net zero by 2050" representations, and that the "net zero" representations still incorporate the carbon-neutral representations. *See* Opposition Motion to

---

[5] As discussed in the Motion to Strike, Dkt. 80-1 ¶ 12 is a sham and thus cannot be used to support Berrin's argument. *See* Opposition Motion to Dismiss at 10-11.

The Court need not address Delta's argument that "even if [Berrin] had more than an irresolute desire to fly Delta, her conditional intent is based in part on whether Delta takes steps to become 'legitimately' carbon neutral," *see* Motion to Dismiss at 10 (citing Berrin Dep. 180:1-9, Dkt. No. 104-3), because Berrin testified that even if Delta restored her loyalty by "amending their claims and perhaps also taking steps to legitimately become a carbon-neutral airline," she would only "perhaps" return to being a loyal Delta customer and would only possibly fly Delta in the future, *see* Berrin Dep. 180:1-19, Dkt. No. 104-3. As discussed above, that is not specific enough to create a question of fact as to standing.

[6] Berrin contends that the Court should not consider Delta's Responses to the First Set of Interrogatories, Dkt. No. 80-3, because it is hearsay, but because this Motion to Dismiss is analyzed under a Motion for Summary Judgment standard, "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) (emphasis added)). Therefore, the Court will consider the interrogatory. *See* Opposition Motion to Dismiss at 13 n.6.

Dismiss at 13-14. Berrin thus argues that she cannot rely on "any of Delta's representations regarding its carbon status." *Id.* at 14.

However, Delta's "net zero by 2050" representations were not pleaded in the 3AC. *See* 3AC ¶¶ 3-9, 15-17, 46-53, 56, 70, 83-84, 91, 97, 107. The only representations Berrin pleaded and identified as false were the "carbon-neutral" representations and variations on "Delta being the world's first carbon-neutral airline." *See id.*; Berrin Dep 78:17-79:4. Since this Motion to Dismiss is construed as a Motion for Summary Judgment, Berrin "may not effectively amend [her] Complaint by raising a new theory of standing in [her] response to a motion for summary judgment." *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (citing *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Thus, the Court need not address if there is a genuine issue of material fact with Delta's "net zero by 2050" representations and finds that for the reasons discussed above Berrin lacks standing for injunctive relief due to Delta's carbon-neutral representations.[7]

///

///

///

///

///

///

///

---

[7] The Court need not address if Berrin faces a risk of deception from Delta's "net zero by 2050" representations because the net-zero by 2050 representations are not alleged in the complaint and thus are not at issue in this case. *See* Reply Motion to Dismiss at 8-9; Opposition Motion to Dismiss at 14.

23

**III.    Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1.  Defendant's Motion to Strike (Dkt. No. 90) is DENIED.

2.  Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 91) is GRANTED IN PART.

3.  The Parties shall submit a new proposed scheduling order within fourteen (14) days of the date of this Order, which shall also include proposed hearing dates for the pending Motion for Class Certification (Dkt. No. 80) and Motions to Strike (Dkt. Nos. 92, 93).


IT IS SO ORDERED.

Dated: July 28, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge